*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 15, 2019

**BY ECF**

The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re:  *United States v. Richard Gaffey*, 18 Cr. 693 (RMB)

Dear Judge Berman:

   The Government respectfully submits this letter in response to the defendant's request for a modification of his bail conditions, which was submitted in a letter dated January 8, 2019. The defendant seeks permission to travel to Mexico and the Cayman Islands in February and early March. Given the nature of the defendant's alleged conduct, the type of travel he is requesting, and the lack of other bail conditions to give him an incentive to return to the United States, this request should be denied.

   The Indictment charges the defendant with conspiring to commit tax evasion, wire fraud, conspiracy to commit money laundering, and four counts of failing to file a foreign bank account report. These four counts are connected to a number of overseas bank accounts owned by Harald Joachim von der Goltz, another defendant in the case who was a client of the defendant. As alleged in the Indictment, the defendant is an accountant who worked closely with attorneys and investment managers associated with Mossack Fonseca, a Panamanian law firm, to help multiple clients evade their tax obligations to the United States. In furtherance of this scheme, the defendant allegedly advised clients in how to structure fraudulent transactions for the purpose of repatriating their foreign assets into the United States without incurring tax liabilities. (Indictment ¶¶ 26-31). He also assisted von der Goltz in creating both domestic and overseas bank accounts that were nominally owned by various sham entities and shell companies, and he conspired with von der Goltz and others to conceal these accounts from legal authorities in the United States, including by personally signing and submitting false documentation to the IRS. (Indictment ¶¶ 44, 46). The defendant also directed a large number of international wire transfers of funds from these overseas bank accounts for the benefit of von der Goltz, over at least an approximately 13-year period. (Indictment ¶ 47).

   Given the nature of the defendant's alleged crimes, he poses a serious risk of flight if permitted to engage in international travel. As alleged, the defendant spent over a decade engaged in a highly sophisticated international conspiracy to conceal assets and income in overseas bank accounts on behalf of his clients, and willfully submitted false paperwork to the United States

government in furtherance of the scheme. He advised or personally directed numerous international financial transactions to move money from secret bank accounts into accounts that could be used by his clients for their personal benefit. The defendant himself may not have had his own assets overseas, but he is clearly capable of using the international financial system to sustain an overseas lifestyle and doing so in a manner that evades law enforcement detection. Notably, one of the places the defendant seeks to travel is the Cayman Islands, a country that is a significant tax haven and an area of significant concern for enabling exactly the sort of criminal conduct for which the defendant is charged. If permitted to leave the United States, the defendant would also easily be able to travel to one of the many jurisdictions in the vicinity of Mexico and the Cayman Islands from which extradition may not be available.

The parties agreed at the presentment, and Judge Freeman ordered, that the defendant would surrender his passport and that his travel be restricted to the continental United States. The Government additionally sought the imposition of a bond, which the Court declined to order. Because of this, the current set of bail conditions give the defendant little incentive to return to the United States to face charges. The primary condition in place to assure his appearance in court is the travel restriction, and the defendant now seeks to have the Court lift that restriction, essentially leaving no security in place.

The defendant argues that he is not a risk of flight because he did not attempt to flee during the pendency of the investigation, despite the fact that his accounting firm had received subpoenas and was searched pursuant to a search warrant. However, there is a significant difference between receiving a subpoena, or even having a search warrant executed at one's place of employment, and being under indictment facing the serious criminal charges the defendant now faces. His incentive to flee is far greater now than it was previously. Indeed, after the defendant's arrest in this case, his attorneys indicated to the Government that despite knowing about the subpoenas and the search warrant, they were not sure whether the defendant was a target of the investigation. Thus, there is little basis to be sanguine about the prospect of flight based on the fact that the defendant did not attempt to flee prior to learning he was under indictment.

Moreover, contrary to the defendant's assertion, he has not "cooperated throughout the course of the investigation," and he and his firm did not "compl[y] with the subpoenas" that were issued. (*See* Def. Letter at 1.) Rather, prior to the August 2017 search of the defendant's accounting firm, the Southern District of New York had issued multiple grand jury subpoenas to the accounting firm and the defendant, the responses to which had all been deficient. For instance, in response to the first of these grand jury subpoenas, which was issued in 2016 (the "2016 Subpoena"), the accounting firm failed to produce basic items such as attachments to emails, despite the Government's repeated requests for these items. Further, during interviews conducted in July of 2017, two of the defendant's partners at the accounting firm (including the managing partner) stated that the defendant did not inform them of the 2016 Subpoena at the time that it was issued. They were unable to provide any information as to how the search for responsive records had been conducted, and were unaware that any of the accounting firm's records had even been produced to the Government. The defendant also claimed to have no responsive records in response to a May 2017 grand jury subpoena (the "May 2017 Subpoena"), which requested the production of foreign account records for accounts in which the defendant had a financial interest or signature or other authority over. The Government, however, is in possession of records

January 15, 2019<br>Page 3

indicating that the defendant exercised authority over von der Goltz's foreign bank accounts, and that the defendant therefore should have produced records in response to the May 2017 Subpoena.

For all of these reasons, the travel conditions are appropriate and should not be modified.

        Respectfully submitted,

        GEOFFREY S. BERMAN
        United States Attorney for the
        Southern District of New York

By:   /s/ Thane Rehn
        Sarah E. Paul
        Thane Rehn
        Assistant United States Attorneys
        (212) 637-2354

cc:    Robert B. Buehler, Esq. (by ECF)