UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

UNITED STATES OF AMERICA,

        -v.-

                           18 Cr. 693 (RMB)

RAMSES OWENS,
   a/k/a "Ramses Owens Saad,"           **Oral Argument Requested**

DIRK BRAUER,

RICHARD GAFFEY,
   a/k/a "Dick Gaffey," and

HARALD JOACHIM VON DER GOLTZ,
   a/k/a "H.J. von der Goltz,"
   a/k/a "Johan von der Goltz,"

            Defendants.

---------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## RICHARD GAFFEY'S MOTION FOR A BILL OF PARTICULARS

HOGAN LOVELLS US LLP

William J. Lovett

100 High Street, 20th Floor
Boston, MA 02110
Telephone: (617) 371-1007

Robert B. Buehler

875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3261
Fax:  (212) 918-3100

*Attorneys for Defendant*
*Richard Gaffey*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ................................................................................................. 2

LEGAL STANDARD.......................................................................................... 5

ARGUMENT ...................................................................................................... 6

A.  The Indictment Fails to Specify the Unreported  Income, the Tax Due and Owing, and the Relevant  Tax Years Related to the Conspiracy to Commit Tax Evasion .................................................................................................7

B.  Mr. Gaffey Is Entitled to Particulars Regarding the Alleged Wire Fraud ..............9

C.  The Indictment Fails to Specify the "Monetary Instruments and  Funds" That Are the Subject of the Money Laundering Conspiracy ..................................11

D.  Mr. Gaffey Is Entitled to Know the Bank  Accounts That Are the Subjects of Counts Six Through Nine ................................................................................12

E.  The Government Should Provide the  Names of All Unindicted Co-Conspirators ....................................................................................................13

F.  The Sheer Size of the Government's Document   Production Further Warrants a Bill of Particulars.............................................................................17

CONCLUSION.................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Russell v. United States,*
    369 U.S. 749 (1962)................................................................................................9

*United States v. Ajemian,*
    No. 11 Cr. 1091 (VM), 2012 WL 6762011 (S.D.N.Y. Dec. 27. 2012) ....................13

*United States v. Ashley,*
    905 F. Supp. 1146 (E.D.N.Y. 1995) ......................................................................9

*United States v. Auffenberg,*
    539 F. Supp. 2d 781 (D. V.I. 2008) .......................................................................8

*United States v. Bin Laden,*
    92 F. Supp. 2d 225 (S.D.N.Y. 2000).....................................................................17

*United States v. Bortnovsky,*
    820 F.2d 572 (2d Cir. 1987).........................................................................5, 6, 18

*United States v. Coplan,*
    703 F.3d 46 (2d Cir. 2012)....................................................................................7

*United States v. D'Agostino,*
    145 F.3d 69 (2d Cir. 1998)....................................................................................8

*United States v. Davidoff,*
    845 F.2d 1151 (2d Cir. 1988).................................................................................6

*United States v. Ellett,*
    527 F.3d 38 (2d Cir. 2008)....................................................................................7

*United States v. Failla,*
    No. 93 Cr. 00294 (CPS), 1993 WL 547419 (E.D.N.Y. Dec. 21, 1993) ..................14

*United States v. Finazzo,*
    850 F.3d 94 (2d Cir. 2017)..................................................................................10

*United States v. Helmsley,*
    941 F.2d 71 (2d Cir.1991)....................................................................................7

*United States v. Henderson,*
    No. 74 Cr. 1114 (EW), 1974 WL 785 (S.D.N.Y. Dec. 10, 1974)..................................7

*United States v. Kahale,*
    789 F. Supp. 2d 359 (E.D.N.Y. 2009) ......................................................... *passim*

*United States v. Lino,*
    No. 00 Cr. 632 (WHP), 2001 WL 8356 (S.D.N.Y. Jan. 2, 2001)............5, 13, 15, 19

*United States v. Mahaffy,*
    446 F. Supp. 2d 115 (E.D.N.Y. 2006) ..................................................................17

*United States v. Manetti,*
    323 F. Supp. 683 (D. Del. 1971)............................................................................6

*United States v. Nachamie,*
    91 F. Supp. 2d 565 (S.D.N.Y. 2000)....................................................... *passim*

*United States v. Oruche,*
    No. 07 Cr. 0124 (WHP), 2008 WL 612694 (S.D.N.Y. Mar. 5, 2008)....................14

*United States v. Rajaratnam,*
    No. 09 Cr. 1184 (RJH), 2010 WL 2788168 (S.D.N.Y. July 13, 2010) ................6, 9

*United States v. Ramirez,*
    609 F.3d 495 (2d Cir. 2010)..................................................................................17

*United States v. Santiago,*
    174 F. Supp. 2d 16 (S.D.N.Y. 2001)....................................................................16

*United States v. Savin,*
    No. 00 Cr. 45 (RWS), 2001 WL 243533 (S.D.N.Y. Mar. 7, 2001)...................14, 19

*United States v. Silver,*
    117 F. Supp. 3d 461 (S.D.N.Y. 2015)..................................................................10

*United States. v. Tilga,*
    No. 09 Cr. 856 (JEC), 2009 WL 10706690 (D. N.M. Nov. 9, 2009) ......................8

*United States v. Torres,*
    901 F.2d 205 (2d Cir. 1990), *abrogated on other grounds by United States v.*
    *Marcus,* 628 F.3d 36 (2d Cir. 2010) ......................................................................5

*United States v. Walsh,*
    194 F.3d 37 (2d Cir. 1999)......................................................................................5

**Other Authorities**

Federal Rule of Criminal Procedure 7(f) ..............................................................1, 5, 6

Pursuant to Federal Rule of Criminal Procedure 7(f), Richard Gaffey respectfully submits this memorandum of law in support of his motion for a bill of particulars relating to, among other things, the tax evasion, wire fraud and money laundering conspiracies in which he is alleged to have participated.

## PRELIMINARY STATEMENT

The government has charged Mr. Gaffey with engaging in complex, overlapping conspiracies to commit tax evasion, wire fraud and money laundering that are alleged to have started at least as early as 2000, but include conduct that allegedly took place more than 30 years ago. The allegations against Mr. Gaffey describe elaborate schemes involving numerous offshore foundations, trusts and shell companies, as well as overseas bank accounts, meetings and transfers of funds that implicate multiple foreign financial institutions, other entities, and countries. Nonetheless, despite alleging a wide-ranging international fraudulent scheme to evade taxes and commit money laundering, the indictment fails to provide critical elements of the government's charges against Mr. Gaffey.

Moreover, rather than attempting to plug the holes in its indictment by carefully fulfilling its discovery obligations, the government has instead elected to inundate the defense with millions of pages of documents and to hide behind that voluminous -- and, in many instances, irrelevant -- discovery when pressed to provide any specific information as to its allegations against Mr. Gaffey. In the end, the government must identify the basic information that Mr. Gaffey needs to defend against the charges against him. Much more is needed from the government to allow Mr. Gaffey to prepare his defense to these complex charges, avoid surprise at trial, and afford him constitutional protection against double jeopardy.

Specifically, the Court should order the government to provide the following particulars to Mr. Gaffey:

- Identification of (1) the unreported income; (2) the tax due and owing; and (3) the tax years in which the income was earned, as alleged in Count Three of the Indictment;

- Identification of (1) the money and property obtained from the wire fraud scheme; (2) the false and fraudulent pretenses, representations or promises associated with the wire fraud scheme; and (3) the interstate and foreign wires sent in furtherance of the scheme, as alleged in Count Four of the Indictment;

- Identification of the monetary instruments and funds transferred to promote the carrying on of the wire fraud scheme, as alleged in Count Five of the Indictment;

- Identification of the Panamanian and Swiss bank accounts that are alleged to have not been disclosed on Foreign Bank Account Reports, as alleged in Counts Six through Nine of the Indictment; and

- Identification of unindicted co-conspirators and the unnamed "investment advisor."

## BACKGROUND

On September 27, 2018, the government filed an eleven-count indictment against Mr. Gaffey and three co-defendants. Counts Three through Nine pertain to Mr. Gaffey. In particular, Mr. Gaffey, Harald Joachim von der Goltz, and Ramses Owens are charged with conspiracy to commit tax evasion (Count Three), conspiracy to commit wire fraud (Count Four), and conspiracy to commit money laundering (Count Five). Mr. Gaffey and Mr. von der Goltz are also charged with four counts of failing to file a Report of Foreign Bank and Financial Accounts, commonly known as an FBAR (Counts Six to Nine).

Broadly speaking, these counts allege that the defendants conspired to conceal Mr. von der Goltz's beneficial ownership of various foreign entities, bank accounts and other assets that were held in the Revack Trust, which the indictment alleges was formed in 1988 by Mr. von der Goltz's late father through Mossack Fonseca, a Panamanian law firm. *See* Ind. ¶¶ 37-38. The

indictment further alleges that the defendants falsely claimed that Mr. von der Goltz's elderly mother, who is not a United States person and therefore does not have to pay income tax in this country, was the beneficial owner when the government alleges that, in fact, Mr. von der Goltz was the true beneficial owner of the trust and its various assets. *See* Ind. ¶ 36.

The conspiracies in which Mr. Gaffey is charged are alleged to have occurred over the course of more than 30 years and are set forth in almost 20 pages of a dense "speaking" indictment that describes the creation of numerous structures designed to conceal Mr. von der Goltz's assets, the opening of various bank accounts in foreign countries, a number of different investments and transfers of funds, and communications and meetings by the defendants. *See* Ind. ¶¶ 34-61. The tax evasion and wire fraud conspiracies allegedly took place "[f]rom at least in or about 2000 through in or about 2016," while the money laundering conspiracy took place "[f]rom at least in or about May 2007 through in or about June 2014." *See* Ind. ¶¶ 109, 113, 114.

Yet, despite charging three complex conspiracies spanning more than a decade and a half, the indictment fails to allege basic facts supporting the essential elements of the charged offenses. For example, even though tax evasion is alleged to be one of the primary objectives of this intricate fraudulent scheme, the indictment never identifies either the unreported income, or the tax due and owing for each year that the defendants allegedly conspired to avoid paying income tax. Similarly, the indictment does not identify either the money or property that was obtained in connection with the wire fraud conspiracy, or the specific monetary instruments or funds used to promote the carrying on of the wire fraud conspiracy that the government alleges constitutes money laundering. Nor does the indictment bother to identify the specific Panamanian or Swiss bank accounts that were allegedly not reported on the FBARs. All of these omissions require Mr. Gaffey to guess at critical issues in this case.

3

In a discovery letter dated January 7, 2019, Mr. Gaffey asked the government to provide this information, which goes to the core of his defense and which may allow him to seek dismissal of the indictment itself. The letter requested the government to identify, among other things:

- The amount and method of calculation of the allegedly "evaded income tax due and owing to the United States of America by [Mr. Von der Goltz]" charged in Count Three;

- The money and property that was allegedly obtained by false and fraudulent pretenses charged in Count Four;

- The financial transactions that Mr. Gaffey is alleged to have engaged in to further the money laundering conspiracy charged in Count Five;

- The monetary instruments or funds that were the subject of the money laundering conspiracy derived from the specified unlawful activity, to wit, the wire fraud scheme charged in Count Five;

- The foreign accounts that were not properly disclosed to the United States Treasury as charged in Counts Six through Nine;

- The identities of the "others known" in the tax evasion and money laundering conspiracies, as charged in Counts Three and Five;

- The identity of the "investment advisor" referenced in paragraphs 60, 61 and 111(d) of the indictment; and

- Statements of co-conspirators that the government intends to introduce at trial.

*See* Declaration of Robert B. Buehler ("Buehler Dec."), Exhibit 2.

The government never responded to the requests made in Mr. Gaffey's discovery letter, which required counsel for Mr. Gaffey to arrange a telephone conference with the government on March 6, 2019, during which defense counsel reiterated most of the requests contained in the discovery letter. *See* Buehler Dec. ¶ 3. Following the telephone conference, counsel for Mr. Gaffey followed up with an email to the government, which included the following requests, "Identification of the money or property obtained through the wire fraud scheme charged in

Count 4 of the indictment," and "Tax loss calculations and amounts, including the 'income tax due and owing to the United States of America' by Johan von der Goltz, as charged in Count 3 of the indictment." *See* Buehler Dec., Ex. 3. In an email dated March 15, 2019, the government refused to provide any of the information requested in either the discovery letter or the email, and instead referred defense counsel to the indictment and the over five million pages of documents produced in discovery. *See* Buehler Dec., Ex. 3.

## LEGAL STANDARD

Under Federal Rule of Criminal Procedure 7(f), a court has broad discretion to order a bill of particulars. *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). A bill of particulars is appropriate where the indictment's allegations are "so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). A motion for a bill of particulars should be granted where additional details of the charge are "necessary for the preparation of [the] defense, and to avoid prejudicial surprise at the trial." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (internal quotation marks omitted), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010); *see also United States v. Bortnovsky*, 820 F.2d at 574 ("Rule 7(f) . . . permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense."). If details are needed for those purposes, then "a bill of particulars will be required even if the effect is disclosure of the [g]overnment's evidence or theories." *United States v. Lino*, No. 00 Cr. 632 (WHP), 2001 WL 8356, at *3 (S.D.N.Y. Jan. 2, 2001). The decision to order the filing of a bill of particulars rests within the sound discretion of the district

court. *Bortnovsky*, 820 F.2d at 574; *United States v. Nachamie*, 91 F. Supp. 2d 565, 570 (S.D.N.Y. 2000).

In "complex conspiracy cases," the need for a bill of particulars is even more important because "the potential for unfair surprise and the difficulty of preparing a defense are amplified." *United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2010 WL 2788168, at *2 (S.D.N.Y. July 13, 2010) (requiring bill of particulars in insider trading case, in part due to six-year span of the charged conduct and multiple co-conspirators); *see also United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (bill of particulars necessary to avoid surprise at extortion trial).

Federal Rule of Criminal Procedure 7(f) is designed to encourage "a more liberal attitude towards bills of particulars," and to the extent there is doubt in ordering particulars, any "doubt[s] must be resolved in favor of disclosure and the . . . paramount public interest in affording the accused a reasonable foundation for mounting a defense." *United States v. Manetti*, 323 F. Supp. 683, 696-97 (D. Del. 1971).

## ARGUMENT

Mr. Gaffey is entitled to a clear understanding of the fundamental details of the charges against him. Indeed, it is vital to his ability to prepare for trial.

In deciding this motion, the Court should take into consideration the impending trial date and tight schedule for this case. In light of the advanced ages and/or health concerns of Mr. Gaffey and Mr. von der Goltz, the two defendants who have appeared in this case, defense requested an expedited schedule. The Court accommodated these requests and scheduled trial of this complicated matter to commence on October 28, 2019, which is only a little more than six months away. Because of this condensed schedule, the massive amount of discovery produced

by the government, and the complexity of the issues and charges, a bill of particulars is even more imperative in this case

**A.    The Indictment Fails to Specify the Unreported Income, the Tax Due and Owing, and the Relevant Tax Years Related to the Conspiracy to Commit Tax Evasion**

Mr. Gaffey cannot adequately prepare to defend himself at a trial centered on the allegation that he conspired "to evade and defeat a substantial part of the income tax due and owing to the United States of America by" Mr. von der Goltz without knowing the unreported income or the tax due and owing, as well as the tax years in which the income at issue was earned.  At a minimum, the government should be required to identify with particularity the income of Mr. von der Goltz that was unreported and the actual figures and methodology by which the government calculated Mr. von der Goltz's tax that is "due and owing" to the United States.  Without this critical information, Mr. Gaffey – an accountant and tax preparer – simply will be unable to meet these charges.

It is well-established in the Second Circuit that, in order to obtain a conviction for tax evasion, the government must prove that "a substantial amount of taxes was due and owing in addition to those reported on the return for the year in question." *United States v. Henderson*, No. 74 Cr. 1114 (EW), 1974 WL 785, at *3 (S.D.N.Y. Dec. 10, 1974) (Weinfeld, J.); *see also United States v. Helmsley*, 941 F.2d 71, 97 (2d Cir.1991) (explaining that the jury must "find a substantial tax deficiency"); *United States v. Ellett*, 527 F.3d 38, 40 (2d Cir. 2008) (government is required to establish the existence of a substantial tax deficiency beyond a reasonable doubt); *see also United States v. Coplan*, 703 F.3d 46, 66 (2d Cir. 2012) ("Although the government need not prove commission of the substantive offense to secure a [tax evasion] conspiracy conviction, it must prove that the intended future conduct [the conspirators] agreed

upon includes all the elements of the substantive crime.") (internal quotation marks and citations omitted). Indeed, if the government is unable to establish a tax deficiency, the charge of tax evasion will fail. *See United States v. D'Agostino*, 145 F.3d 69, 73 (2d Cir. 1998) (defendants did not owe any tax on the diverted funds; therefore, it was legally impossible for any rational juror to conclude a personal tax deficiency existed).

While the indictment against Mr. Gaffey broadly alleges tax evasion on a grand and international scale, it is utterly devoid of the basic facts and figures needed to determine whether Mr. von der Goltz actually failed to pay his United States income tax. *See United States v. Auffenberg*, 539 F. Supp. 2d 781, 784 (D. V.I. 2008) (court concluded that Counts 2, 3, and 4 of the indictment sufficiently alleged tax evasion because "[e]ach count . . . allege[d] a tax deficiency;" $2,185,394 in Count 2, $3,774,468 in Count 3, and $2,557,278 in Count 4). Simply put, there is not a single allegation in the indictment that identifies any specific income that Mr. von der Goltz failed to report, the amount of income tax that Mr. von der Goltz owes to the United States, or the methodology the government utilized to determine the tax loss, or even if there is a tax loss. By hiding these crucial particulars, it is impossible for Mr. Gaffey to demonstrate that, in fact, there is no tax due and owing and that he is not guilty of tax evasion. *See United States. v. Tilga,* No. 09 Cr. 856 (JEC), 2009 WL 10706690, at *3 (D. N.M. Nov. 9, 2009) (granting defendant's motion for a bill of particulars for each affirmative act of tax evasion, the approximate date of each such action and the tax year or years to which each affirmative act applies).

While the indictment purports to describe in broad terms the various conspiracies in which Mr. Gaffey is charged, it fails to present a clear picture of the crucial facts and lacks the details needed to contest the tax evasion conspiracy charge. The factual underpinning of this

central charge is left largely unexplained. Thus, contrary to the government's assertion, the indictment provides no assistance in this regard. The indictment merely alleges that Mr. Gaffey and his co-conspirators, Messrs. von der Goltz and Owens, engaged in five overt acts to conceal Mr. von der Goltz's beneficial interest in the Revack entities. Ind. ¶ 111. However, these acts do not allege that Mr. Gaffey conspired to conceal income; rather, they allege only that Mr. Gaffey conspired to hide Mr. von der Goltz's ownership of the Revack entities. Indeed, nowhere does the indictment identify any unreported income, the specific tax years for which the income was earned, or – perhaps most importantly – the amount of tax due and owing. Without this information, Mr. Gaffey cannot mount a defense to the tax evasion conspiracy charge. *See Russell v. United States*, 369 U.S. 749, 768 (1962) (criticizing indictment that "left the prosecution free to roam at large – to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal").

**B.** **Mr. Gaffey Is Entitled to Particulars Regarding the Alleged Wire Fraud**

The need for particulars is heightened in complex fraud cases, such as this one. *United States v. Kahale*, 789 F. Supp. 2d 359, 373 (E.D.N.Y. 2009) (recognizing that complex "fraud charges" have "a greater potential for causing unfair surprise at trial due to their complexity"); *United States v. Ashley*, 905 F. Supp. 1146, 1159 (E.D.N.Y. 1995) ("Some substantial indication of the nature or character of any scheme or artifice to defraud, or to obtain money or property by means of false pretenses, representations or promises is requisite."); *United States v. Rajaratnam*, 2010 WL 2788168, at \*4 (ordering particularization of detailed act and timing information). Here, particularization of the alleged wire fraud charge is warranted.

The wire fraud conspiracy charges Mr. Gaffey with conspiring to "obtain money and property by means of false or fraudulent pretenses, representations or promises" and is described

as a "fraudulent scheme to help VON DER GOLTZ conceal his assets and investments, and the income generated by those assets and investments, from the IRS." Ind. ¶ 113. As with the tax evasion conspiracy, the indictment does not identify either the specific assets concealed from the IRS or the income generated from those assets. Moreover, despite the fact that the government must prove that money or property was the object of the fraudulent scheme, *see United States v. Finazzo*, 850 F.3d 94, 105 n.12 (2d Cir. 2017), the indictment does not identify what specific "money or property" was obtained as a result of the wire fraud. It is not possible for Mr. Gaffey to defend against a multi-year wire fraud conspiracy without knowing the specific money or property that is alleged to have been obtained through the scheme.

Mr. Gaffey is also entitled to know the particular wire transmissions that form the basis for the charge against him. Not only does the wire fraud conspiracy charge not include any overt acts, it also does not identify any specific wire transmissions. The identification of the particular transmissions in a wire or mail fraud scheme is warranted where, as here, the government has produced millions of pages of documents in discovery. *See United States v. Silver*, 117 F. Supp. 3d 461, 471 (S.D.N.Y. 2015) (it is "not unreasonable for the Defendant to want to know which mailings and wire transmissions the Government will rely upon to prove its case."); *see also United States v. Nachamie*, 91 F. Supp. 2d at 574 (requiring the government to "identify each and every one of the 'false and misleading' claims"). Given that the use of specific wires is a required element of the offense, the immediate identification of the wire transmissions that form the basis of the charge is appropriate.

Under these circumstances, the particulars of the wire fraud charge requested by Mr. Gaffey – namely, the money and property obtained from the scheme, the false and fraudulent pretenses, representations or promises associated with the scheme, and the wires sent in

furtherance of the scheme – are necessary to permit Mr. Gaffey to prepare a defense and avoid surprise at trial.

### C.  The Indictment Fails to Specify the "Monetary Instruments and Funds" That Are the Subject of the Money Laundering Conspiracy

Count Five of the indictment charges that, for more than seven years, Mr. Gaffey engaged in a conspiracy to launder money by transferring and transmitting "monetary instruments and funds . . . with the intent to promote the carrying on of" the wire fraud scheme charged in Count Four. Ind. ¶ 115. Significantly, just as the wire fraud conspiracy does not identify the specific money or property that was obtained as a result of that sixteen-year scheme, the money laundering conspiracy also fails to identify with any particularity whatsoever the monetary instruments or funds that were allegedly transferred or transmitted over seven years to promote the wire fraud scheme.

Given the length of time during which these various conspiracies are alleged to have occurred, and the complexity of the alleged schemes, it is simply untenable for Mr. Gaffey to defend himself from a money laundering charge without knowing the specific monetary instruments and funds that the government has alleged to be the subject of the money laundering itself. At trial, Mr. Gaffey fully expects to be able to explain the legitimate purposes of any transfers or transmissions that the government will allege constituted money laundering, but it should go without saying that Mr. Gaffey will also need to know which transmissions and transfers will be relied upon by the government at trial so that he may be prepared to rebut them. The five million pages of discovery provided by the government contain hundreds, if not thousands, of different transfers and transmissions that were made during these decades-long conspiracies. It is neither fair, nor possible, for Mr. Gaffey to guess which of these many transfers and transmissions the government will allege were made with the intent of promoting

the alleged wire fraud scheme. This problem is exacerbated by the fact that the government chose not to allege any overt acts for either the wire fraud or money laundering conspiracies.

For these reasons, the court should order the government to identify which "monetary instruments and funds" were used to promote the wire fraud scheme.

### D. Mr. Gaffey Is Entitled to Know the Bank Accounts That Are the Subjects of Counts Six Through Nine

Counts Six through Nine of the indictment charge Mr. Gaffey and Mr. von der Goltz with the willful failure to file FBARs in connection with "foreign bank, securities, and other financial accounts" at two financial institutions that are described only as "the Panamanian Bank" and "the Swiss Bank." Ind. ¶ 118. Again, the indictment fails to specify relevant details concerning these four charges, including most prominently the specific accounts at the Panamanian Bank and the Swiss Bank that the government alleges should have been disclosed by Mr. Gaffey and Mr. von der Goltz in the FBARs. For that matter, the indictment also does not identify the banks where the unidentified accounts were maintained.

It would seem to be self-evident that when the government charges someone with willfully failing to file FBARs as to certain accounts at certain banks, the government should be required to identify the actual accounts at the actual banks that it alleges should have been included in FBAR filings. Instead, here, the government vaguely refers only to unidentified "foreign bank, securities, and other accounts" at two unnamed banks in Panama and Switzerland. The government should not be permitted to get away with this kind of gamesmanship. In order to defend against these charges, Mr. Gaffey needs to know the specific accounts at the specific banks that the government believes should have been disclosed on FBARs.

### E. The Government Should Provide the Names of All Unindicted Co-Conspirators

The indictment names Mr. Gaffey in three separate conspiracies and identifies Mr. Owens and Mr. von der Goltz as his alleged co-conspirators in those three counts. However, both the tax evasion and money laundering conspiracies allege that additional co-conspirators exist, but the indictment does not name them. Given that the tax evasion conspiracy is alleged to have spanned at least sixteen years and the money laundering conspiracy at least seven years, and given that the more than five million pages of discovery include the names of hundreds of additional individuals, there is no possible way for Mr. Gaffey to figure out whom those unidentified co-conspirators may be. Simply put, Mr. Gaffey cannot effectively prepare his defense and avoid unfair surprise at trial if he does not know with whom the government believes he conspired.

In this regard, Mr. Gaffey has made repeated requests to the government for the co-conspirator statements that it expects to introduce at trial, in order for Mr. Gaffey to better prepare for trial and to move prior to trial for preclusion of any such statements that are not properly admissible. *See* Buehler Dec., Ex.s 2 and 3. However, the government has consistently refused this request. *Id.* at Ex. 3. As an initial matter, Mr. Gaffey requests that the Court order the government to produce such co-conspirator statements forthwith. In the alternative, the Court should at least order the government to identify all unindicted co-conspirators so that Mr. Gaffey can adequately prepare his defense to the tax evasion and money laundering conspiracies.

Courts routinely require disclosure of unindicted co-conspirators. "Requests for names of unindicted co-conspirators are fairly common and often are granted by district courts." *United States v. Lino*, 2001 WL 8356, at *12; *United States v. Kahale*, 789 F. Supp. 2d at 372-73 (directing government to disclose the names of any unindicted co-conspirators); *United States v.*

*Ajemian*, No. 11 Cr. 1091 (VM), 2012 WL 6762011, at \*2 (S.D.N.Y. Dec. 27. 2012) (same); *United States v. Oruche*, No. 07 Cr. 0124 (WHP), 2008 WL 612694, at \*4 (S.D.N.Y. Mar. 5, 2008) (same); *United States v. Savin*, No. 00 Cr. 45 (RWS), 2001 WL 243533, at \*3 (S.D.N.Y. Mar. 7, 2001) (same); *Nachamie*, 91 F. Supp. 2d at 573-74 (same); *United States v. Failla,* No. 93 Cr. 00294 (CPS), 1993 WL 547419, at \*7 (E.D.N.Y. Dec. 21, 1993) (same).

Courts consider the following factors when deciding whether to order the government to provide the names of unindicted co-conspirators:

(1)    the number of co-conspirators;

(2)    the duration and breadth of the alleged conspiracy;

(3)    whether the government otherwise has provided adequate notice of the particulars;

(4)    the volume of pretrial disclosure;

(5)    the potential danger to co-conspirators and the nature of the alleged criminal conduct; and

(6)    the potential harm to the government's investigation.

*Nachamie*, 91 F. Supp. 2d at 572.  In the instant case, each of these factors militates in favor of disclosure.

First, as in *Nachamie*, there are "a large number of co-conspirators" (the three named defendants and an unknown number of additional individuals). *Id.* at 572-73; *see also Kahale*, 789 F. Supp. 2d at 372 ("the number of potential co-conspirators is potentially large as there are four indicted defendants and an unknown number of unindicted individuals").

Second, "the alleged conspiracy ... operated for a significant period of time" – in the instant case, sixteen years for the tax evasion conspiracy and more than seven years for the money laundering conspiracy. *Nachamie*, 91 F. Supp. 2d at 573.  Given the complexity and

14

length of the various conspiracies alleged, as well as the many foreign financial institutions and other entities alleged to have been involved, the number of unindicted co-conspirators in this action is potentially large.

Third and fourth, as discussed above, the indictment fails to provide "adequate notice of the particulars" as to the conspiracy charges, and, as discussed below, the massive discovery production does not lessen the problem, but instead exacerbates it. *Id.* at 572. Mr. Gaffey cannot reasonably be expected to search over five million pages of discovery to identify all possible co-conspirators, including those allegedly brought into the scheme by the two other named conspirators, by someone else at Mossack Fonseca, or by any of the myriad financial institutions or other entities that may have been involved in transactions or transfers that took place over the course of almost two decades. *See, e.g., Lino*, 2001 WL 8356, at *13 (noting that, in wide-ranging conspiracies, "a defendant is more likely to be surprised by the identity of other co-conspirators, whom he may never have met") (quoting *Nachamie*, 91 F. Supp. 2d at 572).

Here, the discovery refers to countless interactions and transfers of funds involving various foreign entities and financial institutions, and a review of these communications, which on their face appear entirely legitimate, does not illuminate whether the parties to those transactions or exchanges are part of a conspiracy. *See Kahale*, 789 F. Supp. 2d at 373 (government needed to identify the "others" referred to in the indictment where the conduct surrounding the alleged fraudulent transactions "may outwardly appear to be legitimate business communications," creating a "greater potential for confusion over what precisely the government intend[ed] to prove at trial"). If the government believes that none of the individuals involved in these interactions were participants in the alleged conspiracies, then it should say so. On the other hand, if the government intends to assert that other individuals besides those indicted

played a role in the alleged conspiracies, then it should not be permitted to withhold that information and ambush Mr. Gaffey at trial.

Fifth, none of the defendants in this action have been charged with any violent acts and the government does not – and could not – contend that they pose a threat to witnesses. *See, e.g., United States v. Santiago*, 174 F. Supp. 2d 16, 35 (S.D.N.Y. 2001) (finding that "the identities of unindicted co-conspirators have been disclosed primarily in cases in which violence was not alleged") (citing cases); *Kahale*, 789 F. Supp. 2d at 373 (noting lack of "legitimate basis for concern" over safety of co-conspirators or risk of witness tampering in "white-collar fraud action involving no allegations of violence").

Sixth, given the high-profile nature of this case and the extensive publicity given to the publication of the so-called Panama Papers, which spawned the investigation that led to the present charges, "there is no legitimate concern that disclosing the names of unindicted co-conspirators will ... compromise the Government's investigation." *Nachamie*, 91 F. Supp. 2d at 573; *see also Kahale*, 789 F. Supp. 2d at 373 (noting that compromise of the government's investigation is also not at risk by disclosure of unindicted co-conspirators in non-violent, white-collar fraud actions).

In addition to the identities of any unindicted co-conspirators, the government should also be ordered to provide Mr. Gaffey with the name of the unidentified "prospective investment advisor" who allegedly attended a meeting in London in November 2014 where the Revack Holdings Foundation was discussed. Ind. ¶¶ 60-61. In his discovery letter, Mr. Gaffey requested that the government provide him with the name of the investment advisor, but the government has, to date, not responded to that request. Buehler Dec., Ex. 2. Not only is the investment advisor a witness to some of the government's allegations, he or she is also named in one of the

few overt acts listed in the indictment. Ind. ¶ 111(d). The reasons that support Mr. Gaffey's request for the identities of all unindicted co-conspirators also support his request for the name of the investment advisor. Given that the government has already revealed the existence of the investment advisor in the indictment, there is no basis not to provide the name to Mr. Gaffey.

In sum, Mr. Gaffey must understand the scope of the conspiracies with which he is charged in order to defend against them. He cannot do so if the government keeps the identities of his alleged co-conspirators a secret. Accordingly, the government should be instructed to provide in a bill of particulars the names of all unindicted co-conspirators, as well as the investment advisor, mentioned in Counts Three and Five.

### F.    The Sheer Size of the Government's Document Production Further Warrants a Bill of Particulars

The volume of discovery and the government's failure to designate which of the millions of produced documents will be used in its case-in-chief, or even which are relevant, highlights the challenging and unfair position in which Mr. Gaffey is placed without a bill of particulars. Indeed, courts have recognized that "the most frequent case in which particulars are warranted is where discovery is overwhelmingly extensive *and* the government fails to designate which documents it intends to introduce and which documents are...relevant to the defense." *United States v. Mahaffy*, 446 F. Supp. 2d 115, 119 (E.D.N.Y. 2006) (emphasis in original); *see also United States v. Ramirez*, 609 F.3d 495, 503 (2d Cir. 2010) ("The district court made clear that it ordered a bill of particulars because so much discovery was produced to the defendants, not too little."); *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000) ("[S]ometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars.").

While the review of discovery may at times lessen, or perhaps eliminate, the need for a bill of particulars, a document dump without guidance or direction does not relieve the government of its obligation to advise a defendant of the specific charges that he faces. *See Bortnovsky*, 820 F.2d at 575 ("The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided" as to the charges); *see also Nachamie*, 91 F. Supp. 2d at 572 ("Because the Government has declined to identify which of the [200,000 pages of] documents provided to the defense pursuant to Rule 16(a)(1)(C) it intends to use in its case-in-chief at trial, it must, instead, respond to an appropriate bill of particulars.").

The government has provided Mr. Gaffey with a truly massive amount of discovery, consisting of 5.6 million pages of various kinds of documents from dozens of custodians and other sources – with no roadmap to navigate. The lone index provided in connection with the government's productions, in the form of their production letters, contains only two categories of information – the custodian or source and the Bates range. In many instances, the source information is extremely vague, such as the categories "Panama TIEA returns" and "Documents received from Germany in response to informal request." This extremely limited information provides no real assistance to the defense in its review and distillation of the literally millions of pages of discovery material, which must be reviewed in a time-consuming manner.

In addition, review of the discovery is further complicated by the manner in which some of the documents were produced. Certain of the "documents" produced by the government consist of large PDF files that contain compilations of dozens and, in some cases, hundreds of pages of separate documents, including emails, correspondence, account statements, account opening documents, government filings, reports, and numerous other kinds of materials. Making matters worse, many of these compilations refer to different entities or accounts, and sometimes

deal with entities and accounts that are entirely unrelated to Mr. Gaffey and the charges in this case. (This is true of other documents produced by the government as well.) Many of the documents are also in foreign languages, almost none of which are translated. It is therefore virtually impossible to review these PDF compilations, as well as most of the rest of the discovery, in an expedited or efficient manner.

Despite the fact that many of these documents may not apply to Mr. Gaffey or the charges against him, the irrelevance of those documents cannot be determined without inspecting the entire 5.6 million page production, and the government has provided very little assistance with that task. "Absent further information, in order to adequately understand the nature of the charges against him, [Mr. Gaffey] will be forced to comb through this veritable mountain of documents and to attempt to guess which of the numerous transactions [and events] documented therein, and conducted over a [thirty]-year period, are alleged by the government to have been improper." *United States v. Savin*, 2001 WL 243533, at *3. The Court should not allow the government to avoid providing the necessary particulars by hiding behind a production that is both extremely large and difficult to review. *See Lino*, 2001 WL 8356, at *13 ("problems posed by the scope of the indictment are compounded by the voluminous amount of discovery in this case.").

## CONCLUSION

For the reasons set forth above, Mr. Gaffey respectfully submits that the Court should enter an Order requiring the government to provide a bill of particulars, including the following specifics:

- Identification of (1) the unreported income; (2) the tax due and owing; and (3) the tax years in which the income was earned, as alleged in Count Three of the Indictment;

- Identification of (1) the money and property obtained from the wire fraud scheme; (2) the false and fraudulent pretenses, representations or promises associated with the wire fraud scheme; and (3) the interstate and foreign wires sent in furtherance of the scheme, as alleged in Count Four of the Indictment;

- Identification of the monetary instruments and funds transferred to promote the carrying on of the wire fraud scheme, as alleged in Count Five of the Indictment;

- Identification of the specific Panamanian and Swiss bank accounts that are alleged to have not been disclosed on FBARs, as alleged in Counts Six through Nine of the Indictment; and

- Identification of unindicted co-conspirators and the unnamed "investment advisor."

Dated:  New York, New York
April 11, 2019

Respectfully submitted,

Hogan Lovells US LLP

/s/ William J. Lovett
William J. Lovett

100 High Street, 20th Floor
Boston, MA 02110
Telephone: (617) 371-1007

/s/ Robert B. Buehler
Robert B. Buehler

875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3261

*Attorneys for Richard Gaffey*