UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                        :

   UNITED STATES OF AMERICA         :

                                        :

         - *v.* -                     :

                                        :

   RAMSES OWENS,                   :          18 Cr. 693 (RMB)
      a/k/a "Ramses Owens Saad,"    :
   DIRK BRAUER,                     :
   RICHARD GAFFEY,              :
      a/k/a "Dick Gaffey," and      :
   HARALD JOACHIM VON DER GOLTZ   :
      a/k/a "H.J. von der Goltz,"     :
      a/k/a "Johan von der Goltz,"    :

                                        :

            Defendants.           :

                                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


# GOVERNMENT'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION FOR A BILL OF PARTICULARS


GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

DEBORAH CONNOR
Chief, Money Laundering and Asset
Recovery Section, Criminal Division

Eun Young Choi
Thane Rehn
Assistant United States Attorneys

Michael Parker
Parker Tobin
Trial Attorneys, Criminal Division, United States Department of Justice

   - Of Counsel -

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ..................................................................................................................... 4

THE DEFENDANTS ARE NOT ENTITLED TO A BILL OF PARTICULARS ...................... 4

    A.     Applicable Law ......................................................................................... 4

    B.     Discussion ................................................................................................ 8

       1.   The Defendants Are Not Entitled to a Bill of Particulars Regarding Unreported Income or Tax Due With Regard to Count Three ............................................................ 13

       2.   The Defendants Are Not Entitled to a Bill of Particulars Regarding the Wire Fraud Charged in Count Four ........................................................................................... 15

       3.   The Defendants Are Not Entitled to a Bill of Particulars Regarding the Money Laundering Conspiracy Charged in Count Five ......................................................... 17

       4.   The Defendants Are Not Entitled to Statements or the Names of All Unindicted Co-Conspirators ............................................................................................................ 18

CONCLUSION .................................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Hemphill v. United States*, 392 F.2d 45 (8th Cir. 1968) ................................................. 7

*In re United States of America,* 834 F.2d 283 (2d Cir. 1983) ...................................... 18

*United States v. Ajemian*, No. 11 Cr. 1091 (VM), 2012 WL 6762011 (S.D.N.Y. 2012) ........... 22

*United States v. Annabi*, No. S1 10 Cr. 7 (CM), 2011 WL 6015635, (S.D.N.Y. 2011) ............. 18

*United States v. Auffberg*, 539 F. Supp. 2d 781 (D. V.I. 2008) ................................... 14

*United States v. Bellomo*, 263 F. Supp. 2d 561 (E.D.N.Y. 2003)................................... 7

*United States v. Bin Laden*, 92 F. Supp. 2d 225 (S.D.N.Y. 2000)................................... 8

*United States v. Bonventre*, No. 10 Cr. 228 (LTS), 2013 WL 2303726 (S.D.N.Y. 2013) .......... 12

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) ....................................... 5, 10

*United States v. Cephas*, 937 F.2d (2d Cir. 1991) .............................................. 4

*United States v. Chalmers*, 410 F. Supp. 2d 278 (S.D.N.Y. 2006) ...................................... 15, 17

*United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) ......................................... 5

*United States v. Citron*, 783 F.2d 307 (2d Cir. 1986) ................................................ 13

*United States v. Cole*, 463 F.2d 163, 167 (2d Cir. 1972) .......................................... 13

*United States v. Cuti*, No. 08 Cr. 972 (DAB), 2009 WL 3154310 (S.D.N.Y. 2009)..................... 5

*United States v. D'Amico*, 734 F. Supp. 2d 321 (S.D.N.Y. 2010)............................................ 5, 7

*United States v. D'Anna*, 450 F.2d 1201 (2d Cir. 1971) ............................................. 13

*United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) ................................. 22

*United States v. Failla*, 1993 WL 547419 (E.D.N.Y. 1993) ......................................... 23

*United States v. Gibson*, 175 F. Supp. 2d 532 (S.D.N.Y. 2001)..................................... 7

*United States v. Guttenberg*, No. 07 Cr. 141 (DAB), 2007 WL 4115810 (S.D.N.Y. 2007) ....... 12

*United States v. Henry*, 861 F. Supp. 1190 (S.D.N.Y. 1994) .......................................... 6, 7, 8, 10

ii

*United States v. Heredia*, No. 02 Cr. 1246 (SWK), 2003 WL 21524008 (S.D.N.Y. 2003) ... 20, 21

*United States v. Joseph*, No. 02 Cr. 1589 (LTS), 2003 WL 22019427 (S.D.N.Y. 2003) ...... 19, 23

*United States v. Josephberg*, 562 F.3d 478 (2d Cir. 2009) ........................................ 13

*United States v. Kahale*, 789 F. Supp. 2d 359 (E.D.N.Y. 2009) ................................ 22

*United States v. Kazarian*, No. 10 Cr. 895 (PGG), 2012 WL 1810214 (S.D.N.Y. 2012) ............ 10

*United States v. Leonelli,* 428 F. Supp. 880 (S.D.N.Y. 1977) ........................................ 6

*United States v. Levy*, No. 11 Cr. 62 (PAC), 2013 WL 664712 (S.D.N.Y. 2013)...................... 11

*United States v. Lino*, No. 00 Cr. 632 (WHP), 2001 WL 8356 (S.D.N.Y. 2001) ...................... 22

*United States v. Mahabub*, No. 13 Cr. 908 (AJN), 2014 WL 4243657 (S.D.N.Y. 2014) .... 6, 7, 10

*United States v. Mahaffy*, 446 F. Supp. 2d 115 (E.D.N.Y. 2006) ........................................ 8, 10

*United States v. Mandell*, 710 F. Supp. 2d 368 (S.D.N.Y. 2010)........................................ 9, 10

*United States v. Mitlof*, 165 F. Supp. 2d 558 (S.D.N.Y. 2001)........................................ 6, 7, 8

*United States v. Monserrate*, No. 10 Cr. 965 (CM), 2011 WL 3480957 (S.D.N.Y. 2011) ...... 5, 16

*United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000) .................................. 20, 21, 23

*United States v. Oruche*, No. 07 Cr. 0124 (WHP), 2008 WL 612694 (S.D.N.Y. 2012) ....... 22, 23

*United States v. Panza*, 750 F.2d 1141 (2d Cir. 1984) .................................................... 4

*United States v. Parr*, 509 F.2d 1381 (5th Cir. 1975) .................................................... 13

*United States v. Percevault,* 490 F.2d 126 (2d Cir. 1974) .......................................... 18

*United States v. Percoco*, No. 16 Cr. 776 (VEC), 2017 WL 6314146 (S.D.N.Y. 2017) ....... 17, 20

*United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2010 WL 2788168 (S.D.N.Y. 2010)....... 11

*United States v. Rittweger*, 259 F. Supp. 2d 275 (S.D.N.Y. 2003) ................................ 1, 6, 20, 21

*United States v. Samsonov*, No. 07 Cr. 1198 (CM), 2009 WL 176721 (S.D.N.Y. 2009). 5, 6, 7, 21

*United States v. Savin*, No. 00 Cr. 45 (RWS), 2001 WL 243533 (S.D.N.Y. 2001) .................. 23

*United States v. Sorrentino*, 726 F.2d 876 (1ˢᵗ Cir. 1984) ........................................ 13

*United States v. Tilga*, No. 09 Cr. 856 (JEC), 2009 WL 10706690 (D. N.M. 2009) .................. 14

*United States v. Torres*, 901 F.2d 205 (2d Cir. 1990)..................................................... 4, 5, 6, 7, 10

*United States v. Trippe*, 171 F. Supp. 2d 230 (S.D.N.Y. 2001)................................ 6, 8, 9, 20, 21

*United States v. Usher*, No. 17 Cr. 19 (RMB), 2017 WL 5633315 (S.D.N.Y.) ………………5, 8

*United States v. Walsh*, 194 F.3d 37 (2d Cir. 1999) ............................................................... 4, 21

*United States v. Wedd*, No. 15 Cr. 616 (KBF), 2016 WL 1055737 (S.D.N.Y. 2016)……………20

**Statutes**

26 U.S.C. 7201 ………………………………………………………………………..13

## INTRODUCTION

Defendants Richard Gaffey and Harald Joachim von der Goltz move for an order requiring the Government to provide additional information in the form of a bill of particulars.  (*See* Dkt. Nos. 59-61, 65).[1]  This request should be denied for two reasons.  <u>First</u>, their motion constitutes an "impermissible attempt to compel the Government to provide the evidentiary details of its case." *United States v. Rittweger*, 259 F. Supp. 2d 275, 292-93 (S.D.N.Y. 2003) (internal citation omitted).  The defendants are entitled to information sufficient to understand the charges against them, to prepare a defense, and to protect against double jeopardy.  The 66-page Indictment— which sets forth in detail a scheme to evade taxes that von der Goltz owed to the United States, as well as the specific roles played by Gaffey and von der Goltz in that scheme—as supplemented by the organized and electronically searchable Rule 16 discovery, provides the defendants with more than enough notice of the specific acts of which they are accused.  <u>Second</u>, the Government has already voluntarily disclosed additional details to assist the defendants in the preparation of their defense—approximately six months prior to the beginning of trial.  Specifically, the Government has identified the Panamanian and Swiss bank accounts referenced in Counts Six through Nine of the Indictment (and has identified the relevant bank records as produced to the defendants), as well as the name of the "Investment Advisor" referenced in Paragraphs 60, 61, and 111(d) of the Indictment, as sought by the defendants in their motion.  The Government has also produced the portions of interview reports and grand jury testimony for a dozen witnesses where the topic of the ownership of the shell companies at issue was discussed, as well as the associated documents referenced therein.  Moreover, the Government has informed the defendants that it will provide

---

[1] "Mem." refers to the Defendants' Memorandum in Support of their Motion for a Bill of Particulars.  (Dkt. No. 60).

trial exhibits and other relevant disclosures reasonably in advance of trial. Those disclosures, which exceed what the law requires the Government to provide, not only supply the defendants with the information they seek in certain of their requests, but also taken as a whole are more than sufficient to place the defendants on notice as to the nature of the charges against them, so as to avoid undue surprise and obviate the need for further particulars.

## BACKGROUND

This case involves the efforts of a long-time U.S. resident—defendant Harald Joachim von der Goltz—to evade the requirements of U.S. tax laws to report and pay income taxes on worldwide income, including income and capital gains generated in domestic and foreign bank accounts. (Indictment ¶ 35). Von der Goltz evaded these requirements by creating a series of shell companies—referred to in the Indictment as the "Revack Entities"—and domestic and foreign bank accounts in the names of the Revack Entities and their overlying foundation, the Revack Holdings Foundation—referred to in the Indictment as the "Revack Bank Accounts"—which were designed to hide his beneficial ownership of the assets at issue from the IRS. (*Id.* ¶¶ 35-37, 43). Von der Goltz did so with the assistance of his co-defendants Ramses Owens, an attorney at the Panamanian law firm Mossack Fonseca and, subsequently, another law firm, referred to in the Indictment as the Owens Firm, and Richard Gaffey, a partner at the accounting firm referred to in the Indictment as the "U.S. Accounting Firm." (*Id.* ¶¶ 2, 25, 35, 49). As part of their efforts to hide von der Goltz's beneficial ownership in the Revack Entities and the Revack Bank Accounts, von der Goltz, Owens, and Gaffey falsely claimed that von der Goltz's elderly mother was the sole beneficial owner of the shell companies and accounts, when in truth and in fact, von der Goltz himself beneficially owned them, exercising control over the assets at issue and using them for his own personal benefit. (*Id.* ¶¶ 37-42, 51-55). And despite being obligated to do so, for the tax

2

years from 2000 to 2016, von der Goltz falsely and fraudulently failed to report the income and capital gains generated in connection with the domestic Revack Bank Accounts (Indictment ¶ 48), as well as his interest in, or authority over, the offshore, undeclared foreign Revack Bank Accounts, including by failing to disclose his beneficial ownership of those accounts. (*Id.*). Von der Goltz's efforts to hide his beneficial interest in the Revack Entities and the Revack Bank Accounts continued into 2014, when he filed materially false amended Reports of Foreign Bank and Financial Accounts ("FBARs"), and into 2016, when he caused his legal representative to make materially false statements in an email to the Government and then repeated the substance of those false statements during an interview with the Government.

A grand jury sitting in this District returned the Indictment on September 27, 2018, which was unsealed on December 4, 2018. For their roles in this scheme, von der Goltz and Gaffey are charged together in the Indictment as having (1) conspired with one another to evade and defeat a substantial part of the income tax that von der Goltz owed to the United States of America, in violation of Title 18, United States Code, Section 371 (Count Three); (2) participated in a fraudulent scheme to conceal von der Goltz's assets and investments, and the income generated by those assets and investments, from the Internal Revenue Service ("IRS"), in violation of Title 18, United States Code, Sections 1343 and 2 (Count Four); (3) conspired to transport, transmit and transfer monetary instruments and funds to and from the United States, with the intent to promote the carrying on of their fraudulent scheme, in violation of Title 18, United States Code, Section 1956(h) (Count Five); and (4) knowingly and willfully failed to file FBARs disclosing that von der Goltz had a financial interest in, or signature or other authority over, foreign bank accounts in Panama and Switzerland, for the calendar years 2012 through 2015, in violation of Title 31, United States Code, Section 5314 and 5322(a) and Title 18, United States Code, Section 2 (Counts Six

through Nine).  Von der Goltz is also charged with (5) knowingly and willfully making materially false, fictitious, and fraudulent statements and representations, in violation of Title 18, United States Code, Sections 1001(a) and 2 (Counts Ten and Eleven).

## ARGUMENT

### THE DEFENDANTS ARE NOT ENTITLED TO A BILL OF PARTICULARS

The defendants' motion for a bill of particulars, which is predicated on an incomplete account of the relevant factual background, and a fundamental misapprehension of the applicable law, has no merit.  The Indictment, coupled with the well-organized and text-searchable discovery, as well as the voluntary disclosures made by the Government to date, and that the Government has committed to making, make plain the Government's case against the defendants.  Far from establishing a true dearth of notice—the foundational prerequisite for granting of the requested relief—the defendants' moving papers only confirm that their demand is driven by the improper purpose of preventing the Government from further developing its proof as trial approaches.

### A.  Applicable Law

The proper purpose of a bill of particulars under Federal Rule of Criminal Procedure 7(f) is "to provide a defendant with information about the details of the charge against him if this is *necessary* to the preparation of his defense, and to avoid prejudicial surprise at trial." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (emphasis added).  Accordingly, "[a] bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (internal citation omitted); *see also Torres*, 901 F.2d at 234 (citation omitted); *United States* v. *Cephas*, 937 F.2d 816, 823 (2d Cir. 1991); *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984).

As this Court has recognized, a "bill of particulars is not necessary where the government [makes] sufficient disclosures concerning its evidence and witnesses by other means." *United States v. Usher*, No. 17 Cr. 19 (RMB), 2017 WL 5633315, at *2 (S.D.N.Y. Oct. 12, 2017) (quoting *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004). "If the information [a] defendant seeks 'is provided in the indictment or in some acceptable alternate form,' such as discovery or other correspondence, no bill of particulars is required." *Id.* (quoting *United States v. Connolly*, 2017 WL 2537808, at *1 (S.D.N.Y. May 24, 2017)). In exercising its broad discretion to determine whether the charges are "so general" that they require supplementing, the Court should consider not just the text of the Indictment, but also discovery and other information supplied to the defendants to date. *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); *see also, e.g.*, *Torres*, 901 F.2d at 234 (affirming denial of request for bill of particulars where defendants had "been provided with a wealth of evidentiary detail from the discovery to date, including electronic intercepts, search evidence and exhaustive supporting affidavits") (internal citation omitted); *United States v. Monserrate*, No. 10 Cr. 965 (CM), 2011 WL 3480957, at *4 (S.D.N.Y. 2011) (denying, in case charging mail fraud and conspiracy to commit mail fraud, request for bill of particulars where discovery materials and indictment were "sufficient to apprise the defendant of the charge against him" and to allow him to prepare for trial); *United States v. D'Amico*, 734 F. Supp. 2d 321, 335 (S.D.N.Y. 2010) (denying bill of particulars request where supplementary facts were supplied to defense by way of letter); *United States v. Cuti*, No. 08 Cr. 972 (DAB), 2009 WL 3154310, at *3-4 (S.D.N.Y. 2009) (in accounting fraud case, denying request for particulars identifying all fraudulent transactions, payments, and statements made in furtherance of charged scheme where Government had furnished more than a million pages of discovery and, by letter, identified a series of fraudulent transactions and payments); *United States v. Samsonov*, No. 07 Cr.

1198 (CM), 2009 WL 176721, at *4 (S.D.N.Y. 2009) (denying bill of particulars request in mortgage and bank fraud case where indictment, discovery letters, and discovery materials gave defendant adequate information to prepare for trial); *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) (denying bill of particulars request in stock fraud case where indictment was 15 pages long and substantial discovery had been provided); *United States v. Henry*, 861 F. Supp. 1190, 1198 (S.D.N.Y. 1994) ("In determining whether to grant a motion requesting a bill of particulars, the Court must ascertain whether the information sought has been provided elsewhere, such as through pre-trial discovery, voluntary disclosure by the government, or the indictment itself.").

Bills of particulars would undoubtedly be helpful to the defense in any case. But because "the law does not impose upon the Government an obligation to preview its case or expose its legal theories," *United States v. Leonelli,* 428 F. Supp. at 880 (S.D.N.Y. 1977), "[t]he ultimate test must be whether the information sought is *necessary*, not whether it is helpful." *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001) (emphasis added); *United States v. Mahabub*, No. 13 Cr. 908 (AJN), 2014 WL 4243657, at *2 (S.D.N.Y. Aug. 26, 2014) ("The purpose of a bill of particulars is to ensure that a defendant has the information necessary to prepare a defense, not to turn over all information that would aid the defendant."); *United States v. Rittweger*, 259 F. Supp. 2d at 292-93 (denying bill of particulars request as "an impermissible attempt to compel the Government to provide the evidentiary details of its case") (citation and quotation marks omitted). A bill of particulars should not be misused to compel the Government to disclose "the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crime charged, or a preview of the Government's evidence or legal theories." *Mitlof*, 165 F. Supp. 2d at 569; *see also Torres*, 901 F.2d at 234 ("'Acquisition of evidentiary detail is not the

function of the bill of particulars.'") (quoting *Hemphill v. United States*, 392 F.2d 45, 49 (8th Cir.

1968)); *D'Amico*, 734 F. Supp. 2d at 335 ("'A bill of particulars is not a general investigative tool,

a discovery device or a means to compel the government to disclose evidence or witnesses to be

offered prior to trial.'") (quoting *United States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y.

2001)); *United States v. Bellomo*, 263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003) ("A bill of particulars

is not designed to: obtain the government's evidence; restrict the government's evidence prior to

trial; assist the defendant's investigation; obtain the precise way in which the government intends

to prove its case; interpret its evidence for the defendant, or disclose its legal theory.").   The

"'wheres, whens and with whoms'" are "beyond the scope of a bill of particulars." *Mitlof*, 165 F.

Supp. 2d at 569 (citing *Torres*, 901 F.2d at 233-34); *see also, e.g.*, *Henry*, 861 F. Supp. at 1197

("This instrument should not function to disclose evidence, witnesses, and legal theories to be

offered by the Government at trial or as a general investigative tool for the defense.").

There are good reasons why bills of particulars are warranted only where the allegations in

the indictment, as supplemented by discovery and elsewise, are so general as to render it

impossible to prepare a defense.  Because "a bill of particulars confines the Government's proof

to particulars furnished," it can "restrict unduly the Government's ability to present its case."

*Henry*, 861 F. Supp. at 1197; *see also Mahabub*, 2014 WL 4243657, at *2 (recognizing that "care

must be taken" in deciding whether to order a bill of particulars because "[t]he government's

presentation of evidence at trial is limited to the particulars contained in the bill"); *Samsonov*, 2009

WL 176721, at *3 ("The vehicle of a bill of particulars serves to inform a defendant of the nature

of the charge, when he is otherwise insufficiently informed, and must not be misused to compel

disclosure of how much the Government can prove, nor to foreclose the Government from using

proof it may develop as the trial approaches.").   Moreover, the Government's provision of

particulars tantamount to an itemized preview of its proof creates the very real danger that a defendant will "tailor [his] testimony to explain away the Government's case." *Henry*, 861 F. Supp. at 1197.  These concerns animate the rule that "if the defendant has been given adequate notice of the charges against [him] and can prepare fully for trial with reasonably diligent efforts, the Government cannot be required to disclose additional details about its case." *Id.*

As this Court has recognized, "[i]n light of [Second Circuit precedent], bills of particulars are not routinely granted." *United States v. Usher*, 2017 WL 5633315, at *2 (quoting *United States v. Mahaffy*, 446 F. Supp. 2d 115, 119 (E.D.N.Y. 2006)).  Applying these principles, courts routinely deny motions for bills of particulars that are, at bottom, demands for additional details of the manner in which the offense was committed.  *See Mitlof*, 165 F. Supp. 2d at 569 (noting that the Government may not be compelled to provide a bill of particulars disclosing the manner in which it will prove charges, the manner in which defendant committed the crime charged, or a preview of the Government's evidence or legal theories).  Courts also "routinely den[y]" demands for bills of particulars setting forth the identities of co-conspirators.  *Trippe*, 171 F. Supp. 2d at 240; *see also United States v. Bin Laden*, 92 F. Supp. 2d 225, 242 (S.D.N.Y. 2000) ("[R]equests, such as those made by the Defendants here, for particulars as to when, where, how, and with whom each individual defendant joined an alleged conspiracy have 'almost uniformly been denied.'" (citation omitted)).

## B.  Discussion

The defendants are not entitled to, and should not be granted, the bill of particulars they seek.  The detailed Indictment coupled with the Government's extensive and well-organized Rule 16 discovery material supply the defendants with ample notice of the acts for which they have been charged.  The Indictment in this case provides a veritable roadmap to the defendants, both to

understand the nature and circumstances of the charged conduct and their respective roles, but also to search and review the discovery. The Indictment provides specific reference to documents and statements, such as the organizing documents for the Revack Trust and the Revack Holdings Foundation, which held the Revack Entities (*see*, *e.g.*, Indictment ¶¶ 37-42), that allows the defendants to make use of the documents disclosed in discovery, which were produced with metadata and in searchable format. The Indictment also provides dates for particular communications and actions and quotes from relevant documents and correspondence (*see, e.g.,* Indictment ¶¶ 42-47, 51-59, 62-63, 104(a), 111), permitting the defendants to sort and prioritize discovery, and describes the subject matter and entities involved so that the defendants can make use of the text-searchable discovery and the extensive index provided by the Government, which organizes the documents by their source, to focus on those documents most relevant to their defenses. That alone is a reason for the defendants' request to be denied. *See, e.g.*, *United States v. Mandell*, 710 F. Supp. 2d 368, 385 (S.D.N.Y. 2010) (denying request for particularization of alleged misrepresentations where the indictment was 34 pages long and Government had provided voluminous, organized discovery); *Trippe*, 171 F. Supp. 2d at 240 (no bill of particulars required where defendant had benefit of 15-page indictment and discovery).

But the Government has gone further. The Government has responded in writing to various of the defendants' requests to date, including identifying the Panamanian and Swiss bank accounts referenced in Counts Six through Nine of the Indictment, in which von der Goltz's beneficial ownership interest was willfully hidden from the IRS[2]—as well as the name of the "Investment

---

[2] On April 18, 2019, the Government identified to the defense the names of the Panamanian Bank and the Swiss Bank, as well as the accounts at those institutions held nominally by EMJO Investments Limited, Goldbean Inc., Worldwide Investment Services and Holdings Inc., Union Properties Inc., Brecknock Corporation, as Treetop Properties Inc., as those referenced in Counts

Advisor" referenced in Paragraphs 60, 61, and 111(d) of the Indictment.  The Government has also produced portions of 21 interview reports and grand jury testimony for 12 witnesses regarding the topic of the ownership of the Revack Entities, as well as over a hundred exhibits referenced in those witness statements.  The Government has further agreed to produce a draft exhibit list six weeks before trial.  Such additional information is more than what is "*necessary* to the preparation of his defense, [so as] to avoid prejudicial surprise at trial."  *Torres*, 901 F.2d at 234 (emphasis added).

At bottom, the defendants argue that a bill of particulars nearly six months prior to trial is required in light of the "millions of pages of documents" and the "voluminous" discovery that has been thus far provided by the Government (*see* Mem. at 1, 17-19), and the purported complexity of the case (*see* Mem. at 6).  Neither assertion justifies the provision of a bill of particulars at this early juncture, so as to prematurely and unduly confine the Government's proof at trial to the particulars furnished and restrict its ability to present its case.  *Henry*, 861 F. Supp. at 1197; *see also Mahabub*, 2014 WL 4243657, at *2.  Indeed, the quantity of discovery only warrants a bill of particulars "if it obfuscates the allegedly unlawful conduct and unfairly inhibits the defendant's preparation for trial," *United States v. Mahaffy*, 446 F. Supp. 2d at 120; *see also Bortnovsky*, 820 F.2d at 574-75.  The provision of voluminous discovery in combination with some guidance about what is most relevant—as the Government has done in this case, and will continue to do in advance of trial—vitiates the need for further particulars, *see, e.g.*, *United States v. Kazarian*, No. 10 Cr. 895 (PGG), 2012 WL 1810214, at *25 (S.D.N.Y. 2012); *Mandell*, 710 F. Supp. 2d at 385.  As detailed above, the Indictment, coupled with the additional voluntary disclosures that the

---

Six through Nine of the Indictment.  The Government also identified to the defense the Bates number ranges for the relevant bank documents regarding those bank accounts.

Government has already agreed to provide, vitiates the need for such a bill.  To the extent that the defendants have further specific questions or difficulties in finding certain documents or support in the discovery produced to date, as the Government has informed the defendants, the Government will work with the defendants to direct them to those relevant documents.  However, in no event should volume of discovery alone warrant a bill of particulars; "[w]hile [a] [c]ourt may sympathize with counsel's task of reviewing a large quantity of materials that continue to be produced," that concern is addressed by granting the defense sufficient time in which to conduct the review in advance of trial, *see United States v. Levy*, No. 11 Cr. 62 (PAC), 2013 WL 664712, at *13 (S.D.N.Y. 2013), not by requiring the Government to prematurely preview its case nearly six months before trial and unnecessarily restrict its ability to present it at trial.

Moreover, this case is a far cry from the cases defendants cite as analogous "complex conspiracy cases," such as *United States v. Rajaratnam*, an insider trading case where a bill of particulars was ordered, to justify their demand for more.  (Mem. at 6 (citing *United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2010 WL 2788168 (S.D.N.Y. July 13, 2010)).  *Rajaratnam* was an insider trading case "far larger" than others, and involved trading in thirty-one securities and "dozens of co-conspirators, charged and uncharged." *Rajaratnam*, 2010 WL 2788168, at *2. And because the crux of a tipper-tippee insider trading case, such as was the case there, is the tip itself, the nature of the charge necessarily centers on the substance and timing of the alleged tip. By contrast, tax-related charges like the ones brought here center not on any particular conveyance of information but instead on the concerted action taken over time to hide from the IRS sources of taxable income.  Indeed, the case against Gaffey and von der Goltz, by any objective measure, is relatively straightforward and cabined:  charges arising out of an agreement between a wealthy U.S. taxpayer (von der Goltz) and his U.S. accountant (Gaffey) and Panamanian lawyer (Owens)

to evade U.S. taxes by not disclosing the taxpayer's income from and beneficial interest in assets held in the Revack Bank Accounts, and to allow the U.S. taxpayer to personally benefit from those undisclosed assets.  Specifically, it involves efforts undertaken mainly by von der Goltz, Gaffey, and Owens to create the Revack Entities and hide the truth about von der Goltz's beneficial ownership in those entities.

Although it is true that the relevant conduct spans a considerable period of time, it is because von der Goltz began to create the Revack Entities, and the trust and later foundation which held them, in the late 1980s through the use of the Mossack Fonseca firm.  Evidence of this conduct will be introduced at trial to establish von der Goltz's ownership interest in the Revack Entities and the origins of the scheme.  However, the charged scheme itself is cabined to the efforts of the defendants to hide von der Goltz's beneficial ownership interest in the Revack Entities and the Revack Bank Accounts, and the actions taken in furtherance of that goal, focusing on the years 2000 to 2016.  The defendants are entitled to no more than that.  It is axiomatic that, at least in cases where some specific examples are offered, the Government is not required to furnish an inventory of every act it plans to prove furthered the fraud.  *See, e.g.*, *United States v. Bonventre*, No. 10 Cr. 228 (LTS), 2013 WL 2303726, at *5-7 (S.D.N.Y. 2013) (in case involving largest Ponzi scheme in U.S. history arising out of Bernard L. Madoff Securities LLC, which spanned decades, denying request for bill of particulars identifying, among other things, "the specific arbitrage trades in which [a defendant] was involved that the Government alleges are fraudulent," the "dates and stock names for all alleged backdated transactions," "all unnamed clients and allegedly fake trades referred to in" a particular count, and all allegedly false documents and records); *United States* v. *Guttenberg*, No. 07 Cr. 141 (DAB), 2007 WL 4115810, at *4-5 (S.D.N.Y. 2007) (in insider trading

case, denying request for bill of particulars itemizing trades alleged to have been based on material nonpublic information).

Each of the defendants' specific outstanding demands are further addressed below.

### 1. The Defendants Are Not Entitled to a Bill of Particulars Regarding Unreported Income or Tax Due With Regard to Count Three

The defendants assert that they are entitled to identification of the precise amount of unreported income, tax liability, and tax years at issue in Count Three, which charges a conspiracy to attempt to evade or defeat tax. This request is based on a misconception of what is required to sustain a conviction on such a charge. It is true that, for a substantive tax evasion charge under 26 U.S.C. § 7201, the Government must prove at trial "(1) the existence of a substantial tax debt; (2) the willfulness of the nonpayment; and (3) an affirmative act by the defendant, performed with intent to evade or defeat the calculation or payment of the tax," *United States v. Josephberg*, 562 F.3d 478, 488 (2d Cir. 2009). However, as the Second Circuit has noted, in the context of a substantive § 7201 charge, "proof at trial need <u>not</u> include a <u>precise amount</u> of unreported income or tax due but is sufficient if it shows that the amounts of income underreported and tax due were 'substantial.'" *United States v. Citron*, 783 F.2d 307, 315 (2d Cir. 1986) (emphasis added). Accordingly, "since the indictment need not allege that which is not part of the government's required proof, no exact figure need be stated in the indictment." *Id.*; *accord United States v. Sorrentino*, 726 F.2d 876, 880 n.1 (1st Cir. 1984) ("[T]he Government need prove only that the amount of tax evaded was substantial. It is not necessary to prove an exact amount."); *United States v. Parr*, 509 F.2d 1381, 1385-86 (5th Cir. 1975); *see also United States v. Cole*, 463 F.2d 163, 167 (2d Cir.), *cert. denied*, 409 U.S. 942 (1972) (variation between the amount of income underreported as alleged in the indictment and the amount proven at trial); *United States v. D'Anna*, 450 F.2d 1201, 1204 (2d Cir. 1971) (variance between amounts of tax due as alleged in

indictment and amounts proven at trial). If the Government need not identify a precise amount of unreported income and tax due in an indictment or its case-in-chief to sustain a conviction in the context of a <u>substantive</u> tax evasion charge under Second Circuit law,[3] it cannot be that the Government should be compelled to provide such a figure in a bill of particulars in the context of a <u>conspiracy</u> to evade taxes as charged in Count Three, where the Government need not prove that the conspirators were successful in achieving the unlawful objective.

The Government at present intends to establish a substantial tax debt by relying on the domestic and foreign account statements and balance sheets for the Revack Bank Accounts and their investments to establish unreported income generated by these assets, including interest income and capital gains that were due from the sales of securities, bonds, precious metals, and real estate investments. (*Cf.* Indictment ¶¶ 41-42 (identifying $35,012,236 in Revack Entity investments in December 31, 2012 balance sheet, maintained by Gaffey's accounting firm, in private equity companies, real estate investment companies, and a watch company founded by von der Goltz); ¶ 48 (noting von der Goltz's Forms 1040 for tax years 2000 through 2016 failed to report income and capital gains generated from domestic Revack Bank Accounts, and failed to report his interest in offshore, undeclared Revack Bank Accounts); ¶ 50 (wire transfers made from

---

[3] The out-of-circuit cases cited by the defendants (Mem. at 8) counsel no different result. In *United States v. Auffberg*, 539 F. Supp. 2d 781, 784 (D. V.I. 2008), the district court concluded that an indictment which charged three counts of substantive tax evasion and specified an alleged tax deficiency sufficiently stated the elements of that crime. The case does not, however, stand for the proposition that a bill of particulars is required where the indictment does not specifically provide a tax deficiency amount. And in *United States v. Tilga*, No. 09 Cr. 856 (JEC), 2009 WL 10706690, at *2-3 (D. N.M. Nov. 9, 2009), again in the context of a substantive tax evasion case, where there was an open question as to whether three counts of substantive tax evasion would be time barred unless the affirmative acts of evasion took place after the filing of the Forms 1040s, the court ordered a bill of particulars to identify each of the affirmative acts of evasion and the dates they took place, such that the defense could move to dismiss on the basis of the statute of limitations. Here, no such analogous concern exists, since the actions taken by the defendants continued into 2016.

offshore Revack Bank Accounts to fund capital calls for U.S. investments); ¶¶ 55-56 (no taxes withheld or paid on sale of shares of precious metals held by Swiss Bank EMJO Account, approximately $430,000 of which was used by von der Goltz to pay his outstanding home equity line of credit).  The Government is continuing to investigate this figure, and will disclose additional information as it receives it.  With regard to estimates as to tax losses due, the Government will disclose to the defendants its proof as to the substantial amount of tax due and owing, and methodology it employed to make this assessment, in the form of exhibits and 3500 material for the witnesses relevant to this issue no later than four weeks prior to the start of trial.  In light of these facts, no bill of particulars is warranted.  *See United States v. Chalmers*, 410 F. Supp. 2d 278, 285 (S.D.N.Y. 2006) (denying motion for disclosure of all wire transmissions to be relied on at trial because "given the volume of documents in this case, it would be premature to require the Government to limit itself now to the specified acts of the Superseding Indictment or any additional acts it might be able to specify in a bill of particulars.").

### 2. The Defendants Are Not Entitled to a Bill of Particulars Regarding the Wire Fraud Charged in Count Four

The defendants next seek a bill of particulars regarding the wire fraud scheme charged in Count Four of the Indictment.  But the Indictment makes plain both the "money and property obtained from the scheme" and the "false and fraudulent pretenses, representations, or promises associated with the scheme." (Mem. at 10).  Count Four alleges that Gaffey and von der Goltz, along with their co-defendant Ramses Owens, "participated in a fraudulent scheme to help VON DER GOLTZ conceal his assets and investments, and the income generated by those assets and investments, from the IRS."  (Indictment ¶ 113).  To the extent that there is any ambiguity, the "money and property obtained" is the taxes that were due upon the income generated by those

assets and investments, and the "false and fraudulent pretenses, representations and promises" were those which served to hide von der Goltz's ownership interest in those assets and investments.

It is true that the Indictment does not identify all of the specific wires which the Government intends to establish that the defendants caused to be transmitted to further their scheme. The Government presently intends to introduce evidence at trial regarding interstate and foreign wires (including emails and bank wires) that were sent or caused to be sent by defendants Gaffey, von der Goltz, and Owens regarding the establishment of the Revack Entities, the beneficial ownership of and control over the assets held and investments made by the Revack Entities by von der Goltz, and transactions made in both the domestic and foreign Revack Bank Accounts. These wires will include, but not be limited to, (1) the opening and maintenance of Revack Entity bank accounts at banks located in New York, New York, and emails sent in furtherance of these efforts, including an account in the name of EMJO Investment Limited ("EMJO") at a bank in New York, New York and wire transfers made into and out of that account; (2) an April 15, 2013 payment of $110,000 made to Owens using a bank account in New York, New York; and (3) a May 2016 email sent by von der Goltz's legal representative to DOJ officials located in the Southern District of New York which made false representations about the beneficial ownership of the Revack Entities. (*See*, *e.g.*, Indictment ¶¶ 44, 49, 63, 111(b), 120).

This detailed information in the Indictment, along with the discovery that has been produced regarding these emails and wire transfers, is more than sufficient to apprise the defendants of the nature of the charges against them. *See Monserrate*, 2011 WL 3480957, at *4 (in mail fraud case, denying request for bill of particulars where discovery materials and indictment were "sufficient to apprise the defendant of the charge against him" and to allow him to prepare for trial). At most, some cases support a pretrial disclosure of specific wires up to thirty days prior

16

to trial.  *See Chalmers*, 410 F. Supp. 2d at 285 (S.D.N.Y. 2006) (denying motion for disclosure of all wire transmissions to be relied on at trial, but ordering the Government "to identify, thirty days before the start of trial, . . . any allegedly unlawful transmissions and transactions, not already identified in the Superseding Indictment, that it will seek to prove at trial"); *United States v. Percoco*, No. 16 Cr. 776 (VEC), 2017 WL 6314146, at *21 (S.D.N.Y. Dec. 11, 2017) (denying motion for bill of particulars, but ordering Government to identify specific wires upon which it based its wire fraud allegations no later than three weeks prior to the start of each of two trials). Accordingly, the Government will disclose to the defense additional specific wires it intends to rely upon at trial no later than four weeks prior to trial.  In light of this anticipated disclosure, the defendants' motion with regard to the wire fraud count should be denied.

### 3. The Defendants Are Not Entitled to a Bill of Particulars Regarding the Money Laundering Conspiracy Charged in Count Five

The defendants seek particulars regarding "the specific monetary instruments and funds that the [G]overnment has alleged to be the subject of the money laundering." (Mem. at 11).  As the Indictment explains, the money laundering conspiracy alleges that the defendants agreed to transfer monetary instruments and funds to and from the United States "with the intent to promote the carrying on of . . . the wire fraud scheme alleged in Count Four."  (Indictment ¶ 116).  The Indictment further outlines specific examples of the flow of funds to and from the United States to promote the fraud, including but not limited to payments described in a subsection entitled "Additional Payments Made to Promote the Scheme," namely, (a) compensation to both Owens and Gaffey between approximately June 2011 and June 2014, from the Panamanian Revack Bank Accounts to Owens at the Owens Firm and Gaffey at the U.S. Accounting Firm; (b) the transfer of $110,000 to the Owens Firm, which represented the repayment of a loan made by the Owens Firm as part of the scheme; and (c) a "series of wire transfers from bank accounts in Panama and

Switzerland to places in the United States," between May 2007 and July 2011, "to fund capital calls for U.S. investments . . . through the Revack Entities, rather than von der Goltz individually, so that von der Goltz could invest in U.S. venture capital funds and evade the payment of U.S. taxes on the capital gains." (*Id.* ¶¶ 49-50). The Indictment also describes payments made from the Swiss Bank Revack Accounts, including, on or about June 14, 2013, a $430,000 transfer from the Swiss Bank EMJO Account to von der Goltz's personal domestic bank account, representing the liquidation of shares in precious metals for which von der Goltz paid no capital gains tax. (*Id.* ¶ 55). In light of this ample detail in the Indictment, and the Government's identification of the Panamanian and Swiss bank account documents at issue to the defense, there is no further need at this time for the Government to further particularize its proof at trial.

###### 4.   The Defendants Are Not Entitled to Statements of or the Names of All Unindicted Co-Conspirators

Defendants request a Court order for the Government to produce co-conspirator statements "forthwith." (Mem. at 13). Defendants cite to no authority in support of this request. Nor can they, for "[i]t is well-settled that the Court cannot order advance disclosure of co-conspirator statements." *United States v. Annabi*, No. S1 10 Cr. 7 (CM), 2011 WL 6015635, at *4 (S.D.N.Y. Nov. 30, 2011); *see also, e.g., In re United States of America,* 834 F.2d 283, 286-87 (2d Cir. 1983) (granting mandamus to vacate order requiring production of witness statements); *United States v. Percevault,* 490 F.2d 126 (2d Cir. 1974) (holding that ordering Government to disclose witness statements under Rule 16(a) was "untenable").[4] Statements of unindicted co-conspirators will be contained within (1) statements made by witnesses that the Government has voluntarily produced to the defense pertaining to the question of the ownership of the Revack Entities; (2) trial exhibits,

---

[4] The Government is aware of its *Brady* and *Giglio* obligations, and the Court's standing order regarding *Brady* and *Giglio* disclosures, and will produce such material consistent with that Order.

which the Government has agreed to provide to the defense six weeks prior to the start of trial; and (3) 3500 material, which the Government will provide to the defense sufficiently in advance of the beginning of trial so as to allow the defendants to prepare.

In the alternative, the defendants request a list of all unindicted co-conspirators in the form of a bill of particulars.  (*See* Mem. at 13).  The Government anticipates that any unindicted co-conspirators would likely consist of individuals with close ties to von der Goltz, or who worked at the professional and financial services firms used by von der Goltz in creating and maintaining the Revack Entities and their assets, including but not limited to individuals who worked with Owens at Mossack Fonseca and the Owens Firm, and individuals who worked with Gaffey at the U.S. Accounting Firm.  However, the Government's investigation is ongoing as to the question of which of those individuals had the requisite intent to have joined the defendants in their criminal endeavors.

Given the relatively limited universe of individuals—all of whom would likely be known to Gaffey and/or von der Goltz—who might constitute unindicted co-conspirators, particularized identification of these individuals is not necessary.  As was the case in *United States v. Joseph*, No. 02 Cr. 1589 (LTS), 2003 WL 22019427 (S.D.N.Y. 2003), "the allegations here concern essentially the preparation of specifically identified tax returns" and tax documents which failed to disclose certain assets and income related to the Revack Entities and Bank Accounts "owned or controlled by a single individual"—von der Goltz.  *Id.*  at *2 (denying request for bill of particulars naming unindicted co-conspirators in tax fraud scheme).  Because "[a]ll of the charged transactions involve financial dealings in which a limited number of persons had an interest and as to which most, if not all, relevant information would have been confined to the Defendants and/or persons who reported to one or more of them directly or indirectly," there is "no need for a bill of particulars

19

identifying the un-indicted co-conspirators referred to in the Indictment in order to enable [the defendants] adequately to prepare [their] defense." *Id.* at *2. Indeed, even in broader and more sprawling fraud cases, courts routinely deny blanket requests for the identities of all co-conspirators. *See, e.g.*, *Percoco*, 2017 WL 6314146, at *1, *21 (denying request for bill of particulars identifying unindicted co-conspirators in eight-defendant "Buffalo Billion" case which "encompass[es] a range of federal crimes including Hobbs Act extortion, honest services wire fraud, federal funds bribery, and false statements," because the Indictment and Complaint contained "more than sufficient detail to enable [the defendants] to adequately prepare for trial" and "the Government's discovery production, although voluminous, has been accompanied by additional guidance that, in conjunction with the detail in the Indictment and Complaint, allows the Defendants to conduct a focused review of the production"); *Rittweger*, 259 F. Supp. 2d at 292 (concluding, in thirteen-count, multi-defendant securities fraud case that the indictment and discovery were sufficient and "[t]here is no need to provide a list of all unindicted co-conspirators"); *Trippe*, 171 F. Supp. 2d at 240 (denying a bill of particulars seeking names of all co-conspirators and aiders and/or abettors in securities and mail fraud case in light of sufficiency of information contained in the indictment and through discovery) (collecting cases); *see generally United States v. Wedd*, No. 15 Cr. 616 (KBF), 2016 WL 1055737, at *4 (S.D.N.Y. Mar. 10, 2016) (denying motion for bill of particulars in six-defendant mail and wire fraud and money laundering case and contrasting *United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000), because "here the underlying fraud is . . . adequately described in the Indictment to prevent prejudicial surprise"). At bottom, the defendants are simply not entitled to a bill of particulars outlining the "where, when, and with whom" the Government will prove the defendants conspired, *Trippe*, 171 F. Supp. 2d at 240; *United States v. Heredia*, No. 02 Cr. 1246 (SWK), 2003 WL 21524008, at *9

(S.D.N.Y. 2003); *see also, e.g.*, *Samsonov*, 2009 WL 176721, at *4 (noting that demand for particulars identifying co-conspirators was "a veiled attempt to discern who is cooperating with the Government"); *United States v. Rittweger*, 259 F. Supp. 2d at 292 ("There is no need to provide a list of all unindicted co-conspirators.").

The cases upon which the defendants rely counsel no different result.  (*Contra* Mem. at 14-17).  For instance, in *United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000),[5] former District Judge Scheindlin ordered the Government to file a bill of particulars in an eight-defendant health care fraud case in which the Indictment and discovery did little to identify the roles of each of the eight defendants or the conduct giving rise to the charges, or which of the "2,000 Medicare claims" found in discovery "were false and in what way there were false." *Id.* at 571.  *Nachamie* is readily distinguishable on its facts.  There, Judge Scheindlin found that the Indictment contained few, if any, specific allegations as to the roles played by each of the eight named defendants, all of whom were accused of conspiring to submit Medicaid claims that were alleged to be false in at least five different ways.  *Id.* at 571-73.  Finding that the Indictment and discovery materials thus gave each defendant little ability to understand his role in or connection to the charged conspiracy—or to other participants in the conspiracy—the court concluded that the Government needed to provide further detail about the nature of the charges against the defendants, including the identities of unindicted co-conspirators relevant to each of the eight defendants.  *Id.* at 571-

---

[5] The defendants put heavy emphasis on the "factors" set forth in *Nachamie* and applied with respect to the request in that case for the identities of co-conspirators.  (*See* Mem. at 14-16).  However, as *Nachamie* itself makes clear, those factors are only one method of evaluating the same standard set forth herein, namely whether "the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."  *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999).  As discussed above, thus, applying those "factors" here does not in any way alter the calculus because here, unlike in *Nachamie*, the Government has "otherwise . . . provided adequate notice of the particulars."  *Nachamie*, 91 F. Supp. 2d at 572.

73.   Similarly, in *United States v. Lino*, No. 00 Cr. 632 (WHP), 2001 WL 8356 (S.D.N.Y. 2001), a case with a twenty-three defendant, twenty-six count indictment charging a RICO enterprise with nineteen acts of racketing, including "four conspiracies to commit securities fraud, wire fraud, and commercial bribery, nine substantive securities fraud offenses, two money laundering conspiracies, a union pension fund fraud, and illegal kickback conspiracy, and one count of witness tampering," *id.* at *1-2, Judge Pauley ordered a bill of particulars in light of the fact that the "conspiracy alleged here involves a large number of defendants, is wide-ranging in terms of the nature of the predicate act and the amount of commerce affected, and is comprised of a number of schemes, some of which are temporally removed from the main stock manipulation scheme," others of which were described as of an "inchoate nature," *id.* at *13.   Under such circumstances, the court found there to be a higher likelihood for defendants "to be surprised by the identity of other co-conspirators, whom he may never have met."   *Id.; see also United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (noting that, in a case "when the Government charges criminal offenses under statutes as broad as RICO, [w]ith the wide latitude accorded to the prosecution to frame a charge that the defendant has conspired" to promote the RICO enterprise through a pattern of racketeering activity, "comes an obligation to particularize the nature of the charge to a degree that might not be necessary in prosecution of crimes of more limited scope").[6]

---

[6] The Defendants' brief also includes, without explanation, a stringcite of cases in which courts ordered the Government to identify co-conspirators. (Mem. at 13-14.) None of those cases supports the Defendants' position here. In each of those cases, the court identified particular factors not present here that created a risk of surprise to the defendant at trial. *See United States v. Kahale*, 789 F. Supp. 2d 359, 367-68 and 371-72 (E.D.N.Y. 2009) (noting sprawling nature of charged conspiracy to defraud investors and lenders nationwide and difficulty to defendant of identifying which transactions were legitimate and which were allegedly part of the fraud); *United States v. Ajemian*, No. 11 Cr. 1091 (VM), 2012 WL 6762011 (S.D.N.Y. 2012) (sprawling and long-running conspiracy to defraud Railroad Retirement Board by submitting false disability applications in large numbers); *United States v. Oruche*, No. 07 Cr. 0124 (WHP), 2008 WL 612694, at *4

This case presents an entirely different picture:  the particulars of the conduct giving rise to the charges are pled with specificity amplified by detailed and extensive discovery and additional information provided by the Government.  Indeed, the tax, wire fraud, and money laundering counts in which both Gaffey and von der Goltz are charged are similar, in that they all involve efforts that were undertaken by Gaffey, Owens, and von der Goltz to allow von der Goltz to benefit personally from assets and accounts held in the name of the Revack Entities, while hiding from the IRS that von der Goltz was receiving taxable income and capital gains therefrom.  Any co-conspirators would likely be limited to those known to Gaffey and von der Goltz, including "the Defendants and/or persons who reported to one or more of them directly or indirectly," *Joseph*, 2003 WL 22019427, at *2, such as their close confederates and agents at Mossack Fonseca, the Owens Firm, and the U.S. Accounting Firm, who were involved in the creation and maintenance of the Revack Entities and their assets.  Unlike in *Nachamie*, the Government alleges that the entirety of this endeavor was fraudulent at its core; the defendants need not parse through which business transactions relating to the Revack Entities and the Revack Holding Foundation are not part of the scheme, because the entities by design were created to hide assets and income from the IRS.

Given these facts, a bill of particulars identifying all unindicted co-conspirators at this juncture would only unfairly limit the government's proof and risk unfairly injuring the reputation of individuals who have not been charged with a crime by a grand jury, while the Government

---

(S.D.N.Y. 2012) (defendant alleged to have committed just one act as part of long-running narcotics conspiracy involving many players); *United States v. Savin*, No. 00 Cr. 45 (RWS), 2001 WL 243533, at *5 (S.D.N.Y. 2001) (indictment alleged complex investment fraud with six separate corporate victims and only contained one paragraph describing nature of conspiracy); *United States v. Failla*, 1993 WL 547419 (E.D.N.Y. 1993) (indictment alleged multiple conspiracies and multiple predicate acts for RICO charges and did not specify whether Government relied on conspiracy or aiding-and-abetting theory for RICO predicates).

continues its investigation.  In light of the relatively limited set of individuals—who would be known to Gaffey and/or von der Goltz—who might constitute unindicted co-conspirators, and the cabined and interrelated nature of the charges here, and the fact that the Government will provide further information, in the form of early disclosure of trial exhibits and 3500 materials, the defendants have more than adequate notice of the charges against them.

## CONCLUSION

The defendants' arguments establish the absence of a genuine *necessity* for further particulars, and the presence, instead, of an improper purpose to lock the Government into the details of its proof long in advance of trial.  For the foregoing reasons, the Government respectfully submits that the Court should deny the defendants' motions in their entirety.

Dated: New York, New York
      May 2, 2019

                        Respectfully submitted,

                        GEOFFREY S. BERMAN
                        United States Attorney
                        Southern District of New York

                        DEBORAH CONNOR
                        Chief, Money Laundering and
                        Asset Recovery Section
                        Criminal Division

By:    /s/ Thane Rehn
                        Eun Young Choi
                        Thane Rehn
                        Assistant United States Attorneys

                        Michael Parker
                        Parker Tobin
                        Trial Attorneys, Criminal Division