UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

UNITED STATES OF AMERICA,         :

         :

        -v.-         :      18 Cr. 693 (RMB)

         :

RAMSES OWENS,         :

  a/k/a "Ramses Owens Saad,"         :      **Oral Argument Requested**

DIRK BRAUER,         :

RICHARD GAFFEY,         :

  a/k/a "Dick Gaffey," and         :

HARALD JOACHIM VON DER GOLTZ,         :

  a/k/a "H.J. von der Goltz,"         :

  a/k/a "Johan von der Goltz,"         :

         :

        Defendants.         :

---------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT
## OF RICHARD GAFFEY'S MOTION FOR AN ORDER
## COMPELLING THE GOVERNMENT TO IDENTIFY
## THE DOCUMENTS IT INTENDS TO USE AT TRIAL

HOGAN LOVELLS US LLP

William J. Lovett

100 High Street, 20th Floor
Boston, MA 02110
Telephone: (617) 371-1007

Robert B. Buehler

390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3261
Fax:  (212) 918-3100

*Attorneys for Defendant*
*Richard Gaffey*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND .......................................................................................................................2

    The Government's Production of Discovery ...................................................................2

    The Government's Search of the Elder, Gaffey
        & Paine Server and Computers.........................................................................6

    Communications with the Government ..........................................................................9

ARGUMENT...........................................................................................................................10

    Legal Standard..............................................................................................................11

    Discussion .....................................................................................................................13

CONCLUSION........................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*United States v. Anderson*,
    416 F. Supp. 2d 110 (D.D.C. 2006) .............................................................................*passim*

*United States v. Bortnovsky*,
    820 F.2d 572 (2d Cir. 1987) ..............................................................................................12

*United States v. Cadden*,
    No. 14-10363-RGS, 2015 WL 5737144 (D. Mass. Sept. 30, 2015) ................................17, 18

*United States v. Cannone*,
    528 F.2d 296 (2d Cir. 1975) ..............................................................................................17

*United States v. de la Cruz-Paulino*,
    61 F.3d 986 (1st Cir. 1995)................................................................................................15

*United States v. Giffen*,
    379 F. Supp. 2d 337 (S.D.N.Y. 2004) ...............................................................................11

*United States v. McDonald*,
    No. 01-CR-1168(JS)(MLO), 2002 WL 2022215 (E.D.N.Y. Aug. 6, 2002) .............. 12, 15, 17

*United States v. Norman*,
    No. 05-CR-30015-DRH-4, 2005 WL 2739082 (S.D. Ill. Oct. 24, 2005)........................ 12, 15

*United States v. Poindexter*,
    727 F. Supp. 1470 (D.D.C. 1989) .....................................................................................13

*United States v. Rickets*,
    No. 15-153, 2015 WL 9478136 (E.D. La. Dec. 29, 2015) ..................................................13

*United States v. Turkish*,
    458 F. Supp. 874 (S.D.N.Y. 1978)....................................................................... 13, 15, 17

*United States v. Upton*,
    856 F. Supp. 727 (E.D.N.Y. 1994)...............................................................................*passim*

*United States v. Vilar*,
    530 F. Supp. 2d 616 (S.D.N.Y. 2008) ...............................................................................11

*United States v. Wey*,
    256 F. Supp. 3d 355 (S.D.N.Y. 2017) ...............................................................................18

**Statutes**

26 U.S.C. § 6103 ........................................................................................................6

**Other Authorities**

Fed. R. Crim. P. 12(b)(3) ..................................................................... 15, 18

Fed. R. Crim. P. 12(b)(4)(B) .............................................................. passim

Fed. R. Crim. P. 16(a)(1)(C) ...................................................................15

Fed. R. Crim. P. 16(a)(1)(E) .............................................................. *passim*

Fed. R. Crim. P. 16(d) ...............................................................................11

Pursuant to Federal Rules of Criminal Procedure 12 and 16, Richard Gaffey respectfully submits this memorandum of law in support of his motion for an Order directing the government to comply with its discovery obligations.

## PRELIMINARY STATEMENT

The government charged Mr. Gaffey and his co-defendant, Harald Joachim von der Goltz, in a sweeping indictment alleging that they conspired to commit tax evasion, wire fraud, and money laundering. The allegations involve numerous trusts and offshore companies, which were principally formed in the 1980s by Mr. von der Goltz's father. Not surprisingly, in a case spanning more than three decades that involves complicated allegations of fraud, numerous foreign and domestic bank accounts, and literally hundreds (if not thousands) of separate wire transfers and other distributions of funds, there is a massive amount of documentation. This is evident from the government's production of more than 5.6 million pages of discovery materials.

The government's production of millions of pages of discovery does not come close to fulfilling its obligations under Rules 12 and 16 of the Federal Rules of Criminal Procedure. Despite its protestations to the contrary, the government has engaged in a classic document dump. The government's approach consists of providing the defense with an utterly unmanageable number of documents and no roadmap or guide with which to navigate the page upon page of frequently incomprehensible or irrelevant material. Instead of complying with its obligation to identify the documents that it intends to use in its case-in-chief at trial, the government leaves Mr. Gaffey with the impossible task of finding the evidentiary needle in the documentary haystack.

The federal rules governing discovery are designed to enable a defendant to prepare his defense, make pretrial motions, and avoid surprise at trial. This is especially true in a years-long tax evasion and money laundering investigation involving complicated financial transactions.

The government's conduct compounds the problems caused by its large and indiscriminate document production, and does not satisfy its obligations under the federal rules. To the contrary, the government's manner of producing discovery makes it extremely difficult, if not impossible, for Mr. Gaffey to prepare a defense, make pretrial motions, and avoid surprise at trial. For these reasons, the government should be ordered to identify the specific documents it intends to introduce and rely upon at trial and to provide the defense with the search terms it used to review seized materials.

## BACKGROUND

In a letter dated January 7, 2019, which was sent three weeks after his arraignment in this matter, Mr. Gaffey formally requested discovery from the government pursuant to Rules 12 and 16 of the Federal Rules of Criminal Procedure. *See* Declaration of Robert B. Buehler ("Buehler Dec."), Exhibit 1. In particular, Mr. Gaffey requested that the government identify (1) "any evidence the government intends to offer or rely upon in its case-in-chief that: . . . Was contained in or derived from the materials seized by the government during the search executed at the offices of Elder, Gaffey & Paine, P.C. on August 8, 2017," pursuant to Fed. R. Crim. P. 12(b)(4)(B), and (2) "all physical evidence in the government's possession, custody, or control, including papers, documents, data, photographs, tangible objects, or other materials that . . . the government intends to use in its case-in-chief at trial," pursuant to Fed. R. Crim. P. 16(a)(1)(E).

### The Government's Production of Discovery

In response to Mr. Gaffey's discovery request, the government produced more than 5.6

million pages of documents. *See* Declaration of Rory Cahill ("Cahill Dec."), ¶ 4. The majority of the government's production, approximately 4.4 million pages, was seized by the government when it executed a search warrant on Mr. Gaffey's accounting firm, Elder, Gaffey & Paine, in August 2017 (the "seized documents"). Cahill Dec., ¶ 4. The remaining 1.2 million pages appear to have come from a variety of third-party sources, including banks and other financial institutions, different investment funds, government agencies, foreign governments, and individuals (the "third-party documents"). Cahill Dec., ¶¶ 3-4.

However, in its production letters to counsel for Mr. Gaffey, the government provided exceedingly little information about exactly where the discovery came from or precisely what the different categories of documents contain. Instead of providing anything resembling a detailed and clear index of the literally millions of pages of documents that it was producing, the government's production letters provided only vague and unhelpful descriptions of the sources, such as "Records Received from the IRS," "Panama TIEA Returns," "British Virgin Island MLAT Response," "Records Related to an Offshore Investment Conference," and "Documents Received from an Informal Request from Germany." *See* Buehler Dec., Ex.s 2 and 3.

Despite the fact that many of these categories contain thousands and thousands of pages of documents, the government provided no other information other than these general designations, which provide little or no guidance either as to their content, their source, or both. Indeed, the categories of materials that appear to be most critical to Mr. Gaffey's defense are lumped together under vague descriptions encompassing thousands or even tens of thousands of pages. *See* Buehler Dec., Ex.s 2 and 3 ("Panama TIEA Returns," 5 entries, 21,738 pages; "Records Received from the IRS," 5 entries, 3,806 pages; "Records Subpoenaed From Boston Capital Ventures," 11 entries, 349,511 pages).

Further, while several categories appear to consist of responses to official requests for documents from the government, neither the original request nor an index of the contents of the category is provided. After receiving the government's production, Mr. Gaffey made a written request to the government for "[c]opies of MLAT, TIEA, and other formal or informal requests for documents and information to foreign governments, entities and individuals." The government refused to produce any documents in response to this request. *See* Buehler Dec., Ex. 7.

In addition, the government produced some of the materials in formats that make the documents even harder to review. For instance, the government produced numerous PDFs, often hundreds of pages long, that contain dozens or more separate documents. Cahill Dec., ¶ 10. No descriptive information or metadata is provided for these PDFs apart from a single filename, which makes the documents difficult to search or review without manually reviewing each page. *Id*. The government provided no insight into how these documents were obtained, compiled or created, besides the scant category descriptions listed in the production letters. Simply put, the government's document production provides virtually zero assistance to Mr. Gaffey in his attempts to review and understand the contents of the many different document categories.

Moreover, not only did the government's method of discovery make it extremely difficult for Mr. Gaffey to assess and analyze the documents, a preliminary review of the materials revealed serious and systematic flaws in the government's discovery process. Among other problems, the government's massive production includes: (1) many irrelevant documents that are unrelated to this case; (2) documents seized from the Elder, Gaffey & Paine server that involve communications with clients and employees of the firm that fall outside the scope of Rule 16 and

the search warrant; and (3) privileged communications seized from Elder, Gaffey & Paine, some of which were apparently disclosed to the prosecution team.[1]

The government's production is deficient in other significant respects, as well. In particular, the government made little or no effort to identify documents produced by third parties that fall within the scope of Rule 16 and to separate the relevant documents from those that are unrelated to the allegations in this case. This resulted in the government producing thousands of irrelevant documents and will force Mr. Gaffey to waste considerable time wading through those meaningless materials. For example, the government produced approximately 31,000 pages of documents obtained from Credit Suisse. Cahill Dec., ¶ 11. A search of those documents revealed that only one-third of that total is related to this case and that the production contains extensive communications between Credit Suisse and Mossack Fonseca entirely unrelated to the parties named in the indictment. *Id.* Similarly, a production entitled "BVI MLAT Response" consists of various financial statements, audit documents, reports, and other materials from a disparate group of offshore entities, none of which appear to involve Mr. von der Goltz or include any of the specific entities which the government alleges were owned by Mr. von der Goltz. *Id.* ¶ 12.

Similar problems plague the production of documents from the IRS. Of the 229 documents in that production, 29 of them have no relation to Mr. Gaffey or Mr. von der Goltz. Cahill Dec., ¶ 13. Two of the IRS documents are spreadsheets containing lengthy lists of companies and individuals, with no information provided as to the origins of these lists or their significance. *Id.* Other documents consist of transcripts of Currency Transaction Reports and

---

[1] As soon as Mr. Gaffey's counsel realized that privileged materials had been included in the production and were available to the prosecution team, counsel alerted the government. The government has since informed counsel that it requested that the filter team claw back such communications until such time as the issue can be resolved. *See* Buehler Dec., Ex. 4.

IRS investigative reports pertaining to other individuals who may have done business with Mossack Fonseca but have no apparent link to Mr. Gaffey or Mr. von der Goltz and his family. *Id*.

More troubling is the production of the IRS Correspondence & Exam file for an individual identified in the indictment as Client-1. Cahill Dec., ¶ 14. While that production contains documents related to Client-1, it also includes tax return information for another taxpayer from Kentucky with no apparent connection to this investigation.[2] *Id*. Notably absent from the IRS production are documents that may be relevant to this case, including Client-1's Offshore Voluntary Disclosure Program submission that the government alleges was made in late 2013 and may have been influenced in some way by Mr. Gaffey's earlier advice to Client-1. *See* Indictment, ¶ 31.

Significantly, these same issues are not limited to the Credit Suisse, BVI and IRS productions; rather, they are found throughout the government's wider production. Cahill Dec., ¶ 15.

### The Government's Search of the Elder, Gaffey & Paine Server and Computers

On August 4, 2017, a search warrant was issued for the offices of Elder, Gaffey & Paine that authorized the search and seizure of hard-copy documents and electronically stored information ("ESI") related to Mossack Fonseca, Mr. von der Goltz, and related entities. *See* Buehler Dec., Ex. 5. The search warrant permitted the government to make mirror-images of computer devices and storage media found at Elder, Gaffey & Paine and authorized the government to review the ESI contained therein for information within the scope of the warrant.

---

[2] The production of this material may even violate the disclosure provision of 26 U.S.C. § 6103, which prohibits the unauthorized disclosure of tax return and tax return information.

The search warrant also required the government to "make reasonable efforts to search only for files, documents and other electronically stored information within the categories identified" in the warrant. *Id.* Four days later, on August 8, 2017, IRS agents executed the search warrant and seized, among other items, a mirror image of the main Elder, Gaffey & Paine computer server, as well as mirror images of computers belonging to specific employees. *See* Buehler Dec., Ex. 6.

In the immediate aftermath of the government's seizure of all ESI contained on the Elder, Gaffey & Paine server, counsel for Mr. Gaffey was concerned that the government was now in possession of information protected by the attorney-client privilege, as well as materials related to clients of the firm that had nothing to do with the issues raised in the warrant. As a result, the day after the warrant was executed, Mr. Gaffey's counsel sent a letter to the prosecution team requesting that the government institute appropriate taint procedures to identify only those documents that fall within the scope of the search warrant and to segregate all privileged communications. *See* Buehler Dec., Ex. 6. The letter put the government on notice that it had seized privileged attorney-client communications, as well as files and communications related to clients not named in the search warrant. The letter explicitly requested that the government not permit the prosecution team to have access to those materials. The letter also identified certain specific categories of documents constituting privileged communications that were likely seized.

Based on the government's document productions, it appears that the government largely ignored counsel's requests and instead accessed communications that were either privileged or involved unrelated clients. Counsel's review of the seized documents examined by the filter team demonstrates that the government exceeded the scope of the search warrant when searching the Elder, Gaffey & Paine server and improperly accessed numerous privileged

communications.[3] These communications include at least 23 plainly privileged emails between Mr. Gaffey and his attorneys in this matter that addressed the review and production of documents in response to grand jury subpoenas. Cahill Dec., ¶ 8. In addition, the privileged communications also include 146 emails between Mr. Gaffey and Abrahm Smith, a Baker & McKenzie attorney who represented Mr. von der Goltz, some of which were identified on a privilege log produced to the government by Elder, Gaffey & Paine in response to a grand jury subpoena. *Id.*; *see also* Buehler Dec., ¶ 7, Ex. 4. Significantly, both of these categories of documents were identified as potentially privileged in the August 9, 2017 letter from Mr. Gaffey's counsel to the government. *See* Buehler Dec., Ex. 6.

The government's production of materials seized during the search of Elder, Gaffey & Paine's offices also includes numerous documents unrelated to this case involving communications between Elder, Gaffey & Paine partners and clients that are clearly not within the scope of the search warrant. Cahill Dec., ¶¶ 8-9. In order to get a sense of just how many unresponsive documents were included in the government's production, Mr. Gaffey's counsel selected a random sample of 50 documents seized from Elder, Gaffey & Paine that were identified by the government as non-privileged documents. *Id.* ¶ 9. Only five of those

---

[3] In a telephone conversation with counsel for Mr. Gaffey, on March 6, 2019, the government explained its methodology for searching the ESI seized from Elder, Gaffey & Paine and for ensuring that the attorney-client privilege was protected. *See* Buehler Dec., ¶¶ 3-5. Based on the March 6 conversation with the government, defense counsel understands that the government applied search terms to the ESI contained on the Elder, Gaffey & Paine server and other seized computers to identify documents that fell within the scope of the search warrant. Through that process, based on the documents produced to Mr. Gaffey, counsel believes that the government identified 4,361,135 pages of documents. Cahill Dec., ¶ 4. These documents include both electronic and hard copy records that were seized. The government then applied a second set of search terms to identify potentially privileged documents among the documents that were deemed to be responsive to the warrant. After a review by the filter team, the government produced three sets of documents. The first set consisted of responsive documents that did not contain any of the search terms related to attorney-client privilege. The second set, totaling 576,264 pages, consisted of responsive documents that contained search terms related to the privilege but which the government's filter team determined not to be privileged. *Id.* ¶ 6. The first two sets of documents were made available to the prosecution team. The third set, totaling 53,017 pages, were responsive documents that the government's filter team determined to be potentially privileged and were withheld from the prosecution team. *Id.* ¶ 7. Mr. Gaffey requested that the government disclose the search terms applied to the seized ESI, but the government denied his request. *See* Buehler Dec., ¶¶ 3-6, Ex. 7.

8

documents have any relevance to Mr. von der Goltz or this case. Of the remaining 45 documents, 34 relate to communications involving other Elder, Gaffey & Paine clients, ten are personal emails or spam, and one is software code that contains no discoverable information. *Id.* A separate review of a portion of the government's production of seized documents revealed an additional 172 emails to or from Elder, Gaffey & Paine partners (other than Mr. Gaffey) that are either communications with other clients or spam. *Id.* ¶ 8. These reviews establish that the government's production of seized documents is replete with materials that are outside the scope of the search warrant, Rule 16, or both.

### Communications with the Government

The government produced the 5.6 million pages of discovery to Mr. Gaffey in two productions, on January 18, 2019, and February 20, 2019. Following these productions, on March 6, 2019, counsel for Mr. Gaffey and the government engaged in a telephone conference regarding, among other things, the document productions and the government's methodology for searching the materials seized from Elder, Gaffey & Paine. *See* Buehler Dec., ¶¶ 2-4. During this call, defense counsel reiterated some of the requests that had been made in the January 7, 2019 discovery letter, and raised some new issues, as well. *Id.* ¶ 3. In particular, during the call and in a follow-up email memorializing the call, counsel for Mr. Gaffey requested that the government identify "seized documents that the government intends on using in its case-in-chief," "[s]earch terms applied to the Elder Gaffey & Paine ("EGP") server, Gaffey computer and Tremarche computer to identify documents produced on February 20th," and "[s]earch terms applied to the documents identified as responsive from the EGP server, Gaffey computer and Tremarche computer to identify potentially privileged materials." Buehler Dec., ¶¶ 2-4, Ex. 7.

The government responded to Mr. Gaffey's follow-up discovery request in an email on March 15. With regard to Mr. Gaffey's request for the government to identify the seized documents that it intends to use at trial, the government replied, "Because of the volume of discovery in this case, we are willing to provide such a draft of our anticipated exhibit list earlier than usual. We propose to produce a draft exhibit list six weeks prior to trial." *See* Buehler Dec., Ex. 7. The government refused Mr. Gaffey's requests for the search terms it used to review the seized documents, stating, "We don't believe the search terms are covered by Rule 16 or any other discovery obligation." *Id.*

On May 7, 2019, the government informed counsel for Mr. Gaffey and Mr. von der Goltz that it was making an additional production of documents as part of its discovery. The documents include approximately 55,000 additional pages of documents that were seized during the search of Elder, Gaffey & Paine, which were apparently reviewed by the filter team and cleared for production, but were inadvertently left out of the earlier productions. In addition, the government will be producing documents that it received pursuant to an MLAT request to Germany. These documents will be produced on a rolling basis. *See* Buehler Dec., ¶ 9.

## ARGUMENT

The government's flawed document productions place Mr. Gaffey in an untenable position as he attempts to prepare for trial. By itself, the sheer volume of documents that the government produced puts Mr. Gaffey at a great disadvantage. Beyond the massive amount of documents, moreover, numerous other characteristics of the government's productions – the lack of any detailed index or summary of the documents; the inclusion of numerous irrelevant and unrelated documents; the missing metadata for certain documents; and the formatting of document compilations that defy easy review – all compound the problem. Instead of complying

with its obligations under Rules 12 and 16 to identify the documents it intends to use at trial, the government ignored those rules and, in the process, made it impossible for Mr. Gaffey to prepare for trial or file pretrial motions. For these reasons, the Court should order the government to (1) identify the seized documents that it intends to use in its case-in-chief at trial, pursuant to Rule 12(b)(4)(B), (2) identify the third-party documents that it intends to use in its case-in-chief at trial, pursuant to Rule 16(a)(1)(E)(ii), and (3) provide the defense with the search terms it used to search the ESI seized from Elder, Gaffey & Paine, pursuant to Rules 12 and 16.

## Legal Standard

Rule 16 provides the district court with broad powers to regulate discovery in federal criminal cases. Fed. R. Crim. P. 16(d) ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."). Consistent with Rule 16's broad grant of authority, "the overwhelming majority of district courts, in accord with Second Circuit authority, favor the view that 'it is within a district court's authority to direct the Government to identify [prior to trial] the documents it intends to rely on in its case in chief.'" *United States v. Vilar*, 530 F. Supp. 2d 616, 639 (S.D.N.Y. 2008); *see also United States v. Giffen*, 379 F. Supp. 2d 337, 344 (S.D.N.Y. 2004) ("based on the policy concerns of Rule 16 and principles of fairness, it is within a district court's authority to direct the Government to identify the documents it intends to rely on in its case in chief").

Both Rule 12 and Rule 16 contain similar requirements for the government to identify which of certain categories of documents it intends to use at trial. Pursuant to Rule 16, the government is directed to disclose papers, documents and tangible objects that, among other things, "the government intends to use . . . in its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(E)(ii). Rule 12 imposes an additional discovery obligation on the government by

requiring the government, on request of the defendant, to provide notice to the defendant of its intent to use seized evidence in its case-in-chief. Fed. R. Crim. P. 12(b)(4)(B). The purpose of these rules is to allow defendants to prepare for trial and to move to suppress evidence in a timely manner. *See, e.g., United States v. Anderson*, 416 F. Supp. 2d 110, 112-14 (D.D.C. 2006); *United States v. Upton*, 856 F. Supp. 727, 746-48 (E.D.N.Y. 1994).

With respect to Rule 12(b)(4)(B), courts have made clear that the government's obligation to identify the seized documents that it intends to use at trial is mandatory and that, as a result, the government is required to notify a defendant of the documents that it plans to use in its case-in-chief. *See United States v. Anderson*, 416 F. Supp. 2d at 112; *United States v. Norman*, No. 05-CR-30015-DRH-4, 2005 WL 2739082, at *2 (S.D. Ill. Oct. 24, 2005) ("the government is obligated to comply with both Rule 16 and Rule 12(b)(4)(B)."). As the court in *Anderson* stated, "the government, either on its own or in response to a request by the defendant, *must* notify the defendant of its intent to use certain evidence in order to give the defendant an opportunity before trial to move to suppress that evidence." *Anderson*, 416 F. Supp. 2d at 112 (*quoting* Fed. R. Crim. P. 12, Notes of the Committee on the Judiciary to 1975 Enactment, Amendments Proposed by the Supreme Court, H.R.Rep. No. 94-247) (emphasis in original). Accordingly, "[d]efendant's entitlement under Rule 12(b)(4)(B), then, is clear: of the material seized from [defendant's] home and office, the government must notify defendant of the evidence that it intends to use in its case-in-chief – that is, the evidence that will appear on the government's exhibit list for trial." *Id.* at 112.

Similarly, in considering a defendant's request that the government identify the documents in its possession that it intends to use at trial pursuant to Rule 16(a)(1)(E)(ii), courts in this circuit and elsewhere have routinely exercised their authority under Rule 16 to order the

government to do so. *See United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) ("Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified"); *United States v. McDonald*, No. 01-CR-1168(JS)(MLO), 2002 WL 2022215, at *3 (E.D.N.Y. Aug. 6, 2002) ("although the government [wa]s not required to organize its documentary evidence, in this case the government [was] required to identify documents upon which it w[ould] rely"); *United States v. Upton*, 856 F. Supp. at 747-48 (requiring government to specify from the thousands of documents produced, those documents it planned on relying on at trial); *United States v. Rickets*, No. 15-153, 2015 WL 9478136, at *3 (E.D. La. Dec. 29, 2015) ("Under [Rule 16(a)(1)(E)], the Government must identify specifically which items it intends to use in its case-in-chief at trial."); *United States v. Poindexter*, 727 F. Supp. 1470, 1484 (D.D.C. 1989) (government may not take a "broad brush approach" to discovery by identifying several thousands of pages of documents, any of which it may rely on at trial); *United States v. Turkish*, 458 F. Supp. 874, 882 (S.D.N.Y. 1978) (government may not bury defendant in paper by merely making all of the documents available).

## Discussion

Mr. Gaffey is seeking the following relief from the Court related to the government's production of discovery in this case: First, pursuant to Rule 16, the government should be ordered to identify which of the third-party documents it intends to use in its case-in-chief at trial. Second, pursuant to Rule 12, the government should be ordered to identify which of the seized documents it intends to use in its case-in-chief at trial. Third, pursuant to Rules 12 and 16, the government should be ordered to produce to the defense the search terms it utilized to

review the seized documents. Without this information, Mr. Gaffey will be unable to prepare for trial or to file timely pretrial suppression motions.

As an initial matter, under Rule 16(a)(1)(E)(ii), Mr. Gaffey is entitled to have the government identify the third-party documents that it intends to use at trial. To date, the government has produced more than 1.2 million pages of documents that it received from various third parties. Even if these were the only documents produced by the government in this case, it would be a daunting task to review such a large volume of documents effectively before trial. But, as noted, these documents actually constitute only a little more than 20 percent of the overall document discovery. In addition to the volume, a preliminary review of these documents shows that the production is overbroad and includes a seemingly large number of documents that are unrelated to this case and are outside the scope of Rule 16. The lack of metadata and the formatting of some of the documents only compound the difficulty of conducting a reasonably efficient review of the discovery. Absent a court order directing the government to identify the documents it intends to use at trial, Mr. Gaffey will be unable to determine what documents produced by the government are relevant to this case.

In circumstances where the government produced far fewer documents in discovery than the 5.6 million pages produced to Mr. Gaffey, courts have not hesitated to order the government to identify forthwith the documents produced in discovery that it intends to use at trial. In *United States v. Upton*, where the government produced "thousands of pieces of paper," the court rejected the government's claim that it was not required to inform defendants of the documents it planned to rely upon at trial because, among other reasons put forward by the government, the defendants were familiar with the significance of the documents and the government would provide trial exhibits prior to trial. 856 F. Supp. at 748. In so holding, the court pointed out that

none of the government's arguments "adequately explain why defendants should be kept in the dark until trial." *Id*. The court went on to note that whether the defendants had some familiarity with the documents was irrelevant to the dispute, holding that, "[t]he *purpose* of requiring the government to identify which documents it will rely upon at trial in a situation such as this – where there are thousands of documents – is to allow the defendant to adequately prepare his or her defense. General familiarity with the nature of the documents . . . will not allow defendants to do that if they are not informed which documents" the government will rely upon at trial. *Id*. (emphasis in original).

Similarly, in *United States v. McDonald*, the government refused the defendants' requests to identify the documents it intended to use at trial, claiming that it had fully complied with its discovery obligations when it produced approximately 200,000 pages of documents. 2002 WL 2022215, at *1. Relying on the reasoning in *Upton*, the court in *McDonald* nonetheless ordered the government "to identify documents upon which it will rely." *Id*. at *3. Again, in *United States v. Turkish*, a tax evasion case, one of the defendants "s[ought] a direction to the government to indicate which of the approximately 25,000 documents relating to th[e] case in the government's possession it intend[ed] to use at trial, rather than 'bury(ing) the defendant in paper' by merely generally making all of the documents available to defendants." 458 F. Supp. at 882. Referring to the plain language of Rule 16(a)(1)(C), the court ordered the government "to identify to the defendants those documents which it intend[ed] to offer, or to use or to refer to in connection with the testimony of any witness, on its case in chief." *Id*.

Mr. Gaffey's need for the government to identify the seized documents it intends to use at trial is even stronger, as is his right to such information. As noted, the government's obligation to comply with Rule 12(b)(4)(B) is mandatory. *See Anderson*, 416 F. Supp. 2d at 112; *United*

*States v. Norman*, 2005 WL 2739082, at \*2.  The purpose of Rule 12(b)(4)(B) is, as the rule itself states, to provide the defendant with "an opportunity to move to suppress evidence."  *See United States v. de la Cruz-Paulino*, 61 F.3d 986, 994 (1st Cir. 1995) (the rule "was designed to aid defendants in fulfilling their Rule 12(b)(3) obligation to make suppression motions prior to trial.").  Given that the government has produced approximately 4.4 million pages of seized documents from the search of Elder, Gaffey & Paine, it is especially imperative that the government comply with the requirements of Rule 12(b)(4)(B).

The decision in *Anderson* is especially instructive and relevant to this case.  In *Anderson*, the court addressed a situation similar to the circumstances facing Mr. Gaffey and ordered the government to identify for the defendant the documents it intended to offer in its case-in-chief at trial: (1) from those that were seized from the defendant's place of business; and (2) from those it obtained from third parties, such as banks, other financial institutions, and foreign sources.  416 F. Supp. 2d at 112-14.  Like Mr. Gaffey, the defendant in *Anderson* was charged with tax evasion and was provided with a large volume of discovery – 500,000 pages – which consisted of materials that were both seized during searches and produced in response to grand jury subpoenas and other requests.  *Id.* at 114 (government produced 500,000 pages of discovery).  Also like Mr. Gaffey, the defendant in *Anderson* moved, pursuant to Rules 12(b)(4)(B) and 16(a)(1)(E)(ii), to compel the government to identify the documents that the government intended to introduce in its case-in-chief.  *Id.* at 111.  In granting the motion, the court stated, "[g]iven the enormous volume of material produced in this case and defendant's limited resources, it is apparent that requiring defendant's counsel to peruse each page of the materials at issue here – in effect, to duplicate the work of document review presumably already done by the government – would materially impede defendant's counsel's ability to prepare an adequate

defense." *Id*. at 114. The *Anderson* court concluded by noting that "[i]t is in both [the defendant]'s and the government's interest that the defendant be able to mount an adequate defense and/or engage in meaningful plea discussions, and it is the Court's view that the identification and production of the requested information will help to ensure that he can." *Id*. at 115. The reasoning in *Anderson* is equally applicable here.

Moreover, compared to the defendants in the cases cited above, Mr. Gaffey's need for the government to identify the documents that it intends to use in its case-in-chief – both those that were obtained from third parties and those that were seized from his firm – is even more pronounced because of the far greater amount of discovery produced here – 5.6 million pages. *See, e.g., Anderson*, 416 F. Supp. 2d at 114 ("500,000 pages"); *McDonald*, 2002 WL 2022215, at *1 ("the government had produced 76 boxes of documents consisting of approximately 200,000 pages"); *Upton*, 856 F. Supp. at 747 ("the government has produced thousands of pieces of paper"); *Turkish*, 458 F. Supp. at 882 ("approximately 25,000 documents relating to this case in the government's possession"). In sum, the 5.6 million pages of documents that were produced to Mr. Gaffey dwarf by a significant degree the productions made to the defendants in the cited cases, all of whom received the early identification of evidence that Mr. Gaffey is requesting.

Finally, given that the seized documents produced by the government include numerous emails and other materials that are either privileged or not related to this case, the Court should also order the government to produce the search terms that the government used to review the seized documents. The Second Circuit has recognized that the district court has inherent authority to regulate the nature of discovery. *See United States v. Cannone*, 528 F.2d 296, 298 (2d Cir. 1975). Where, as here, the government's review of seized documents appears to have been deficient and has led to the production of materials that should not have been produced in

discovery – because they are privileged or irrelevant to the case – the defendant should have the opportunity to evaluate the search terms used by the government. *See United States v. Cadden*, No. 14-10363-RGS, 2015 WL 5737144, at *1 (D. Mass. Sept. 30, 2015). In *Cadden*, the defendants brought a motion to compel the government to produce six categories of discovery, including a list of the search terms used by the government to capture the 1.1 million emails that were produced to the defendants. In holding that the government should produce the search terms, the court determined that "[t]he search terms [we]re material in the sense that defendants ha[d] no other means by which to test the inclusiveness of the government's selection of the material that it produced pursuant to its obligations under Fed. R. Crim. P. 16(a)(1)(E)." *Id.* at *2.

Here, if the government's search terms were too broad or not reasonably designed to locate only non-privileged, responsive documents, then Mr. Gaffey would be in a position to move to suppress the fruits of the search. This is precisely the purpose behind Rule 12(b)(3)(C), which requires a defendant to make all suppression motions prior to trial. For this reason, search terms are deemed to be relevant in the context of search and seizures of large amounts of ESI. For example, in *United States v. Wey*, the search terms used by the government to search ESI that had been seized pursuant to a warrant, which the defendant successfully suppressed, were discussed at length at the suppression hearing. *See* Buehler Dec., Ex. 8 (Transcript of Suppression Hearing at 20-27, *United States v. Wey*, 256 F. Supp. 3d 355 (S.D.N.Y. 2017) (No. 15-611)). In sum, having the search terms used by the government will allow Mr. Gaffey to make a decision about whether to file a suppression motion that does not waste the Court's time or his own limited resources.

Accordingly, in light of the government's large, unwieldy and flawed document productions in this case, the Court should order the government forthwith to identify which of the third-party documents and which of the seized documents it intends to use in its case-in-chief. The Court should also exercise its authority under Rules 12 and 16 to order the government to provide its search terms to the defense.

## CONCLUSION

For the reasons set forth above, the government should be ordered to take the following steps forthwith:

- Identify the documents seized during the search of Elder, Gaffey & Paine that the government intends to use in its case-in-chief;

- Identify the documents obtained from third parties that the government intends to use in its case-in-chief; and

- Produce the search terms used by the government to search the ESI contained on the server and other computers that were seized by the government during the search of Elder, Gaffey & Paine.

Dated:  New York, New York
         May 7, 2019

                                        Respectfully submitted,


                                        Hogan Lovells US LLP

                                        /s/ William J. Lovett
                                        William J. Lovett

                                        100 High Street, 20th Floor
                                        Boston, MA 02110
                                        Telephone: (617) 371-1007


                                        /s/ Robert B. Buehler
                                        Robert B. Buehler

                                        390 Madison Avenue
                                        New York, NY 10017
                                        Telephone: (212) 918-3261

                                        *Attorneys for Richard Gaffey*