UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

UNITED STATES OF AMERICA,    :

    :

    -v.-    :    18 Cr. 693 (RMB)

    :

RAMSES OWENS,    :

   a/k/a "Ramses Owens Saad,"    :    **Oral Argument Requested**

DIRK BRAUER,    :

RICHARD GAFFEY,    :

   a/k/a "Dick Gaffey," and    :

HARALD JOACHIM VON DER GOLTZ,    :

   a/k/a "H.J. von der Goltz,"    :

   a/k/a "Johan von der Goltz,"    :

    :

    Defendants.    :

-------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF RICHARD GAFFEY'S MOTION FOR AN ORDER COMPELLING THE GOVERNMENT TO IDENTIFY THE DOCUMENTS IT INTENDS TO USE AT TRIAL

HOGAN LOVELLS US LLP

William J. Lovett

100 High Street, 20th Floor
Boston, MA 02110
Telephone: (617) 371-1007

Robert B. Buehler

390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3261
Fax: (212) 918-3100

*Attorneys for Defendant Richard Gaffey*

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 3

      A.     Mr. Gaffey Is Entitled to Know the Documents the Government Intends to Use in its Case-in-Chief. ............................................................................4

      B.     Mr. Gaffey Is Entitled to the Disclosure of the Search Terms the Government Used to Search the Seized ESI. ...........................................................9

CONCLUSION ..................................................................................................................... 10

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*United States v. Chalmers*,
  474 F. Supp. 2d 555 (S.D.N.Y. 2007)..........................................................................4

*United States v. Conyers*,
  No. 15-CR-537 (VEC), 2016 WL 7189850 (S.D.N.Y. Dec. 9, 2016).....................................8

*United States v. Giffen*,
  379 F. Supp. 2d 337 (S.D.N.Y. 2004)..........................................................................4

*United States v. Hutchins*,
  No 17-CR-124, 2018 WL 1695499 (E.D. Wis. Apr. 6, 2018)...................................8

*United States v. Juan Vincent Gomez Castrillon*,
  No. S2 05 CR. 156 (CM), 2007 WL 2398810 (S.D.N.Y. Aug. 15, 2007) ..............................8

*United States v. Lino*,
  No. 00 Cr. 632 (WHP), 2001 WL 8356 (S.D.N.Y. Jan. 2, 2001) .........................................4, 5

**Other Authorities**

Fed. R. Crim. P. 12 ................................................................................................... *passim*

Fed. R. Crim P. 16 ................................................................................................... *passim*

Richard Gaffey respectfully submits this reply memorandum of law in further support of his motion for an Order directing the government to indicate which documents it intends to rely upon at trial and to produce the search terms it utilized to review seized materials, pursuant to Federal Rules of Criminal Procedure 12 and 16.

## PRELIMINARY STATEMENT

Despite the government's repeated denials that it engaged in a document dump when it produced more than 5.6 million pages of discovery on Mr. Gaffey, that is exactly what it did. Indeed, the government does not dispute Mr. Gaffey's claims that its document production was flawed and deficient in several important respects, such as by including (i) documents that have nothing to do with this case, (ii) privileged materials that were made available to the prosecution team, and (iii) documents that do not contain metadata and are not searchable. *See* Opp. Br. 4-5.[1] The government even admits that it did not actually review the discovery prior to production. *See* Opp. Br. at 4 ("[t]he investigation team was unaware that these documents were in the discovery and never relied on these documents."). As a result of the serious deficiencies that Mr. Gaffey identified and that the government has effectively conceded, the government cannot credibly claim that it has met its most basic discovery obligations under Rule 12 and Rule 16.

Contrary to the government's characterization (Opp. Br. at 1-2), Mr. Gaffey's motion does not rely solely on the size of the government's document production – even though, at more than 5.6 million pages, it is truly massive and virtually unprecedented in a tax evasion case. Just as important as the volume of discovery, if not more so, is the fact that the millions of pages of discovery produced by the government contain so many documents that are clearly unrelated to the allegations in this case. In his opening brief, Mr. Gaffey described a number of examples of irrelevant documents that were contained in the government's document production. Of course,

---

[1]  The Government's opposition brief, Dkt. No. 96, is cited as "Opp. Br."

given that the production consists of millions of pages, there is no way for Mr. Gaffey to catalogue all of the instances where the government produced documents unrelated to this case. But the point of the exercise is to demonstrate that not only did the government dump millions and millions of pages of documents on Mr. Gaffey in discovery, it also did not bother to ensure that those documents were actually related to this case, which it is required to do under Rules 12 and 16.  By not making even rudimentary efforts to review the discovery and produce only those documents that are covered by Rules 12 and 16, the government compounded the difficulties created by a voluminous document production and, in the process, made it nearly impossible for Mr. Gaffey to prepare for trial.

In order to remedy the problems caused by the government's lax approach to discovery, Mr. Gaffey's request for the government to identify the documents it intends to use at trial is entirely reasonable.  The limited relief sought by Mr. Gaffey is needed to put him in a position where he can conduct the necessary document review and prepare his defense.

Instead of recognizing the many serious problems in its document production, the Government instead mischaracterizes Mr. Gaffey's request as one for "early identification of trial exhibits" and minimizes the significant deficiencies in its handling of discovery.  Opp. Br. at 1, 3-5.  In fact, Mr. Gaffey did not request early identification of trial exhibits.  Mr. Gaffey has merely asked for the production and identification of documents the government is required to produce pursuant to Rules 12 and 16 – namely, documents related to the allegations in this case – as opposed to the production of numerous unrelated documents that are not encompassed by either Rule 12 or Rule 16.  Simply put, the government should be required to identify which of the 5.6 million pages of discovery fall within the scope of Rules 12 or 16.

Further, the government should be required to produce the search terms it used to review the server and computers that it seized from Mr. Gaffey's accounting firm, Elder, Gaffey & Paine. The government's claim that the search terms are somehow not relevant to a possible motion to suppress the fruits of the search could not be more mistaken. While the search warrant may have given the government the right to seize certain electronically stored information ("ESI") from Elder, Gaffey & Paine, it nonetheless required the government to use "reasonable efforts" when searching the ESI itself. The search terms are the means by which the government effectuated the actual search, and the only way for Mr. Gaffey to determine whether the government complied with the warrant's explicit requirement to use "reasonable efforts" is by reviewing the search terms. It is frankly hard to understand why the government has refused to comply with this simple, straightforward and utterly reasonable request.

## ARGUMENT

The limited relief requested by Mr. Gaffey is narrowly designed to enable him to conduct a reasonably efficient review of the government's discovery and to determine whether to move to suppress the evidence recovered during the search of his accounting firm. Significantly, the only reason that Mr. Gaffey filed this motion in the first place is to remedy the problems created by the government's indiscriminate document production. Had the government complied with its obligations under Rules 12 and 16 by identifying and producing only those documents that are within the scope of those rules, then Mr. Gaffey would not have needed to seek the Court's assistance in compelling the government to comply with its discovery obligations now. Accordingly, Mr. Gaffey asks the Court to order the government to (1) identify the seized documents that it intends to use in its case-in-chief at trial, pursuant to Rule 12(b)(4)(B), (2) identify the third-party documents that it intends to use in its case-in-chief at trial, pursuant to

3

Rule 16(a)(1)(E)(ii), and (3) provide the defense with the search terms it used to search the ESI

seized from Elder, Gaffey & Paine, pursuant to Rules 12 and 16.

     **A.**    **Mr. Gaffey Is Entitled to Know the Documents the Government Intends to Use in its Case-in-Chief.**

The government argues that there is no basis to compel it to produce an exhibit list

months in advance of trial and that, in any event, the defense is not entitled to early identification

of the government's trial exhibits because the government has committed to producing a list of

such exhibits six weeks prior to trial.  *See* Opp. Br. at 1, 5-6.  However, Mr. Gaffey is not asking

for the government's final trial exhibit list.  He is instead seeking to compel the government to

comply with its Rule 12 and Rule 16 discovery obligations and identify the documents relevant

to this case.  This request includes but is not limited to documents the government intends to use

as exhibits in its case-in-chief.

Given the government's mischaracterization of Mr. Gaffey's motion, it is not surprising

that all of the cases cited in its opposition relate to the early identification of trial exhibits and a

party's specific request for an exhibit list.  *See, e.g., United States v. Giffen*, 379 F. Supp. 2d 337,

344 (S.D.N.Y. 2004) ("Giffen seeks an exhibit list two months in advance of trial."); *United

States v. Chalmers*, 474 F. Supp. 2d 555, 572 (S.D.N.Y. 2007) ("The Bayoil Defendants ask the

Court to require the Government to produce its exhibit and witness lists in advance of trial.").

Unlike these cases, Mr. Gaffey is not requesting early identification of the government's trial

exhibits; rather, he is requesting that the Government produce only the relevant documents

within the scope of Rules 12 and 16, and exclude the many unrelated documents that are

contained within the production.

The government's reliance on *United States v. Lino*, No. 00 Cr. 632 (WHP), 2001 WL 8356 (S.D.N.Y. Jan. 2, 2001), is similarly misplaced. In *Lino*, the court denied the defendants' application to order the government to identify immediately the documents it intends to use at trial because "[t]he allegations in the indictment, coupled with the discovery available to defendants and th[e] Court's rulings on defendants' requests for particulars, sufficiently advise[d] defendants of the securities at issue and the firms involved in their sale or offer for sale." *Id*. at *20. The *Lino* court also noted that "the Government ha[d] compiled detailed indices of certain documents obtained . . . that identif[ied] specific categories of documents relevant to particular defendants or discrete portions of the indictment." *Id.*

The situation in *Lino* stands in sharp contrast to this case, where the government has not completed any of the steps that were taken in *Lino*. For example, as discussed in Mr. Gaffey's opening brief (at 3-4), the government failed to provide a meaningful index that identifies "specific categories of documents relevant to particular defendants or discrete portions of the indictment," as occurred in *Lino*, and instead merely provided the defense with a general listing of document categories that was too vague and broad to provide any help whatsoever. In addition, contrary to the careful production that was made in *Lino*, the government here simply reproduced documents from third parties without regard to whether the documents are relevant to this case. The court's reasoning in *Lino* confirms that the issues raised by Mr. Gaffey with respect to deficiencies in the government's discovery are central to the relief he requests. When the discovery is wholly inadequate, as it is here, the identification of documents is required for the defendant to effectively defend himself.

Again, it bears repeating that the government's blunderbuss approach to discovery and its failure to adhere to the requirements imposed on it by the relevant federal rules are the only

reasons why this motion was filed.  The Credit Suisse production is an example of the flaws created by the government's approach to discovery.  That approach includes turning over entire productions received from third parties related to the Panama Papers investigation without first reviewing the documents to determine which documents are related to this case.  Here, the government apparently made an informal request to Credit Suisse for documents related to the Panama Papers investigation.  In response to this request, Credit Suisse produced documents to the government that included clients, entities, and information unrelated to this case.  The government, in turn, produced the entire Credit Suisse production to Mr. Gaffey.  When defense counsel raised this issue with the government, the government agreed to contact Credit Suisse in order to identify the relevant Bates ranges in the Credit Suisse production.  To date, the government has not provided this information to the defense.  However, in the context of this motion, the Credit Suisse documents constitute a microcosm of the larger problem that infects the government's overall production of 5.6 million pages of discovery.  It is this problem – caused solely by the government – that Mr. Gaffey's motion seeks to remedy.

The government argues that "[m]uch of the defendants' motion is devoted to raising purported flaws in the government's disclosures to date in this case" and that "the motion's detailed recitation of minor issues in the discovery materials reveals that defense counsel is fully familiar with the facts of this case and more than capable of reviewing the discovery."  Opp. Br. at 1.  This argument is specious and disingenuous.  As an initial matter, the deficiencies pointed out in Mr. Gaffey's opening brief are only examples of the broader problems that exist in the government's discovery.  While these examples clearly provide support for Mr. Gaffey's requested relief, they are not meant to be exhaustive, nor could they be.  Indeed, the entire point of the motion is that the government's flawed approach to discovery has prevented the

defendants from conducting an effective review of the documents or preparing its defense for trial.  Merely because Mr. Gaffey was able to document some of these shortcomings does not mean that counsel is capable of effectively reviewing over 5.6 million pages of discovery.

Moreover, it is not defense counsel's job to review the government's discovery in order to identify defects and irrelevant documents in the government's production.  Rather, the government has an obligation to review the discovery, determine which documents fall within the scope of Rule 12 and Rule 16, and produce those documents to the defense.  The government does not meet these obligations by dumping 5.6 million pages of documents on the defense and shifting the burden of identifying which documents are covered by the rules to defense counsel.

The government also states that the volume of discovery (5.6 million pages) is not a basis for the requested relief, particularly "where the Government has prepared a lengthy and detailed indictment, produced detailed cover letters accompanying its document production that create an index of discovery, produced a large amount of early 3500 material and accompanying exhibits, and regularly responded to defense inquiries by providing additional information."  Opp. Br. at 2. None of the items referred to by the government actually provide any assistance to the defense in understanding or reviewing the documents.  As discussed above and in Mr. Gaffey's opening brief, the government's "detailed cover letters" neither identify the relevant documents nor provide any guidance in navigating the millions of pages of discovery.  *See* Opening Br. at 3-4; Buehler Dec., Exhibits 2 and 3.  Nor does the government explain how the "lengthy indictment" or the heavily redacted 3500 material would assist Mr. Gaffey in reviewing the millions of pages of discovery produced by the government.  In other words, the factors cited by the government as reasons not to provide Mr. Gaffey with the relief that he requested have not actually provided any assistance to the defense at all.

With respect to its obligations under Rule 12(b)(4)(B), the government claims that it has satisfied the requirement of the rule because it "has put the defense on notice that it intends to rely on documents obtained as a result of the search, and has produced all such seized materials." Opp. Br. at 9.  The government cites *United States v. Conyers*, No. 15-CR-537 (VEC), 2016 WL 7189850, at *10 (S.D.N.Y. Dec. 9, 2016), for this dubious proposition.  *Conyers* is inapposite in that the defendant in that case, "[r]ather than identify[] discoverable evidence that might be the subject of a motion to suppress, . . . request[ed] a complete accounting of 'any and all' evidence that the Government may use at trial" *Id.*  Significantly, the court noted that "[m]uch of the evidence [the defendant] ask[ed] to be identified [wa]s unlikely to be derived from searches or seizures that could implicate Fourth Amendment considerations" because he lacked standing to move to suppress evidence seized from others, thus making his request "overbroad." *Id.*  That is clearly not the case here, where Mr. Gaffey has limited his request under Rule 12(b)(4)(B) to the search of his own accounting firm, a search that he certainly has standing to move to suppress. Given that the government has already conceded that it produced documents irrelevant to this case, the plain language of Rule 12(b)(4)(B) requires the government to do more than just provide notice that it intends to use at trial some of the more than 4.4 million pages of documents it seized in the search of Elder, Gaffey & Paine.

Accordingly, the Court should order the government to identify which of the more than 5.6 million documents produced in discovery it intends to use in its case-in-chief.[2]

---

[2]  In a footnote in its opposition, the government notes that Mr. Gaffey requested copies of the MLAT and TIEA requests to foreign governments, which the government denied by citing "diplomatic confidentiality" and "law enforcement" and "work product" protections. Opp. Br. at 3 n.2.  The government cites no authority for withholding MLAT and TIEA requests on those bases, as there is no such authority.  Indeed, in other cases, the government has acknowledged that "there are no bright line rules concerning the production of an MLAT request" and that such requests are generally analyzed under the traditional paradigm used to assess the discoverability

**B.    Mr. Gaffey Is Entitled to the Disclosure of the Search Terms the Government Used to Search the Seized ESI.**

The government claims there is no basis to require it to produce the search terms it used to review seized materials, stating that it "would be irrelevant to the defendants' contemplated suppression motion." Opp. Br. at 1. Nothing could be further from the truth. Far from being irrelevant, these search terms are necessary to Mr. Gaffey's decision as to whether to file a motion to suppress the seizure and search of documents from his accounting firm. The only way Mr. Gaffey will be in a position to determine whether the government's search exceeded the scope of the warrant is by reviewing the search terms.

In opposing Mr. Gaffey's request for the search terms, the government notes that "the whole universe of documents against which the search terms were run was available to Gaffey." Opp. Br. at 11. However, without knowing the specific terms that the government used to search the ESI that it seized from Elder, Gaffey & Paine, it does not matter what documents are available to Mr. Gaffey. In order to determine whether the government used the "reasonable efforts" that the warrant required in searching the ESI, Mr. Gaffey needs to have access to the search terms. Only after he gets the search terms will Mr. Gaffey be in a position to evaluate the reasonableness of the government's search and whether or not it was overbroad.

To support its contention, the government sets out the applicable law for search warrants and then states, in a conclusory fashion, that search terms "are not necessary" for the defendants to file a suppression motion. Opp. Br. at 11-12. Notably, Mr. Gaffey has not yet challenged the

---

of all materials collected during an investigation. *United States v. Hutchins*, No 17-CR-124, 2018 WL 1695499, at *1 (E.D. Wis. Apr. 6, 2018); *see also United States v. Juan Vincent Gomez Castrillon*, No. S2 05 Cr. 156 (CM), 2007 WL 2398810, at *1 (S.D.N.Y. Aug. 15, 2007) (government voluntarily produced in discovery all of the MLAT requests pursuant to which the investigation was conducted). Based on this authority, Mr. Gaffey will again meet and confer with the government regarding this request.

9

government's search of the accounting firm's server and computers because, without the search terms, he is not able to consider if the search complied with the terms of the warrant, which required the government to use "reasonable efforts to search only for files, documents, or other electronically stored information within the categories identified" in the warrant. *See* Buehler Dec., Ex. 5 (Bates No. Panama0005129606).   While the government maintains that any challenge to the search or seizure would be based only on the warrant and the actual evidence recovered (Opp. Br. at 14), it is unable to explain why that is the case.  The reason for this is simple: Without the search terms, it is not possible for Mr. Gaffey to make a determination as to whether the search was lawful.

Accordingly, Mr. Gaffey needs the search terms to determine whether the search of the ESI was reasonable and whether the scope of the search warrant was exceeded.

## CONCLUSION

For the reasons set forth above and in Mr. Gaffey's opening brief, the Court should grant Mr. Gaffey's motion in full.

Respectfully submitted,

Hogan Lovells US LLP

/s/ William J. Lovett
William J. Lovett
100 High Street, 20th Floor
Boston, MA 02110
Telephone: (617) 371-1007

/s/ Robert B. Buehler
Robert B. Buehler
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3261

*Attorneys for Richard Gaffey*

10

Dated:   New York, New York
         June 17, 2019