**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICHARD GAFFEY | No. 18-cr-00693-RMB-3 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**EMERGENCY MOTION FOR COMPASSIONATE RELEASE**
**PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**
**AND REQUEST FOR INDICATIVE RULING**

Daniel N. Marx
William W. Fick (*pro hac vice forthcoming*)
Amy Barsky (*pro hac vice forthcoming*)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
DMARX@FICKMARX.COM
WFICK@FICKMARX.COM
ABARSKY@FICKMARX.COM

*Counsel for Defendant Richard Gaffey*

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

ARGUMENT ............................................................................................................................ 4

I.      The 30-day waiting period for a response from the warden should be waived due to the COVID-19 emergency. ................................................................................................. 4

II.     Compassionate release is warranted based on Mr. Gaffey's COVID-19 infection; his vulnerability to serious complications; and the conditions he has endured to date. ........... 4

        A.      Legal Standard ................................................................................................ 4

        B.      Mr. Gaffey's COVID-19 infection and critical health conditions constitute extraordinary and compelling reasons for his release. ........................................ 6

        C.      The Court should grant release even though Mr. Gaffey has already contracted the virus. ............................................................................................................. 7

        D.      The Court should grant compassionate release notwithstanding the time remaining on Mr. Gaffey's sentence. ...................................................................... 8

        E.      Mr. Gaffey's release plan permits him to safely quarantine from his family and receive needed medical care, and he is not a danger to the community. ................ 9

        F.      Given the procedural posture of this case, the Court should issue an indicative ruling stating that it would grant compassionate relase upon remand from the Second Circuit. ............................................................................................... 10

CONCLUSION ................................................................................................................... 10

**INTRODUCTION**

Defendant Richard Gaffey respectfully moves this Court for an order reducing his sentence to "time served" followed by a substantial period of home confinement on supervised release. He makes this request based on "extraordinary and compelling reasons" related to the COVID-19 pandemic, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Gaffey further requests that the Court schedule an emergency hearing at its earliest convenience because he has fallen ill with the virus amidst a massive outbreak at FMC Devens. Undersigned counsel have contacted government counsel, who indicate the government will likely oppose this motion.

On September 24, 2020, this Court sentenced Mr. Gaffey, aged 76, to 39 months' imprisonment following his guilty plea to a variety of financial crimes and identity fraud. He surrendered to FMC Devens in Ayer, Massachusetts, as ordered on November 30, 2020. At that time, the Bureau of Prisons ("BOP") reported zero cases of COVID-19 at the facility.[1] Since starting his sentence, Mr. Gaffey has had no contact with counsel or his family.[2] Meanwhile, a ferocious COVID-19 outbreak exploded at FMC Devens in December and is ongoing. BOP reports there are currently 319 prisoners with active infections at the facility, approximately 43 percent of the total population.[3] Six prisoners have already died of the disease, including four since December 23.[4] Mr. Gaffey's family received information from BOP that he tested positive

---

[1] *See* Ex. A (screenshot of excerpted www.bop.gov data from November 30, 2020).

[2] See Ex. B (Declaration of Kimberly Gaffey).

[3] *See* https://www.bop.gov/coronavirus/; https://www.bop.gov/mobile/about/population_statistics.jsp (last visited Jan. 8, 2021).

[4] *See* https://www.bop.gov/resources/news/pdfs/20210108_press_release_dev.pdf (death on Jan. 7); https://www.bop.gov/resources/news/pdfs/20210107_press_release_dev.pdf (death on Jan. 6); https://www.bop.gov/resources/news/pdfs/20201229_press_release_dev.pdf (death on Dec.

1

for COVID-19 and required inpatient care at an outside hospital from approximately December 27 to January 6.[5] While BOP reports his condition has improved, Mr. Gaffey remains in grave danger due to his age and many, serious co-morbidities.

Since surrendering nearly six weeks ago, Mr. Gaffey has experienced a horrific period of isolation[6] and severe illness in custody. Accordingly, this Court should grant compassionate release so that he may quarantine at home and receive further care as necessary in the community, subject to an extended period home confinement while on supervised release.[7] The arduous conditions Mr. Gaffey has already endured in custody, followed by lengthy home confinement, are sufficient punishment. To leave him in prison as the pandemic rages is to gamble with his life in a way that violates principles of justice and proportionality in sentencing.

## BACKGROUND

The nature of Mr. Gaffey's offense conduct and his personal background are described at length in the parties' sentencing submissions and familiar to the Court from his recent sentencing

---

29); https://www.bop.gov/resources/news/pdfs/20201228_press_release_dev.pdf (death on Dec. 23).

[5] *See* Ex. B.

[6] Current BOP policy requires at least 14 days of quarantine upon intake into a facility, often in the Special Housing Unit ("SHU") under conditions that amount to lockdown in solitary confinement. *See* BOP COVID-19 Pandemic Response Plan at 10 (Sept, 8, 2020), available at https://www.bop.gov/foia/docs//Mod_4_Inmate_Isolation_and_Quarantine_of_COVID_Pandemic_Response_Plan_08312020.pdf. Undersigned counsel understand that the quarantine period is now commonly at least 21 days, corroborated in Mr. Gaffey's case by the fact that he was not been able to communicate with his family or counsel prior to falling ill.

[7] As explained *infra*, Mr. Gaffey's sentencing counsel filed a protective notice of appeal, but he has been unable to withdraw that notice due to his inability to communicate with Mr. Gaffey, Thus, in the first instance, this Court would be required to issue an indicative ruling pursuant to Fed. R. Crim. P. 37(a)(3) and Fed. R. App. P. 12. *See, e.g., United States v. Pena*, 463 F. Supp. 3d 118, 119 (D. Mass. 2020).

and, therefore, not repeated here. *See* ECF No. 228 (Def. Sent. Mem.); 238 (Gov't Sent. Mem.). Of special relevance to this Motion, Mr. Gaffey has numerous documented medical conditions that are compounded by his age:

- Severe hypertension, requiring maximum doses of four antihypertensive medications;
- Stage three chronic renal failure;
- Type II diabetes mellitus, for which he takes three medications;
- Dyslipidemia, for which he takes two medications;
- Prior bladder cancer;
- Eosinophilic esophogitis.

*See* ECF No. 228-2 at 77 (Ex. A-57), 255 at 11, 15-16 (noting medical problems at sentencing).

At sentencing, in response to a request for home confinement, this Court stated, it "is not the role of the Court to do that. We usually get applications from persons already incarcerated seeking … home confinement but none by way of an advisory opinion beforehand." ECF No. 255 at 14-15. The government argued that COVID-19 should not impact the sentence because Mr. Gaffey would likely be incarcerated at FMC Devens, where there were "no active inmate cases" and "[Massachusetts] implemented many phases of COVID-19 protocol in an effort to stem the tide of COVID-19 and the government hopes that those protocols will be able to further stem any additional infections that may occur." ECF No. 255 at 47.

That has now all changed. Despite the efforts by the BOP and Massachusetts, FMC Devens is now suffering a raging outbreak of COVID-19, to which Mr. Gaffey has fallen victim.

On January 4, 2021, undersigned counsel contacted FMC Devens to schedule a legal call with Mr. Gaffey. A staff member responded, "We are unable to coordinate a legal call request at this time. Once the quarantine is lifted staff will be able to schedule a legal call." Ex. C.

Also on January 4, undersigned counsel sent a letter to the Warden on Mr. Gaffey's behalf requesting compassionate release. Ex. D. The letter proposed that the BOP alternatively consider transferring Mr. Gaffey to home confinement or placing him on a medical furlough,

3

even temporarily. Counsel have received no response to date.

## ARGUMENT

Extraordinary and compelling circumstances warrant immediate compassionate release for Mr. Gaffey.

**I.     The 30-day waiting period for a response from the warden should be waived due to the COVID-19 emergency.**

Under the First Step Act ("FSA"), the Court may consider a defendant's own motion for reduction of sentence when the defendant has exhausted administrative remedies or upon "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). But this requirement is not jurisdictional, and numerous courts, including this Court, have found that the COVID-19 crisis permits a waiver of the 30-day waiting period. *See United States v. Musumeci*, No. 07-cr-402-RMB, 2020 U.S. Dist. LEXIS 74699, at *5 (S.D.N.Y. Apr. 28, 2020) (Berman, J.)*; see also, e.g., United States v. Perez*, 451 F. Supp. 3d 288 (S.D.N.Y. 2020); *United States v. Haney,* 454 F. Supp. 3d 316 (S.D.N.Y. 2020); *United States Criminal v. Colvin*, 451 F. Supp. 3d 237 (D. Conn. 2020); *United States v. Scparta*, No. 18-cr-578-AJN, 2020 U.S. Dist. LEXIS 68935 (S.D.N.Y. Apr. 20, 2020); *United States v. Bess*, 455 F. Supp. 3d 53 (W.D.N.Y. 2020).

**II.    Compassionate release is warranted based on Mr. Gaffey's COVID-19 infection; his vulnerability to serious complications; and the conditions he has endured to date.**

### A.     Legal Standard

As amended by the FSA, § 3582(c)(1)(A) gives the Court the authority to grant a reduction in sentence (compassionate release) if, "after consideration the factors set forth in section 3553(a)[,] … it finds that extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i).

Pursuant to that statutory mandate, the Sentencing Commission issued a policy statement

4

interpreting "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13; *see also* 28 U.S.C. §§ 994(a)(2)(C) & 994(t). The Application notes to § 1B1.13 outline four categories of "extraordinary and compelling" circumstances: (A) medical condition; (b) age of the defendant; (C) family circumstances; and (D) "an extraordinary and compelling reason other than, or in combination with… (A) through (C)." Specifically, the Commission noted that "extraordinary and compelling reasons need not have been unforeseen at the time of sentencing." U.S.S.G. § 1B1.13, Application note ("App. n.") 2.

The Second Circuit, and three other federal appeals courts, have held the Commission's policy statement, which has not been updated since the passage of the FSA, no longer applies and, therefore, does not constrain a district court's discretion to determine when extraordinary and compelling reasons exist in a particular case. *See United States v. Brooker (Zullo)*, 976 F.3d 228, 236 (2d Cir. 2020) ("[I]f a compassionate release motion is not brought by the BOP Director, Guideline § 1B1.13 does not, by its own terms, apply to it" and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary or compelling"); *United States v. Jones*, __ F.3d __, 2020 U.S. App. LEXIS 36620, at *19 (6th Cir. Nov. 20, 2020) ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies a compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion"); *United States v. Gunn*, __ F.3d __, 2020 U.S. App. LEXIS 36612, at *4 (7th Cir. Nov. 20, 2020) ("Section 1B1.13 addresses motions and determinations of the Director, not motions by prisoners."). In other words, the Sentencing Commission has not yet issued a policy statement "applicable" to Mr. Gaffey's request. And because the Guidelines Manual lacks an applicable policy statement. . . [a]ny decision is 'consistent' with a nonexistent policy statement." *United*

5

*States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) (finding, for same reasons, grants of compassionate release based on stacked § 924(c) sentences were proper).

### B. Mr. Gaffey's COVID-19 infection and critical health conditions constitute extraordinary and compelling reasons for his release.

Mr. Gaffey's serious medical conditions, individually and together, put him at grave risk of permanent physical injury or death from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Obesity and Type II diabetes are each a recognized risk factor for severe illness, defined as "hospitalization, admission to the ICU, intubation or mechanical ventilation, or death." *Id.*; *cf. Musumeci,* 2020 U.S. Dist. LEXIS 74699, at *2 (granting compassionate release to 66-year-old man with "Type II Diabetes, high blood pressure, hyperlipidemia, kidney disease, esophageal reflux disorder, claustrophobia, knee pain, and dental needs"). Mr. Gaffey's age, even without these well-recognized medical co-morbidities, puts him at significantly greater risk of dying from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (noting that 8 out of 10 deaths in the United States have been adults over 65); https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (noting risk of death for person aged 75-84 is 220x higher than for person aged 18-29).

Mr. Gaffey's medical conditions are comparable to or exceed those for which other ill and older inmates have been granted compassionate release, including by courts in this circuit. *See, e.g., United States v. Ebbers*, 432 F. Supp. 3d 421, 428 & n.9 (S.D.N.Y. Jan. 8, 2020) (collecting cases); *United States v. Wong Chi Fai*, No. 93-cr-1340-RJD, 2019 U.S. Dist. LEXIS 126774, at *7-*8 (E.D.N.Y. Jul. 30, 2013); *United States v. Asaro*, No. 17-cr-127-ARR, 2020 U.S. Dist. LEXIS 68044, at *17-*18 (E.D.N.Y. Apr. 17, 2020).

6

### C. The Court should grant release even though Mr. Gaffey has already contracted the virus.

Neither Mr. Gaffey's COVID-positive status nor the apparent recent improvement in his condition diminish the imperative for release. Numerous courts have granted compassionate release to prisoners who have already contracted COVID-19, some even after their symptoms have abated, because severe, sudden-onset symptoms can recur at any time, infections can result in long-term medical complications, and people who have recovered can become reinfected. *See, e.g., United States v. Liew*, No. 11-CR-00573-JSW-1, 2020 U.S. Dist. LEXIS 104015 (N.D. Cal. June 15, 2020) (granting compassionate release to defendant who was hospitalized for COVID-19 but stabilized); *United States v. Brown*, No. 2:18-cr-360, 2020 U.S. Dist. LEXIS 159958, at *4 (N.D. Ala. May 22, 2020) (deteriorating medical condition after positive COVID-19 diagnosis and risk of inadequate medical care constituted "extraordinary and compelling" circumstances); *United States v. Halliburton*, No. 17-CR-20028, 2020 U.S. Dist. LEXIS 102241, at *11 (C.D. Ill. June 11, 2020) ("based on the currently available scientific data, Defendant continues to be at risk of imminent harm based on his underlying medical conditions"); *United States v. Plank*, No. 17-cr-20026, 2020 U.S. Dist. LEXIS 116291, at *8 (D. Kan. July 2, 2020) ("the risk to defendant remains, as it has not been established that a person becomes completely immune to the virus after infection"); *United States v. Lipp*, No. 17-cr-40057, ECF No. 52 (D. Kan. July 29, 2020) (inmate already "contracted COVID-19 . . . which caused him to be hospitalized," and "[a]lthough he has recovered, health concerns remain"); *United States v. Malufau*, No. 1:13-cr-00860-LEK, 2020 U.S. Dist. LEXIS 132895, at *3 (D. Haw. July 22, 2020) (ordering release for defendant who had been hospitalized with COVID-19); *United States v. Garrison*, 11-cr-0922-FMO, ECF No. 1341 (C.D. Cal. Jul. 8, 2020) (releasing COVID-positive defendant with stage III kidney disease); *United States v. Heyward*, 17-cr-00527-PWG,

7

2020 U.S. Dist. LEXIS 115821, at *6 (D. Md. June 30, 2020) ("the Government does not dispute[] that a secondary contraction of COVID-19 is possible"); *United States v. Yellin*, No. 3:15-CR-3181-BTM-1, 2020 U.S. Dist. LEXIS 112786, at *9 (S.D. Cal. June 26, 2020) ("the possibility of reinfection persists" and citing "at least one inmate dying from COVID-19 after Terminal Island deemed him recovered from the virus"); *United States v. Schaffer*, No. 13-cr-00220-MMC, ECF No. 40 (N.D Cal. June 24, 2020) ( "the scientific community has not, as of this date, determined whether a prior infection produces immunity or affects the severity of any potential subsequent infection"); *United States v. Fischman*, No. 16-cr-00246-HSG-1, ECF No. 76 (N.D. Cal. May 1, 2020) (granting release to prisoner who had tested positive although temperature and oxygen remained normal).

### D. The Court should grant compassionate release notwithstanding the time remaining on Mr. Gaffey's sentence.

The relatively short period of imprisonment that Mr. Gaffey has served to date is not a compelling reason to deny relief. This is particularly true because the BOP rarely uses its authority to transfer prisoners, even temporarily, to home confinement or medical furlough. As one district judge observed:

> In a March 26, 2020 memorandum, the Attorney General directed the Bureau of Prisons to prioritize the use of transfers to home confinement for inmates making requests based on the pandemic. . . . In his April 3, 2020 memorandum, the Attorney General wrote that inmates with a suitable confinement plan would generally be appropriate candidates for home confinement, rather than continued detention at institutions in which COVID-19 is materially affecting operations. In addition, the Attorney General stated that determinations should be "individualized." Despite these directions from the Attorney General . . . the Bureau of Prisons has directed its wardens not to evaluate inmates for release under the Attorney General's criteria unless they have served 50 percent or more of their sentence, or have served 25 percent or more of their sentence and have 18 months or less to serve.

*Pena*, 463 F. Supp. 3d at 123-24 (internal citations omitted). Thus, as in *Pena*, this Court is left to exercise the only remedy it has available, which is compassionate release.

In a decision last week arising from a similar circumstances at FMC Devens, a court in the District of Massachusetts granted compassionate release to a 67-year-old prisoner who surrendered in April 2020 to serve a 40-month sentence for a non-violent, white-collar offense. The court stated: "Defendant is at high risk for Covid due to coronary and kidney issues and is 67 years old. Initially, there were no cases at the Devens BOP facility. However, in the last three weeks, the numbers have spiked." *United States v. Lynch*, No. 19-cr-10319-PBS-1, ECF No. 34 (D. Mass. Jan. 5, 2021). "While the crime of accepting bribes is serious, finishing the remainder of the sentence in home confinement on an electronic bracelet is sufficient but no greater than necessary in light of the high risk of Covid," the court ruled. *Id*.

Indeed, many courts have granted sentence reductions to prisoners who served only small portions of their sentences. *See, e.g.*, *United States v. Shehee*, No. 18-cr-06005-SMJ, 2020 U.S. Dist. LEXIS 162078 (E.D. Wash. Sept. 1, 2020) (9 months of 70 month sentence); *United States v. Prasad*, No. 19-71, 2020 U.S. Dist. LEXIS 96249 (E.D. La. June 2, 2020) (2 months of 24 month sentence); *United States v. Locke*, No. 18-cr-0132, 2020 U.S. Dist. LEXIS 102592 (W.D. Wash. June 11, 2020) (6 months of 62 month sentence); *United States v. Gonzalez*, 451 F. Supp. 3d 1194 (E.D. Wash. 2020) (1 month of 10 month sentence); *Pena*, 463 F. Supp. 3d at 124 (6 months of 32 month sentence); *United States v. Echevarria*, No. 17-cr-44-MPS, 2020 U.S. Dist. LEXIS 77894 (D. Conn. May 4, 2020) (9 months of 48 month sentence); *United States v. Atwi*, 455 F. Supp. 3d 426 (E.D. Mich. Apr. 20, 2020) (1 month of 4 month sentence); *United States v. Dana*, No. 14-CR-405, ECF No. 105 (S.D.N.Y. Mar. 30, 2020) (5 months of 12 month sentence).

### E. Mr. Gaffey's release plan permits him to safely quarantine from his family and receive needed medical care, and he is not a danger to the community.

If released, members of Mr. Gaffey's immediate family would provide transportation and a safe place for him to self-quarantine in home confinement and obtain appropriate medical care.

Mr. Gaffey would live at his residence in Medfield, Massachusetts, where he could isolate in a separate room and receive care from his daughter, Kimberly Teague, and/or a home health care professional engaged by the family.

Mr. Gaffey has no prior criminal record and poses no danger to the community based on his conviction in his case for non-violent offenses.

### F. Given the procedural posture of this case, the Court should issue an indicative ruling stating that it would grant compassionate release upon remand from the Second Circuit.

Undersigned counsel conferred with counsel who represented Mr. Gaffey at sentencing and understand that sentencing counsel filed a "protective" Notice of Appeal in the expectation that it would be withdrawn after consultation with Mr. Gaffey. Unfortunately, due to the lockdown at FMC Devens, neither sentencing counsel nor undersigned counsel have been able to communicate with Mr. Gaffey to obtain his consent to withdrawal.

Because Mr. Gaffey's appeal is pending in the Second Circuit, this Court lacks jurisdiction to grant Mr. Gaffey's Motion in the first instance. *See United States v. Maldonado-Rios*, 790 F.3d 62, 64 (1st Cir. 2015). In this situation, Fed. R. Crim. P. 37(a)(3) provides that the Court may issue an "indicative ruling," that is, the Court may "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." *See Pena*, 463 F. Supp. 3d at 119 (following this procedure in compassionate release setting). The Court may also hold a hearing in this matter if it deems appropriate. *See id*.

## CONCLUSION

For the reasons above, and in light of the BOP's failure use the discretionary tools it has available to transfer Mr. Gaffey from prison custody to home confinement, even temporarily, he respectfully requests that the Court issue an indicative ruling stating that, if the case were remanded, it would grant immediate compassionate release.

10

        Respectfully submitted,

        **RICHARD GAFFEY**

        by his attorneys,

        */s/ Daniel Marx*
        Daniel N. Marx
        William W. Fick (*pro hac vice forthcoming*)
        Amy Barsky (*pro hac vice forthcoming*)
        FICK & MARX LLP
        24 Federal Street, 4th Floor
        Boston, MA 02110
        (857) 321-8360
        DMARX@FICKMARX.COM
        WFICK@FICKMARX.COM
        ABARSKY@FICKMARX.COM

Dated: January 11, 2021

## **CERTIFICATE OF SERVICE**

I, Daniel N. Marx, as counsel to Defendant Richard Gaffey, certify that on January 11, 2021, I caused the foregoing document to be served by ECF on the registered participants as indicated on the Notice of Electronic Filing.

*/s/ Daniel N. Marx*
Daniel N. Marx
