

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 26, 2021

**BY ECF and EMAIL**

The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Richard Gaffey*, 18 Cr. 693 (RMB)

Dear Judge Berman:

      The Government writes in opposition to defendant Richard Gaffey's motion for compassionate release. The motion should be denied because (1) Gaffey has not exhausted his administrative remedies with the Bureau of Prisons ("BOP");[1] and (2) the factors set forth in 18 U.S.C. § 3553(a) do not support his immediate release.

**I.    Factual Background**

      **A.    Gaffey's Offense Conduct, Plea and Sentencing**

      The Government recently submitted a lengthy description of Gaffey's offense conduct as part of its sentencing submission, and will not repeat that description in full here. (Dkt. No. 238, at 2-11). Gaffey was a certified public accountant (CPA) and co-owner of an accounting firm in Massachusetts. Over the course of nearly twenty years, he assisted multiple United States taxpayers in committing tax evasion. His conduct included creating and submitting false and fraudulent documents to the IRS and to financial institutions, creating and operating sham offshore entities to conceal the true ownership of assets, executing complex financial transactions for the purpose of promoting the ongoing wire fraud and tax evasion scheme, and fraudulently using the identity of the mother of his co-defendant Harald Joachim von der Goltz to perpetrate the scheme.

---

[1] Although Gaffey had previously filed a notice of appeal, earlier today the Second Circuit granted Gaffey's motion for voluntary dismissal of that appeal. *See United States v. Gaffey*, No. 20-3660, Dkt. No. 36 (2d Cir. Jan. 26, 2021). Thus, the Court now retains jurisdiction to decide Gaffey's motion for compassionate release.

Hon. Richard M. Berman
January 26, 2021

The defendant's involvement in this tax evasion conspiracy cost the U.S. Treasury more than $3.4 million in actual losses.

On February 28, 2020, slightly more than a week before trial in this matter was scheduled to begin, Gaffey pled guilty to tax evasion conspiracy, wire fraud, money laundering conspiracy, four counts of willful failure to file foreign bank account reports, and aggravated identity theft. The plea agreement and the presentence report calculated Gaffey's guidelines range to be 94 to 111 months, including a mandatory minimum sentence of 24 months on the aggravated identity theft charge. On September 25, 2020, the Court sentenced Gaffey to a substantially below-guidelines sentence of 39 months' imprisonment. In rejecting Gaffey's request for a sentence at the mandatory minimum, the Court noted that the defendant's conduct "was unusually brazen as it did not only involve filing false tax returns but also involved creating false documents, deceiving financial institutions and misusing the identity of a third party to conceal the crime." (Sent. Tr. at 36). The Court went on to note that "over the course of decades, the defendant … made a conscious and deliberate choice to defraud the government," and that his "prolonged and serious criminal conduct warrants a significant term of incarceration." (*Id.* at 37-38). The Court also noted the importance of general deterrence, highlighting the high profile of the defendant and the problem of widespread undetected tax fraud. (*Id.* at 38-39).

## B.    Gaffey's Incarceration

Gaffey surrendered to the BOP to begin serving his term of imprisonment on November 30, 2020. He has thus served less than two months of his 39-month sentence – or approximately five percent. His projected release date is September 6, 2023.

Gaffey is currently incarcerated at FMC Devens, a medical facility located in Devens, Massachusetts. Gaffey's medical records from FMC Devens establish that since he began his term of imprisonment, FMC Devens has monitored various vital signs and COVID-19 symptoms, including temperature, blood oxygen levels, respiration, and pulse, on a daily or nearly daily basis. Ex. A at 39-48.[2]  Gaffey denied any symptoms of COVID-19 during his daily meetings with medical staff until Monday, December 21, 2021, when he noted that he had a cough for the past three days and a scratchy throat starting that morning. He described his cough as not consistent, and only at night when it was dry. He denied any other symptoms, including chills, fatigue, fever, weakness, or difficulty breathing. Ex. A at 8. That day, he was tested for COVID-19 and received a positive result; medical staff implemented quarantine procedures and continued to monitor him on a daily basis for further COVID-19 symptoms and complications. Ex. A at 9, 11, 46-47.

On December 27, 2020, he reported to FMC Devens staff that "he felt unsteady on his feet with weakness, mild shortness of breath, and cough productive of white sputum"; the notes reflect that Gaffey reported "symptoms have been present for several days, though on previous evaluations denied symptoms." Gaffey denied any other COVID-19 symptoms. Ex. A at 12. He

---

[2] For ease of reference, Exhibit A, which the Government respectfully requests permission to file under seal, contains excerpts from Gaffey's BOP medical records. The Government has provided the complete set of records to defense counsel.

Hon. Richard M. Berman
January 26, 2021

was administered a blood oxygen test, which registered at 88%, and was admitted to UMass Hospital that day.  Ex A. at 13-15.

On January 6, 2021, after receiving treatment and no longer requiring supplemental oxygen, Gaffey reported that he felt "pretty good," and denied any chest pain, shortness of breath, weakness or dizziness.  He was discharged from the hospital that day.  Ex. A. at 21.  On January 10, 2021, FMC Devens medical records showed that Gaffey's condition "continue[d] to improve," with blood oxygen levels at 96%, good appetite, and "return of strength."  Ex. A at 28.  Reports of Gaffey's clinical visits with a physician on January 19 and January 20, 2021 reflect that he is no longer showing any symptoms of COVID-19, and that his case has been resolved.  Ex A at 29-33.

### C.     Gaffey's Compassionate Release Petition

On January 5, 2021, Gaffey filed a request with the Warden of FMC Devens, asking the BOP to file a motion for compassionate release or transfer him to home confinement. (Mot. Ex. D). The BOP has not yet acted on his motion. Gaffey filed his motion in this Court on January 11, 2021. In his motion, Gaffey asks the Court to waive the 30-day exhaustion requirement in the statute and reduce his sentence from 39 months' imprisonment to time served (now slightly less than two months), to be followed by a term of supervised release to include a condition of home detention. (Mot. 1).

Gaffey argues that such a drastic reduction is warranted because of COVID-19 conditions at FMC Devens, including the fact that he has contracted the disease and been hospitalized for it. Specifically, he claims that his age and co-morbidities continue to place him at elevated risk of serious illness from COVID-19. Gaffey's motion does not attempt to weigh the Section 3553(a) factors, which the Court considered at length in imposing sentence just a few months ago, but merely asserts that continued custody during the pandemic would violate "principles of justice and proportionality in sentencing." (*Id.* at 2).

## II.     <u>The Motion Should be Denied for Failure to Exhaust Administrative Remedies</u>

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." *Id.* § 3582(c)(1)(A)(i). A defendant may make a motion under this provision only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

The Government's position is that Section 3582(c)(1)(A)'s exhaustion requirement is therefore mandatory. It is critical, in this context, to note that Section 3582(c)'s exhaustion requirement is statutory, and thus is not the sort of judicially-crafted exhaustion requirement that

Hon. Richard M. Berman
January 26, 2021

"remain[s] amenable to judge-made exceptions." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). Where a statute contains mandatory exhaustion language, the only permissible exceptions are those contained in the statute. *Id.*; *see also Bastek v. Fed. Crop. Ins.*, 145 F.3d 90, 94 (2d Cir. 1998) ("Faced with unambiguous statutory language requiring exhaustion of administrative remedies, we are not free to rewrite the statutory text."). As Judge Sullivan, sitting by designation, explained, Section 3582(c)'s exhaustion requirement is "clear as day" and is therefore mandatory. *United States v. Ogarro*, No. 18 Cr. 373 (RJS), 2020 WL 1876300, at *3 (S.D.N.Y. Apr. 14, 2020).

Since the onset of the pandemic, numerous defendants around the country have cited the unusual circumstances presented by COVID-19 as a basis for compassionate release, and have argued that the exhaustion requirement should be excused. Both of the two court of appeals to have addressed the question have rejected the argument and required exhaustion. *See United States v. Raia*, 954 F.3d 594 (3d Cir. 2020); *United States v. Alam*, No. 20-1298 (6th Cir. June 2, 2020). In *Raia*, the Third Circuit recognized the serious concerns presented by COVID-19, but held that, in light of these concerns, as well as the BOP's statutory role and its "extensive and professional efforts to curtail the virus's spread, . . . strict compliance with Section 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.* at 597. The Sixth Circuit agreed in *Alam*. The vast majority of district courts in this District have also required exhaustion despite COVID-19 claims.[3] These decisions are consistent with the plain language of Section 3582(c).

Although the Government submits that the majority view described above is persuasive, the Government recognizes that this Court has held that under certain circumstances, the exhaustion requirement "is not jurisdictional and may be waived." *United States v. Musumeci*, No.

---

[3] *See United States v. Battle*, No. 05 Cr. 377 (VM), 2020 WL 2306482, at *1 (S.D.N.Y. May 8, 2020); *United States v. Hart*, 17 Cr. 248 (VSB), 2020 WL 1989299, at *4 (S.D.N.Y. Apr. 27, 2020); *United States v. Wright*, 17 Cr. 695 (CM), 2020 WL 1922371, at *2 (S.D.N.Y. Apr. 20, 2020); *United States v. Demaria*, No. 17 Cr. 569 (ER), 2020 WL 1888910, at *4 (S.D.N.Y. Apr. 16, 2020); *United States v. Ogarro*, No. 18 Cr. 373 (RJS), 2020 WL 1876300, at *3-*5 (S.D.N.Y. Apr. 14, 2020); *United States v. Bonventre*, 10 Cr. 228 (LTS), 2020 WL 1862638, at *2-*3 (S.D.N.Y. Apr. 14, 2020); *United States v. Pereyra-Polanco*, 19 Cr. 10 (NRB), 2020 WL 1862639, at *1 (S.D.N.Y. Apr. 14, 2020); *United States v. Rabadi*, No. 13 Cr. 353 (KMK), 2020 WL 1862640, at *2-*3 (S.D.N.Y. Apr. 14, 2020); *United States v. Engleson*, 13 Cr. 340 (RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020); *United States v. Fana*, 19 Cr. 11 (GHW), 2020 WL 1816193, at *5 (S.D.N.Y. Apr. 10, 2020); *United States v. Canale*, 17 Cr. 287 (JPO), 2020 WL 1809287, at *2 (S.D.N.Y. Apr. 9, 2020); *United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020); *United States v. Ramos*, No. 14 Cr. 484 (LGS), 2020 WL 1685812, at *1 (S.D.N.Y. Apr. 7, 2020); *United States v. Woodson*, No. 18 Cr. 845 (PKC), 2020 WL 1673253, at *3 (S.D.N.Y. Apr. 6, 2020); *United States v. Hernandez*, No. 18 Cr. 834 (PAE), 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020); *United States v. Cohen*, No. 18 Cr. 602 (WHP), 2020 WL 1428778, at *1 (S.D.N.Y. Mar. 24, 2020). *But see United States v. Scparta*, No. 18 Cr. 578 (AJN), 2020 WL 1910481, at *5 (S.D.N.Y. Apr. 20, 2020); *United States v. Russo*, 16 Cr. 441 (LJL), 2020 WL 1862294, at *7 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, No. 19 Cr. 541 (JSR), 2020 WL 18211988, at *4 (S.D.N.Y. Apr. 13, 2020); *United States v. Perez*, No. 17 Cr. 513 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020).

Hon. Richard M. Berman
January 26, 2021

07 CR. 402 (RMB), 2020 WL 8024350, at *2 (S.D.N.Y. Apr. 28, 2020). However, even under the reasoning of this Court in *Musumeci*, waiver of the exhaustion requirement is unwarranted here. In *Musumeci*, BOP had approved the release of the defendant to a residential reentry center to occur on April 29, 2020, and then had rescinded that approval *after* the defendant requested compassionate release. *Id.* In light of those facts, this Court held that it was "not clear whether BOP ha[d], in fact, acted on the petition," which would have satisfied the exhaustion requirement. *Id.* The Court then concluded that, in any event, BOP had acted "arbitrarily" and declined to enforce the exhaustion requirement "in the particular circumstances of this case." *Id.* Since deciding *Musumeci*, this Court has enforced the exhaustion requirement in other cases while recognizing that the requirement can be waived in exceptional cases. *See United States v. Torres*, No. 16 CR. 500 (RMB), 2020 WL 3959668, at *2 (S.D.N.Y. July 11, 2020).

This is not an exceptional case that would warrant waiver of the exhaustion requirement. There is no arbitrary conduct by BOP analogous to *Musumeci*. On the contrary, the defendant's motion indicates that he filed a request with BOP on January 4 for compassionate release or, in the alternative, temporary transfer to home confinement, and that request is pending. (Mot. at 3-4). This case presents exactly the circumstances for which the administrative exhaustion requirement was designed. BOP has been acting as the defendant's custodian and medical provider, including by promptly hospitalizing him to address his illness and by providing regular medical review and treatment since his discharge from the hospital. BOP is in the best position to evaluate the defendant's medical condition and make an appropriate determination about his confinement, subject to review by this Court after that determination has been made (or after the statutory 30-day period has expired). There is no need for the Court to act now, rather than permitting Gaffey to renew his motion following determination of his request by the BOP and on the basis of a more fully developed record.

## III.   The Motion Should Be Denied Based on the Section 3553(a) Factors

If this Court determines that administrative exhaustion is not required here, it "may reduce [a] term of imprisonment . . . after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). "The moving party bears the burden of proving that extraordinary and compelling reasons exist." *Rodriguez*, 2020 WL 2782729, at *3.

The relevant Sentencing Commission policy statement is U.S.S.G. § 1B1.13. That statement provides that the Court may reduce the term of imprisonment if "[e]xtraordinary and compelling reasons warrant the reduction," *id.* § 1B1.13(1)(A); "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," *id.* § 1B1.13(2); and "[t]he reduction is consistent with this policy statement," *id.* § 1B1.13(3). The Application Note describes the circumstances under which "extraordinary and compelling reasons exist," including where a defendant has a "serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." *Id.* app. n. 1(a)(II).

Hon. Richard M. Berman
January 26, 2021

In light of these standards, Gaffey's request to be granted compassionate release should be denied on the merits. Gaffey's motion points to his COVID-19 infection, his age and his medical conditions, and his attendant risk for serious complications as reasons compelling his release. (Mot. at 6-8). Even assuming that these facts may constitute "extraordinary and compelling reasons" under Section 3582(c), Gaffey cannot establish that the Section 3553(a) factors weigh in favor of his release, especially in light of the strength of his recovery to date (and, notably, Gaffey makes no such arguments under Section 3553(a) in his motion).

To begin, the Court was well aware of Gaffey's age and medical condition, as well as the stricter conditions of confinement that would be imposed upon Gaffey upon his surrender in light of the pandemic, at the time that it sentenced Gaffey. *Cf.* 18 U.S.C. § 3553(a)(1). In asking this Court to recommend to the BOP that Gaffey be evaluated prior to his surrender date to determine whether he would be eligible for home confinement, defense counsel in his sentencing submission detailed Gaffey's various medical conditions, and noted that Gaffey's "age and extensive medical history place him at high risk of severe illness or death from COVID-19." (*See* Gaffey Sent. Submission at 22-23). Gaffey's counsel reiterated these concerns at sentencing, including noting that BOP's requirement that Gaffey be held in solitary confinement at the beginning of his term would constitute a "much more harsh penalty" than he would ordinary face. (*See, e.g.,* Sent. Tr. at 41-42). And the Government agreed that a sentence below the Guidelines was appropriate for Gaffey in light of his age, health, and the pandemic itself. Thus, the Court, in fashioning a sentence "sufficient, but not greater than necessary" to comply with the purposes of Section 3553(a), considered both Gaffey's age and health, as well as the pandemic itself, in its careful balancing of the 3553(a) factors. (*See, e.g.,* Sent. Tr. at 11 (noting medical history as detailed in PSR and April 1, 2020 letter from Gaffey's primary care physician), 15-16 (quoting Gaffey sentencing submission)).

In deciding that a 39-month sentence—above the 24-month mandatory minimum but substantially below the advisory Guidelines range of 94 to 111 months—was appropriate, the Court understood the importance that Gaffey's sentence reflect the "very serious" nature of the crime, including the fact that Gaffey used his special skills and expertise to "blatantly and obviously" violate the law "for financial gain." (Sent. Tr. at 48-49). *See* 18 U.S.C. § 3553(a)(2)(A). The Court also emphasized the need for general deterrence for individuals who, like Gaffey, use their special skills as an accountant to defraud the U.S. Treasury to aid tax evasion, so that the sentence may "protect the public from further crimes." (*See, e.g.,* Sent. Tr. at 38-39, 49). *See* 18 U.S.C. § 3553(a)(2)(B). These considerations continue to weigh against Gaffey's early release.

The only two 3553(a) factors that could arguably be implicated by Gaffey's recent diagnosis are the "history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and the need for the sentence imposed "to provide . . . needed . . . medical care" to Gaffey, 18 U.S.C. § 3553(2)(D). Neither now warrant a reduction of Gaffey's sentence to time served, in light of the seriousness of Gaffey's conduct and the need for deterrence. Although it is truly unfortunate that Gaffey, like many other Americans, contracted the disease, Gaffey appears to have made a full recovery to date from the virus, and has no ongoing symptoms. That is in no small measure due to

6

Hon. Richard M. Berman
January 26, 2021

the fact that, at the Court's suggestion, he was designated to FMC Devens, where medical staff were continuously monitoring his condition and vital signs upon his surrender, and sent him to an outside hospital as soon as his symptoms worsened. Several courts in this district have concluded that, in instances where a defendant has medical conditions that place them at-risk for serious complications but have recovered from COVID-19, the Section 3553(a) factors do not warrant their release. *See, e.g., United States v. Davis*, No. 12 Cr. 712 (SHS), 2020 WL 3790562 (S.D.N.Y. July 7, 2020) (concluding, for at-risk defendant who had contracted COVID-19 and recovered, that sentencing factors that warranted original sentence did not "now favor a 50% sentence reduction"); *United States v. Decker*, No. 17 Cr. 738 (LAK), 2020 WL 3268706, at *2 (S.D.N.Y. June 17, 2020) (concluding, for at-risk defendant who had recovered from asymptomatic case of COVID-19, the Section 3553(a) factors "do not favor an early release," in light of "gravity of defendant's crime" and the fact that defendant had "served only a small fraction of his fifty-seven month sentence, which already fell at the bottom of the applicable Guidelines range").

For instance, in *United States v. Graham*, No. 16 Cr. 786 (NSR), Judge Roman denied the defendant's motion for compassionate release, despite the fact that the defendant, who had recovered from COVID-19, suffered from multiple medical conditions identified by the CDC as risk factors for severe illness from the virus. 2020 WL 5604050 (S.D.N.Y. Sept. 17, 2020). Notably, despite concluding that the defendant met the "extraordinary and compelling" reasons requirement for release, Judge Roman determined that the Section 3553(a) factors weighed against his release, noting that "[w]hile Defendant's crime was nonviolent, there is a strong need for her to serve the sentence that was imposed," because she had "committed a serious and complex crime" which was "sophisticated and involved Defendant attempting to move funds overseas." 2020 WL 5604050, at *3 (S.D.N.Y. Sept. 17, 2020). Because the defendant had only served less than 20 percent of her term, Judge Roman concluded that "[a] release after serving such a short portion of Defendant's sentence would not serve the principles of deterrence or reflect the seriousness of the crime she committed." *Id.* These principles apply equally here, and counsel against Gaffey's release.

Moreover, Gaffey's case is clearly distinguishable from the litany of those upon which he relies, in which out-of-district courts granted compassionate release to a defendant who had already contracted the virus (Mot. at 7-8) in two important ways. <u>First</u>, the vast majority of these cases involved defendants who had contracted COVID-19 while housed at FCI Forrest City in Forrest City, Arkansas, which suffered from a widespread outbreak of infections. As such, courts were particularly concerned with the capability of the facility to handle any complications to the defendants' recoveries from the virus, if they were to arise.  *See United States v. Brown*, No. 18 Cr. 360, 2020 U.S. Dist. LEXIS 159958, at *3 (N.D. Ala. May 22, 2020) (concluding release was warranted in part in light of the fact that FCI Forrest City had 363 inmates who had tested positive for COVID-19, and the "five counties surrounding" FCI Forrest City "have a combined total of 6 ICUs and 3 hospitals," thus concluding that if defendant's condition "worsens, medical treatment" around facility "may well be inadequate"); *United States v. Halliburton*, 17 Cr. 20028, 2020 U.S. Dist. LEXIS 102241, at *3-4, *9 (C.D. Ill. June 11, 2020) (noting FCI Forrest City had 522 confirmed inmate cases at time of decision); *United States v. Plank,* No. 17 Cr. 20026, 2020 U.S. Dist. LEXIS 116291, at *6-9 (D. Kan. July 2, 2020) (concluding defendant's situation at FCI Forrest City was "especially dire in light of the outbreak of the virus" at the facility, including that

7

Hon. Richard M. Berman
January 26, 2021

over one-third of prison population had been infected, and that BOP Director had described it as a "hotspot"); *United States v. Malufau*, No. 13 Cr. 860, 2020 U.S. Dist. LEXIS 132895, at *2-3 (D. Hawaii July 22, 2020) (concluding release warranted in light of "the horrific COVID-19 outbreak at FCI For[r]est City"). Similarly, in *United States v. Lipp*, No. 17 Cr. 40057 (D. Kan. July 29, 2020), the Government did not oppose the compassionate release of a defendant housed at FMC Fort Worth, "the location of the largest outbreak of COVID-19 in the state of Texas," where the defendant had already been twice hospitalized had served over 51 percent of his sentence. *See id.* Dkt. Nos. 51 (unopposed motion); 52-53 (orders granting release). And in *United States v. Garrison*, No. 11 Cr. 922 (C.D. Cal.), the court noted that the defendant, who suffered from stage III kidney disease and hypertension, was housed at FCC Lompoc, "among one of the worst coronavirus hot spots in the nation," with over 800 positive cases, citing with approval a District of Oregon decision that noted that "even if 5% of those cases require acute care, the Hospital Care Unit would be seemingly well beyond its capacity, which would harm defendant's ability to manage his health conditions." Dkt. No. 1341 at 6-8 (Jul 8, 2020) (alterations omitted). These concerns do not apply to Gaffey's case, in that the FMC Devens infection rate is significantly lower, and receding; its medical staff have carefully monitored Gaffey's status; and Gaffey was taken to one of the dozens of top-tier medical facilities in the Greater Boston area when his condition worsened.

    Second, many of the cases Gaffey cites in which release was granted involved defendants who had served a substantial portion of their sentences. The defendants in those cases had served significantly more than the approximately five percent of his sentence that Gaffey has served to date. *See, e.g., United States v. Liew*, 466 F. Supp. 3d 1062, 1063, 1065 (N.D. Cal. June 15, 2020) (concluding Section 3553(a) factors warranted reduction of sentence from "144 months to 138 months" so as to allow for his release, in light of fact that defendant "has served nearly all of his sentence"); *Malufau*, No. 13 Cr. 860, 2020 U.S. Dist. LEXIS 132895, at *2-3 (D. Hawaii July 22, 2020) (concluding Section 3553(a) factors warranted release of defendant who had served "86 months or 89%" of original sentence); *Garrison*, No. 11 Cr. 922 (Dkt. No. 1341 at 2-3) (C.D. Cal. Jul 8, 2020) (granting release where defendant had served 99 months of 120 month term, or approx. 80% of sentence); *United States v. Heyward*, No. 17 Cr. 527  2020 U.S. Dist. LEXIS 115821, at *1, *6 (D. Md. June 30, 2020) (granting unopposed motion for release where defendant had approximately 16 months left on 78 month sentence); *United States v. Yellin*, No. 15 Cr. 3181, 2020 U.S. Dist. LEXIS 112786, *1 (S.D. Cal. June 26, 2020) (granting release where defendant had served "at least 72 percent" of his 72-month sentence, taking into account good credit time); *United States v. Schaffer*, No. 13 Cr. 220 (Dkt. No. 40 at 2) (N.D. Cal. June 24, 2020) (granting unopposed motion release where defendant had "served a substantial portion of his term of imprisonment, with slightly over 14 months of his 120-month term remaining," and who was eligible as of March 2021 to serve the remainder at a residential reentry center); *United States v. Fischman*, No. 13 Cr. 246 (Dkt. No. 76 at 2) (N.D. Cal. May 1, 2020) (granting release where defendant had approximately 4.5 months of incarceration left on 70-month sentence). As such, the decision by these courts to release these defendants, who had served substantial portions of their sentences, did not serve to undermine the purposes of Section 3553(a), as would occur if Gaffey were to be released.

Hon. Richard M. Berman
January 26, 2021

        Gaffey also points to several cases (Mot. at 9, 11) where out-of-district courts have granted release to high-risk defendants who (unlike Gaffey) have yet to catch COVID-19 and served small portions of their sentence.  This includes one decision in which Judge Saris in the District of Massachusetts recently released a high-risk defendant who had been sentenced to 40 months' imprisonment and had served approximately seven months' imprisonment at FMC Devens.  *United States v. Lynch*, No. 19 Cr. 10319 (Dkt. No. 34) (D. Mass. Jan 5, 2021) (cited at Mot. at 11).[4] Notably, however, those cases involved instances in which the sentencing of the defendant occurred <u>prior</u> to the onset of the pandemic, and as such, these courts could not have anticipated the implications of COVID-19 upon the defendants at the time of sentencing in balancing the 3553(a) factors. *See id.* (Dkt. No. 17) (sentenced on January 28, 2020); *see also United States v. Sheehee*, No. 18 Cr. 6005, 2020 U.S. Dist. LEXIS 162078 (E.D. Wash. Sept. 1, 2020) (sentenced on July 11, 2019, *see* Dkt. Nos. 102-103); *United States v. Prasad*, No. 19-71, 2020 U.S. Dist. LEXIS 96249 (E.D. La. June 2, 2020) (sentenced on January 28, 2020, *see* Dkt. Nos. 44, 46); *United States v. Locke*, No. 18-cr-0132, 2020 U.S. Dist. LEXIS 102592 (W.D. Wash. June 11, 2020) (sentenced on November 22, 2019, *see* Dkt. No. 707-08); *United States v. Gonzalez*, No. 18 Cr. 232, 451 F. Supp. 3d 1194, 1195 (E.D. Wash. 2020) (sentenced on January 21, 2020); *United States v. Pena*, No. 16-10236, 463 F. Supp. 3d 118 (D. Mass. May 29, 2020) (sentenced on April 23, 2019, *see* Dkt. No. 145); *United States v. Echevarria*, No. 17-cr-44-MPS, 2020 U.S. Dist. LEXIS 77894, at *1 (D. Conn. May 4, 2020) (sentenced on June 18, 2019); *United States v. Atwi*, 455 F. Supp. 3d 426 (E.D. Mich. Apr. 20, 2020) (sentenced on November 8, 2019); *United States v. Dana*, No. 14 Cr. 405 (JMF) (S.D.N.Y. Mar. 30, 2020) (sentenced on February 25, 2020; motion unopposed by Government in light of defendant's health condition, where defendant had less than 5 months remaining on sentence of 1 year and 1 day, *see* Dkt. Nos. 101, 105, 107, 108). And although Gaffey describes the sentences served by these defendants as "small portions" of their sentence (Mot. at 9), none come close to as substantial a percentage reduction—nearly 95 percent—as would be given to Gaffey were the Court to grant his motion.

        In sum, this Court carefully took under consideration the potential for Gaffey to face serious complications from COVID-19 at the time of his sentencing in September 2020, in fashioning a sentence consistent with the principles set forth under Section 3553(a).  FMC Devens has been monitoring Gaffey throughout his incarceration period to date.  Once he showed signs of COVID-19 symptoms, he was immediately tested and quarantined, and once those symptoms progressed in severity, he was sent to a hospital for in-patient treatment.  Now, Gaffey appears to have made a full recovery, in no small part due to the fact that his symptoms were being continuously monitored by FMC Devens, and that the facility was able to promptly admit him to

---

[4] In *Lynch*, Judge Saris granted compassionate release on reconsideration, after denying the defendant's initial request on December 11, 2020.  *See id.* (Dkt. No. 28).  In the docket entry reflecting the court's decision, *id.* (Dkt. No. 34), the court expressed concern over a spike of cases at FMC Devens, which it noted had "varying estimates from a high of 262 to a low of 129 inmates who had tested positive," concluding that because the defendant's risk of complications were he to contract COVID-19, "finishing the remainder of the sentence in home confinement is sufficient but not greater than necessary in light of the high risk of COVID-10." *See id.* As of January 25, 2021, however, that number has dropped to 42 inmates with active cases. *See* COVID-19 Cases, https://www.bop.gov/coronavirus/.

Hon. Richard M. Berman
January 26, 2021

a hospital based on that monitoring. FMC Devens continues to monitor Gaffey regularly. Thus, there is every reason to assume that, if further complications do unfortunately arise, Gaffey will be afforded the same level of care. In light of these facts, Gaffey's immediate release after a few months' imprisonment "would not serve the principles of deterrence or reflect the seriousness of the crime" that Gaffey committed, *Graham*, 2020 WL 5604050, at *3, and the Section 3553(a) factors weigh against Gaffey's immediate release.

## <u>Conclusion</u>

For the foregoing reasons, Gaffey's motion for compassionate release should be denied.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By:   /s/_____
Eun Young Choi / Thane Rehn
Assistant United States Attorneys
Southern District of New York
(212) 637-2187/2354

DEBORAH CONNOR
Chief, Money Laundering and Asset
Recovery Section, Criminal Division

By:   Michael Parker
Trial Attorney
Criminal Division
(202) 514-0421