**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

UNITED STATES OF AMERICA,          :

             :            18 Cr. 693 (RMB)

        - against -          :

             :         **DECISION & ORDER**

RICHARD GAFFEY,          :

           Defendant.      :

-----------------------------------------------------------------x

This Decision & Order resolves Defendant Richard Gaffey's motion for compassionate release, dated January 11, 2021 and filed by defense counsel Daniel Marx ("Compassionate Release Motion" or "Motion"). For the reasons stated below, Gaffey's motion is respectfully denied.[1]

## I.    Introduction

Gaffey's Motion includes an initial brief dated January 11, 2021; a reply brief dated January 29, 2021 which includes a "Declaration" from Gaffey dated January 27, 2021, and a letter from Dr. Adolph Karchmer, Gaffey's personal physician, dated January 21, 2021; a letter submission dated February 15, 2021; and a further letter submission dated March 4, 2021. Gaffey's principal contention is that there are extraordinary and compelling conditions, foremost among them his age and many "co-morbidities," which place him in "grave danger" while in prison. Def. Initial Mot. at 2. The Motion fails to acknowledge that Gaffey's 39-month (and substantially below Guidelines) sentence was specifically premised, among other things, upon the Court's evaluation of his age and medical conditions; and that the Court made the recommendation that Gaffey be housed at a medical facility, FMC Devens.[2]

---

**[1] Any issues or arguments raised by the parties but not specifically addressed in this Decision and Order have been considered by the Court and rejected.**

[2] Gaffey's counsel had recommended that Gaffey receive "a term of twenty-four months imprisonment . . . with a judicial recommendation that the Bureau of Prisons evaluate his status to determine whether he is eligible to serve his sentence in home confinement [], before being required to report to a Federal Correctional Institution." Def. Sentencing Submission at 20, 24.

Gaffey's Motion also fails to acknowledge that, after Gaffey unfortunately contracted COVID-19 in December 2020, he received extensive, excellent medical treatment and made a full recovery. See Gov't Opp. at 6; see also Gov't Opp. Ex. A (BOP Medical Records) at 1-48; Feb. 19 Gov't Ltr. Ex. A (BOP Medical Records) at 1-21. Gaffey's physician, Dr. Karchmer, explained the turn of events as follows: "[Gaffey's] survival [from COVID-19] is a tribute to the superb care provided at the University of Massachusetts Medical Center, care that was essentially the same as that provided then President Trump at the Bethesda Military Medical Center." Def. Reply at 2 (quoting Physician Ltr. Ex. B at 2).

## II.    Background

Gaffey is a defendant in the so-called "Panama Papers" prosecution. On the eve of trial, at the age of 75, Gaffey pleaded guilty to: (i) conspiracy to commit tax evasion; (ii) wire fraud; (iii) conspiracy to commit money laundering; (iv) four counts of willful failure to file foreign bank account reports; and (v) aggravated identity theft. Plea Hr'g Tr. at 31:2-8. Gaffey's offense level was 27; his criminal history category was I; and his Sentencing Guidelines range was 94 to 111 months of incarceration. Sentencing Tr. at 6:23-7:5. In their presentence memo, dated July 6, 2020, the defense, as noted, suggested a term of 24 months' imprisonment based upon, among other things, "Mr. Gaffey's full acceptance of responsibility, his extraordinary efforts to make restitution, as well as his advanced age and multiple serious medical conditions that place him at an extremely high risk for severe illness or even death from COVID-19." See supra note 2; see also Def. Sentencing Submission at 1. The Government sought a Guidelines sentence of 94 months' imprisonment "in light of the serious nature of the defendant's conduct, as well as the need to promote respect for the law and to provide just punishment." Gov't Sentencing Submission at 1, 13.

On September 24, 2020, the Court sentenced Gaffey to 39 months' imprisonment, placing Gaffey's sentence at 55 months below the low end of his Guidelines range. Sentencing Tr. at 53:9-11. (Gaffey's term of imprisonment is to be followed by 3 years of supervised release. Id. at 53:14-21.) The Court determined that 39 months of incarceration was necessary in order to "reflect the seriousness of

the offense, promote respect for the law, provide a just punishment, [and] afford . . . general deterrence."

Id. at 48:19-49:7, 56:21-57:1. "[Gaffey's crimes] are very serious and no one disagrees about that.

They're awfully serious. You know, we just can't have CPAs and attorneys and other professionals

using their special skills and expertise so blatantly and obviously to violate the law for financial gain.

It's that simple." Id. at 48:20-25. In fashioning Gaffey's sentence, the Court specifically took into

account Gaffey's age and medical condition(s). "Given the age and health of the defendant, a sentence

below the stipulated Guidelines range . . . is appropriate." Id. at 35:21-23. The Court also recommended

that Gaffey be housed at Federal Medical Center, Devens ("FMC Devens") to provide for his medical

conditions. Id. at 50:14-51:3.

Gaffey has been incarcerated at FMC Devens, one of six BOP medical centers, since November

30, 2020.[3] See Gov't Opp. at 2. FMC Devens is located near Gaffey's home in Medfield, Massachusetts.

See Jan. 24, 2019 Hr'g Tr. at 6:13-14. He has served 4-plus months or 11% of his 39-month sentence.

Id. His projected release date is September 6, 2023. Id.

 **III.    Gaffey's Motion for Compassionate Release**

As noted, on January 11, 2021, Gaffey filed his initial brief seeking compassionate release. The

initial brief included a "Declaration" from Gaffey's daughter, Kimberly Teague, dated January 10, 2021.

Gaffey filed a reply brief dated January 29, 2021, which enclosed a "Declaration" from Gaffey dated

January 27, 2021, and a letter from Dr. Karchmer, dated January 21, 2021. In addition, Gaffey filed a

supplemental letter dated February 15, 2021, which included a news release issued by the BOP titled

"Inmate Death at FMC Devens," dated February 11, 2021. And, he filed another letter submission dated

---

[3] "FMC Devens is able to treat care needs of male inmates classified as Care Level 4. which is the
highest classification." *United States v. Cherry*, 2021 WL 1222121, at \*3 (S.D.N.Y. Mar. 31, 2021)
(citation omitted). "All specialty areas of medicine are available at FMC Devens and inmates are
routinely seen at some of the best hospitals in the country, including . . . [the] University of
Massachusetts Medical Center." *Id.*

March 4, 2021, which included an article from the New England Journal of Medicine entitled

"Vaccination in Jails and Prisons," dated March 3, 2021.

Gaffey contends that: **(i)** he has "numerous documented medical conditions that are compounded

by his age," including: "severe hypertension; stage three chronic renal failure; Type II diabetes mellitus;

dyslipidemia; prior bladder cancer; [and] eosinophilic esophagitis." <u>Def. Initial Mot.</u> at 3. He contends

that his "critical health conditions constitute extraordinary and compelling reasons for his release." <u>Id.</u> at

6; **(ii)** "a ferocious COVID-19 outbreak exploded at FMC Devens in December and is ongoing." <u>Id.</u> at 1;

<u>see also</u> <u>Def. Reply</u> at 5; **(iii)** "Neither Mr. Gaffey's COVID-positive status nor the apparent recent

improvement in his condition diminish the imperative for release. . . . [I]nfections can result in long-term

medical complications, and people who have recovered can become reinfected." <u>Def. Initial Mot.</u> at 7;

<u>see also</u> <u>Def. Reply</u> at 4; <u>Feb. 15, 2021 Def. Ltr.</u>; **(iv)** notwithstanding his recovery from COVID-19,

"[u]nfortunately his continued incarceration places him at risk for reinfection with the now mutating

pandemic virus." <u>Def. Reply</u> at 2 (citation omitted); **(v)** "the extremely harsh conditions [presumably

upon his admission to FMC Devens] and the illness he survived . . . are together sufficiently punitive to

accomplish the purposes of sentencing [under 18 U.S.C. § 3553(a)]." <u>Def. Reply</u> at 1, 3; and **(vi)**

because Gaffey received convalescent plasma treatment for his COVID-19 infection, Gaffey "has been

informed by the BOP that he is not currently eligible for vaccination . . . until at least 90 days after [such

treatment]." <u>Mar. 4, 2021 Def. Ltr.</u> at 1, 5.

On January 26, 2021, the Government filed its opposition to Gaffey's motion. It also enclosed 48

pages of Gaffey's BOP medical records, dated December 4, 2020 to January 19, 2021, documenting in

detail his care and treatment at FMC Devens and at the University of Massachusetts Medical Center.

The Government also filed a supplemental letter dated February 19, 2021, which enclosed 21 additional

pages of detailed BOP medical records, dated January 26, 2021 through February 18, 2021; and a

supplemental letter dated March 10, 2021. In its submissions, the Government persuasively responds

that: **(i)** Because, among other things, FMC Devens affords superior medical care and, relatedly, because

Gaffey has recovered from COVID-19, an "extraordinary and compelling" case for release has not been made by the defense. And, even assuming arguendo that Gaffey's age and his medical conditions may constitute extraordinary and compelling conditions, the motion should be denied because "this Court carefully took under consideration the potential for Gaffey to face serious complications from COVID-19" and FMC Devens has "the capability [] to handle any complications to [Gaffey's] recovery from the virus, if they were to arise." Gov't Opp. at 6-7, 9. "[I]n instances where a defendant has medical conditions that place them at-risk for serious complications but has recovered from COVID-19, . . . their release [is] not warrant[ed]." Id. at 7; **(ii)** "the COVID-19 situation at FMC Devens continue[s] to improve and . . . does not justify Gaffey's release. The current number of inmates with active cases of COVID-19 is zero, down from the 42 active cases as of [the Government's] January 25, 2021 [opposition], and . . . the vaccination of inmates at FMC Devens will undoubtedly alleviate the spread of the disease at the facility." Feb. 19, 2021 Gov't Ltr. at 2-3; **(iii)** Gaffey has made a full recovery to date from the virus, "in no small measure due to the fact that, at the Court's suggestion, he was designated to FMC Devens, where medical staff were continuously monitoring his condition, and the facility was able to promptly admit him to [a] top-tier medical facilit[y] in the Greater Boston area when his condition worsened." Gov't Opp. at 6-7; **(iv)** Gaffey's arguments regarding reinfection and COVID-19 complications do not support his release. "CDC guidance [] says that 'reinfection is uncommon'" and "[t]here is every reason to assume that, if further COVID-19 complications do arise, Gaffey will be afforded the same level of care [by FMC Devens]" as he received after he contracted COVID-19. Gov't Opp. at 6-7, 9; Mar. 10, 2021 Gov't Ltr. at 1; **(v)** "to the extent Gaffey is asserting he should now be sentenced to time served because of the 'harsh solitary confinement' he endured upon entering [FMC Devens], the use of quarantines and isolation protocols by the BOP were facts that were known to the Court at the time of his sentencing in September 2020, and were considered by the Court . . . when [it] carefully weighed the 3553(a) factors." Feb. 19, 2021 Gov't Ltr. at 1-2 (citation omitted); and **(vi)** Gaffey's temporary ineligibility for the COVID-19 vaccine is no basis for release. "Gaffey is at low risk

5

from becoming reinfected at least until he becomes eligible to receive the vaccine [in April 2021] [and]

a substantial portion of the FMC Devens inmate and staff population will ultimately be vaccinated

[which] . . . will undoubtedly alleviate the spread of the disease at the facility." Feb. 19, 2021 at 2; Mar.

10, 2021 Gov't Ltr. at 1.

## IV.    Legal Standard

18 U.S.C. § 3582(c)(1)(A) provides in part:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all
> administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the
> defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden
> of the defendant's facility, may reduce the term of imprisonment.

"When considering an application under § 3582(c)(1)(A)(i), a court may reduce a defendant's

sentence only if it finds that 'extraordinary and compelling reasons warrant such a reduction.'" *United*

*States v. Beniquez*, 2021 WL 260225, at *2 (S.D.N.Y. Jan. 26, 2021). "The defendant has the burden to

show he is entitled to a reduction." *United States v. Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8,

2020) (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

Several courts have found that "[a defendant's] status as an individual at high risk for severe

illness from COVID-19, alone, does not constitute an extraordinary and compelling reason for his

release, especially [] whe[n] he is incarcerated . . . . in a [federal medical center such as FMC Devens]

with access to 24-hour medical care." *Mazer v. United States*, 468 F. Supp. 3d 637, 640-41 (S.D.N.Y.

2020); *see also United States v. Arena*, 2020 WL 2571053, at *2 (S.D.N.Y. May 21, 2020); *United*

*States v. Cabrera*, 2020 WL 4226637, at *1 (S.D.N.Y. July 23, 2020).

"[I]n deciding a compassionate release motion . . . . [t]he Court [] looks to § 1B1.13 for guidance

in the exercise of its discretion." *United States v. Rodriguez*, 2020 WL 7640539, at *3 (S.D.N.Y. Dec.

23, 2020). "The Court . . . is free to consider 'the full slate of extraordinary and compelling reasons that

an imprisoned person might bring before them in motions for compassionate release.'" *United States v.*

*Brooker*, 976 F.3d 228, 237 (2d Cir. 2020)).

"Extraordinary and compelling reasons alone are insufficient to grant compassionate release. [Where] the Court finds that the § 3553(a) factors weigh against compassionate release, [the defendant's] motion must be denied." *United States v. Jaquez*, 2021 WL 857364, at \*3 (S.D.N.Y. Mar. 8, 2021); *United States v. Lisi*, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020) ("Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." (citation omitted)); *United States v. Roney*, 833 F. App'x 850, 852 (2d Cir. 2020).

## V.   Findings

The Court finds as follows:

1.  Gaffey has exhausted his administrative remedies. He requested compassionate release from the BOP but received no response as of February 9, 2021. Mar. 4, 2021 Def. Ltr. at 1; *United States v. Burman*, 2020 WL 3182766, at \*2 (S.D.N.Y. June 13, 2020) ("Because more than thirty days have passed since [defendant] petitioned BOP for release, he is deemed by statute to have exhausted his administrative remedies.").

2.  Gaffey was designated to FMC Devens upon the Court's recommendation to accommodate Gaffey's age and medical conditions. "I believe [there] has to be a period of incarceration" but "[i]n order to provide the needed medical care, I will . . . make a recommendation for incarceration at a medical institution that has medical ability." Sentencing Tr. at 49:1-2, 50:14-22, 53:9-13. FMC Devens is "one of only six federal medical centers in the BOP" and is "one of the few BOP facilities that is equipped to provide the highest level of medical care to inmates in the system." FMC Devens Brochure, BOP (2019-2020) at p. 3; *United States v. Warner*, 2020 WL 6829714, at \*6 (D. Haw. Nov. 20, 2020).

3.  Gaffey has received meticulous monitoring and medical care at FMC Devens and the University of Massachusetts Medical Center for treatment of COVID-19 and his other medical conditions. See Gov't Opp. at 6-7, 9-10; Def. Reply at 2; see also Gov't Opp. Ex. A (BOP Medical Records) at 1-48;

Feb. 19 Gov't Ltr. Ex. A (BOP Medical Records) at 1-21. He appears to have fully recovered. Feb. 19 Gov't Ltr. Ex. A (BOP Medical Records) at 3.

4. Gaffey's reported medical conditions at the time of his sentencing included: "chronic kidney disease, stage 3," "[a] history of bladder cancer," "Type 2 diabetes," "obes[ity]," "hypertension," "hyperlipidemia," "esophagitis," "esophageal obstruction," and "dyslipidemia." Gov't Opp. Ex. A (BOP Medical Records) at 3, 6, 8, 15.

   According to the Centers for Disease Control and Prevention ("CDC"), chronic kidney disease, cancer, Type 2 diabetes, and obesity are "conditions that are known to cause an increased risk of severe illness" from COVID-19. *United States v. Roman*, 2021 WL 327729, at *7 (D. Conn. Feb. 1, 2021) (citing People at Increased Risk, CDC). Hypertension and hyperlipidemia, according to the CDC, are conditions that "might increase a person's risk [of severe illness]." Id. According to the CDC, "people in their [] 70s are, in general, at higher risk for severe illness." See Older Adults, CDC; *United States v. Al Kassar*, 480 F. Supp. 3d 582, 584 (S.D.N.Y. 2020).

5. Gaffey contracted COVID-19 while incarcerated. He was monitored closely and treated intensively, including hospitalization at the University of Massachusetts Medical Center, between December 27, 2020 and January 6, 2021. At the Hospital he was treated with "supplemental oxygen, Ceftriaxone, Azithromycin, Decadron, Remdesivir, [and] convalescent plasma." Gov't Opp. Ex. A (BOP Medical Records) at 15, 18, 22.

6. Gaffey appears to have received the highest level of medical monitoring and treatment for COVID-19 and to have made a full recovery. See also discussion at pp. 9-11, infra. "FMC Devens has been monitoring Gaffey throughout his incarceratory period to date. Once he showed signs of COVID-19 symptoms, he was immediately tested and quarantined, and once those symptoms progressed in severity, . . . the facility was able to promptly admit him to . . . . one of the dozens of top-tier medical facilities in the Greater Boston area. Now, Gaffey appears to have made a full recovery to date from the virus, and has no ongoing symptoms." Gov't Opp. at 8-9; see also, e.g., Gov't Opp. Ex. A (BOP

Medical Records) at 22-23, 27 (Gaffey's Jan. 7, 2021 medical records state: "Per patient, he reports feeling overall well at this time, much improved from prior to [hospital] admission. . . . [he] appears well, alert and oriented."); Feb. 19 Gov't Ltr. Ex. A (BOP Medical Records) at 3 ("Gaffey's Feb. 27, 2021 medical records state: Mr. Gaffey recovered from Covid, [diagnosed] 12/21/20. . . . He was seen by [FMC Devens medical personnel] yesterday, and is doing well clinically.").

7.  Gaffey's personal physician, Dr. Adolph Karchmer, acknowledged that Gaffey "surviv[ed]" COVID-19 and that "his survival is a tribute to the superb care provided at the University of Massachusetts Medical Center, care that was essentially the same as that provided then President Trump at the Bethesda Military Medical Center." Def. Reply at 2 (quoting Physician Ltr. Ex. B at 2).

8.  FMC Devens is "one of the few BOP facilities that is equipped to provide the highest level of medical care to inmates in the system." *United States v. Warner*, 2020 WL 6829714, at *6 (D. Haw. Nov. 20, 2020). FMC Devens is capable of treating inmates who are severely impaired and have chronic medical conditions, including, for example, kidney disease and cancer. *United States v. Cherry*, 2021 WL 1222121, at *3 (S.D.N.Y. Mar. 31, 2021); FMC Devens Brochure, BOP (2019-2020) at p. 3. "[A]ll specialty areas of medicine are available at FMC Devens and inmates are routinely seen at some of the best hospitals in the country, including but not limited to . . . University of Massachusetts Medical Center." *Cherry*, 2021 WL 1222121, at *3 (citation omitted).

9.  Gaffey's extensive BOP medical records – totaling nearly 70 pages – confirm that he has received, and continues to receive, extensive monitoring and treatment for all of his medical conditions at FMC Devens. *See United States v. Holper*, 2020 WL 5898774, at *2 (D. Nev. Oct. 5, 2020). FMC Devens personnel have been monitoring Gaffey's conditions -- before and after he contacted COVID-19 -- by regularly conducting "assessment[s]" of his conditions, for example on December 4, 2020, January 19, 2021, and February 10, 2021. Gov't Opp. Ex. A (BOP Medical Records) at 3, 30; Feb. 19 Gov't Ltr. Ex. A (BOP Medical Records) at 6-7. FMC Devens personnel have been administering daily medications for his "Type 2 diabetes, hyperlipidemia, hypertension, . . . chronic

kidney disease, . . . esophagitis, [and] esophageal obstruction." Gov't Opp. Ex. A (BOP Medical Records) at 4-5.

Gaffey's medical records unequivocally confirm that FMC Devens provided prompt, comprehensive, and successful treatment and care for COVID-19. They placed him in quarantine and "on a daily basis[,] . . . monitor[ed] [him] for COVID symptoms [including] fever, cough, SOB [shortness of breath], chills, body aches, sore throat, [and] loss of taste/smell." Id. at 9, 46-48. When his symptoms started to worsen, on December 27, 2020 he was transferred to a "top-tier" hospital facility, i.e., the University of Massachusetts Medical Center, where he was treated with supplemental oxygen as well as Remdesivir and convalescent plasma, and Ceftriaxone, Azithromycin, and Decadron. Gov't Opp. Ex. A (BOP Medical Records) at 14, 18, 27; see also Gov't Opp. at 8.

Medical personnel assiduously monitored Gaffey's response to the COVID-19 treatments and his progress. For example, on January 4, 2021, medical personnel reported the following: "Inmate is feeling well with no fever, nausea, or vomiting. Weaned down from oximizer . . . now [blood oxygen level is at] 94%. He has completed antibiotic therapy and has finished remdesivir x5d [day 5]. He [has completed] convalescent plasma x4 [day 4]. Plan is to complete course of decadron, give Mucinex and nebulizer tx [treatment] [for] cough . . . ." Id. at 19. On January 5, 2021, medical personnel reported further signs of progress: "Inmate continues to feel well. . . . He will complete course of daily decadron today. [He has completed] convalescent plasma x6 [day 6]. Plan to continue to wean O2 as tolerated." Id. at 20. And, on January 6, 2021, medical personnel reported: "Inmate remains inpatient with Covid. He is A&Ox3 [alert and oriented], afebrile, VSS [vital signs stable]. No longer requiring supplemental oxygen. Patient states he feels pretty good, denies chest pain or shortness of breath. He is independent in room, denies weakness or dizziness. Inmate is stable for discharge back to Devens this afternoon." Id. at 21.

**10.** Following his discharge from the University of Massachusetts Medical Center on January 6, 2021,

FMC Devens staff have continued to monitor his medical conditions and status and "will continue to

monitor [him] closely." Gov't Opp. Ex. A (BOP Medical Records) at 27, 28; id. at 26, 46 (Gaffey's

Jan. 7, 2021-Feb. 10, 2021 BOP medical records reflect daily "monitor[ing] of patient's temperature,

pulse, and SPO2 [oxygen] levels").

**11.** Qualified medical personnel have determined that Gaffey has recovered from the COVID-19 virus.

Gov't Opp. Ex. A (BOP Medical Records) at 3. And, according to his BOP medical records, Gaffey

has "denie[d] having any issues/problems since returning to [FMC Devens] from the hospital." Feb.

19 Gov't Ltr. Ex. A (BOP Medical Records) at 3, 7. Indeed, on January 7, 2021 -- the day after he

had returned from the hospital -- FMC Devens medical personnel examined Gaffey and found that:

"**he reports feeling overall well at this time**, much improved . . . . He denies fever, chills,

headache, dizziness, difficulty breathing, chest pain, abdominal pain, nausea, vomiting." Gov't Opp.

Ex. A (BOP Medical Records) at 22 (emphasis added). Similarly, during a January 27, 2021

examination, medical personnel reported: **"Mr. Gaffey recovered from COVID . . . and is doing**

**well clinically."** Feb. 19 Gov't Ltr. Ex. A (BOP Medical Records) at 3 (emphasis added). And,

during a February 9, 2021 examination, medical personnel reported: "Patient denies having any

issues/problems since returning to [FMC Devens]." Id. at 7. During a February 10, 2021

examination, medical personnel reported: "[Gaffey] feels well with no complaints, no fever, no

appetite change." Id. at 8.

**12.** FMC Devens appears to have controlled COVID-19 infections. As of April 18, 2021, there were

only **three** active COVID-19 cases at FMC Devens, out of a total inmate population of 727. COVID-

19 Cases, BOP; *see also United States v. Hemphill*, 2021 WL 765718, at *2 (W.D.N.C. Feb. 26,

2021) ("Presently, the data and reporting from the BOP regarding the pandemic suggests that FMC-

Devens has 2 positive COVID-19 cases within the inmate population. This data suggests that the

facility's protections against the COVID-19 pandemic are working, and Defendant is not in imminent danger.").

**13.** As of April 18, 2021, 366 FMC Devens inmates and 341 FMC Devens staff had been fully vaccinated. COVID-19 Vaccine, BOP.

## VI.    Analysis

Notwithstanding Gaffey's age and medical conditions, as in *United States v. Olivo*, 2021 WL 21898 (S.D.N.Y. Jan. 2, 2021), "there are some countervailing factors that militate against a finding of extraordinary and compelling circumstances warranting early release." *Id.* at *2. And, even assuming arguendo that Gaffey were able to establish extraordinary and compelling circumstances, the 18 U.S.C § 3553(a) sentencing factors do not support his release from prison.

### (1) Extraordinary and Compelling Circumstances

The Court finds that the following five factors undermine, if not negate, extraordinary and compelling circumstances:

**First**, Gaffey contracted COVID-19 while incarcerated and appears to have fully recovered, a testament to the "superb" care that he received at both FMC Devens and the University of Massachusetts Medical Center. Immediately after he tested positive, FMC Devens medical personnel protectively quarantined him and continuously monitored him for COVID symptoms. Gov't Opp. Ex. A (BOP Medical Records) at 9, 46-48. When his "symptoms started worsening," FMC Devens made the decision promptly to transfer him to a leading hospital, the University of Massachusetts Medical Center. As Gaffey's own primary care physician, Dr. Karchmer, acknowledges: **"His survival is a tribute to the superb care provided at the University of Massachusetts Medical Center, care that was essentially the same as that provided then President Trump at the Bethesda Military Medical Center."** See Def. Reply at 2 (emphasis added); Gov't Opp. Ex. A (BOP Medical Records) at 14, 18, 27. Gaffey received Remdesivir and convalescent plasma, and supplemental oxygen, Ceftriaxone, Azithromycin, and Decadron. Gov't Opp. Ex. A (BOP Medical Records) at 14, 18, 27. Since Gaffey's discharge from

the Hospital on January 6, 2021, FMC Devens medical personnel have continued diligently to monitor

him and "will continue to monitor [him] closely." Id. at 27, 28. Medical personnel have diagnosed him

as "recovered," and he has consistently "denie[d] having any issues/problems since returning to [FMC

Devens] from the hospital." Feb. 19 Gov't Ltr. Ex. A (BOP Medical Records) at 3, 7, 8.

Gaffey's argument for compassionate release is unpersuasive. Def. Reply at 2. FMC Devens has

proven to be extraordinarily capable of treating Gaffey. As the Government points out: "Gaffey appears

to have made a full recovery, in no small part due to the fact that his symptoms were being continuously

monitored by FMC Devens, and that the facility was able to promptly admit him to a hospital based on

that monitoring." Gov't Opp. at 9-19.

Recent cases do not support Gaffey's early release. For example, in *United States v. Epstein*,

2020 WL 2537648 (D.N.J. May 19, 2020), the defendant, who was "74 years old and suffer[ed] from

numerous underlying conditions, including heart disease, hypertension, diabetes, renal impairment, and

obesity," contracted COVID-19 while incarcerated. *Id.* at *2. Very much like Gaffey, the defendant was

placed "in isolation [], where he was given individualized medical treatment . . . [medical personnel]

transport[ed] him to the hospital for treatment when his condition became critical and . . . . while in the

hospital, Defendant was treated with supplemental oxygen. Since his discharge, Defendant's condition

has improved . . . . and the medical records reveal that the BOP continues to monitor or treat

Defendant's aliments to this day." *Id.* at *2, 4. The *Epstein* court ruled that: "Defendant's conditions are

being properly managed by [prison medical personnel] and that Defendant has not demonstrated

extraordinary and compelling reasons for his release." *Id.* at *4; *see also United States v. Adams*, 2020

WL 4505621, at *3-4 (S.D.N.Y. Aug. 4, 2020) (**"While it is undisputed that [defendant] has severe**

**underlying health issues that would otherwise increase his risk of complications from COVID-19,**

**the fact remains that he has already contracted, and seemingly recovered from, COVID-19 [and] .**

**. . [defendant] has not shown that [the prison] [wa]s unable to provide him adequate care. . . . the**

**Court denies [defendant's] motion on the basis that he has not shown 'extraordinary' or 'compelling' reasons warranting compassionate release[.]"** (emphasis added)).

      **Second**, Gaffey is housed at a facility that it is capable and well-equipped to provide care for his medical conditions, including COVID-19. In *United States v. Cabrera*, 2020 WL 4226637 (S.D.N.Y. July 23, 2020), the court denied early release where the defendant had a number of medical conditions, including chronic kidney disease stage IV, Type II diabetes, and obesity, reasoning that: "Although we do not dispute that COVID-19 would pose an enhanced risk to defendant due to his existing medical conditions, we nonetheless conclude that such a risk does not amount to an extraordinary and compelling reason that warrants release of defendant because he is currently incarcerated in FMC Devens, which is not a regular prison but a medical facility. Accordingly, the medical risks faced by [defendant] are significantly mitigated by his designation to a medical facility." *Id.* at *1. As in the *Cabrera* case, Gaffey's designation to a medical facility significantly mitigates medical risks he may face and militates against a finding of "extraordinary and compelling reason[s] that warrant release." *Id.*; *see also United States v. Arena*, 2020 WL 2571053, at *1-2 (S.D.N.Y. May 21, 2020*)* (**"[defendant] has not demonstrated that extraordinary and compelling reasons warrant a reduction in [his] sentence . . . . [defendant] is serving his sentence at the Federal Medical Center, Devens[,] . . . a medical facility that is well equipped to provide [defendant] with medical care"** (emphasis added)).

      **Third**, FMC Devens medical personnel are -- and have been -- diligently monitoring and managing Gaffey's medical condition(s). They routinely conduct physical examinations and administer medications on a daily basis. Gov't Opp. Ex. A (BOP medical records) at 4-5; *see United States v. Sessum*, 2020 WL 2836781, at *3 (S.D.N.Y. June 1, 2020), *reconsideration denied*, 2020 WL 6392817 (S.D.N.Y. Oct. 30, 2020) ("the fact remains that in monitoring, diagnosing, and treating [defendant's] conditions, the BOP is providing appropriate medical care. The Court therefore concludes that, even accounting for his medical conditions, [defendant] has not demonstrated the existence of extraordinary and compelling circumstances in this case."); *see also United States v. Mata*, 2020 WL 3619537, at *2

14

(S.D.N.Y. July 2, 2020) ("serious medical conditions, even in the midst of the COVID-19 pandemic, do not constitute extraordinary and compelling reasons warranting a sentence reduction . . . where [the defendant's] conditions [a]re stable and managed in [the defendant's] BOP facility" (citation omitted)).

**Fourth**, Gaffey's contention that a "spike in cases at FMC Devens now raises serious questions about the facility's ability to monitor and care for its most vulnerable inmates, including Mr. Gaffey" is without merit. Def. Reply at 5 (citation and alterations omitted). FMC Devens currently has only three active COVID-19 cases among prisoners and staff, reflecting a significant decrease in the number of cases since Gaffey filed his initial brief. Def. Initial Mot. at 1. This decrease in active cases suggests that FMC Devens is controlling COVID-19 at its facility, as the court explicitly found in *United States v. Hemphill*, 2021 WL 765718 (W.D.N.C. Feb. 26, 2021). There, the court found that there were only 2 positive COVID-19 cases within the inmate population, marking a decrease from "the 10 cases at the time that [defendant] filed [his initial motion]," and stated: "This data suggests that the facility's protections against the COVID-19 pandemic are working, and Defendant is not in imminent danger." *Id.* at *2. Similarly, in *United States v. Battle*, 2021 WL 363956 (S.D.N.Y. Feb. 3, 2021) the court noted that "COVID-19 cases at the federal medical facility have declined rapidly in recent weeks, suggesting that BOP is responding appropriately to COVID-19's spread. Thus, the Court is not persuaded that the prison circumstances warrant compassionate release." *Id.* at *2.

**Fifth**, Gaffey's contention that, even after being successfully treated for COVID-19, he remains at risk is not persuasive because, among other things, instances of COVID-19 reinfection "in those who have recovered from COVID-19 'remain rare.'" *United States v. Nwankwo*, 2020 WL 7335287, at *2 (S.D.N.Y. Dec. 14, 2020) (citing Reinfection with COVID-19, CDC). And, in *United States v. Marley*, 2020 WL 7768406 (S.D.N.Y. Dec. 30, 2020), the court rejected the defendant's argument that the risk of "reinfection . . . and the potential long-term effects of having contracted COVID-19" warranted release. *Id.* at *3. The court noted that: "The science and data concerning reinfection rates [indicates] . . . that the risk of contracting COVID-19 after having recovered from an initial bout of the illness is very low. Now

that he has contracted and recovered from the illness [], there is no basis to find that [defendant] has

demonstrated the extraordinary and compelling circumstances necessary to afford him the exceptional

relief of a sentence reduction." *Id.* at *2-3; *see also United States v. Parrello*, 2021 WL 242426, at *3

(S.D.N.Y. Jan. 25, 2021).

The Court also notes that several hundred FMC Devens inmates have been vaccinated as of April

19, 2021, further reducing Gaffey's risk of contracting COVID-19. *See United States v. Davis*, 2021 WL

1016115, at *3 (S.D.N.Y. Mar. 17, 2021) ("the BOP [has] already begun vaccinating inmates at

[defendant's prison]. These vaccinations will reduce [defendant's] risk of reinfection.").

### (2) The 18 U.S.C. § 3553(a) Factors Weigh Against Compassionate Release

The Court also denies Gaffey's motion because the § 3553(a) sentencing factors strongly weigh

against his release. *See United States v. Suarez*, 2020 WL 7646888, at *4 (S.D.N.Y. Dec. 23, 2020).

**First**, in imposing Gaffey's sentence of 39 months' imprisonment, the Court specifically took

into account Gaffey's age and the need to be able to provide medical care. "Mr. Gaffey [is] 76 [and] has

medical conditions. I fully understand that as part of the history and characteristics of Mr. Gaffey . . . To

provide the needed medical care, . . . I will recommend that he be incarcerated in a [Federal] medical

facility." Sentencing Tr. at 35:21-23, 50:2-4.

In cases such as Gaffey's, where the defendant's sentence accounts for his age and medical

conditions and where the BOP facility offers (at least) adequate medical care, compassionate release is

not warranted. *See United States v. Gamble*, 2020 WL 4049992, at *5 (S.D. Cal. July 20, 2020)

("Defendant is receiving excellent medical care in prison, thus serving the important interests of §

3553(a)."); *see also United States v. Daugerdas*, 2020 WL 2097653, at *1 (S.D.N.Y. May 1, 2020)

("[I]n fashioning his sentence, this Court accounted for [defendant's] age and his then-existing medical

conditions, and [defendant's] BOP medical records illustrate that he is receiving adequate care for those

conditions.").

**Second**, reducing Gaffey's sentence any further (than his current below Guidelines sentence of 39 months) would not reflect the seriousness of his offenses, promote respect for the law, or provide just punishment. The seriousness of Gaffey's offense conduct is self-evident. For nearly two decades, "Gaffey played a key role in a tax-evasion conspiracy that involved assisting multiple United States taxpayers commit tax evasion. . . . In that role, [he] filed false tax returns, created false documents, deceived financial institutions, and misused the identity of a third party to conceal the scheme and . . . used his special training and skill as an accountant to perpetrate [this] elaborate fraud scheme." PSR at p. 37; Gov't Sentencing Submission at 1, 14, 23. "For his involvement, Gaffey was compensated hundreds of thousands of dollars and . . . cost the [government] more than $3.4 million in actual losses." Gov't Sentencing Submission at 1. And, according to the Government, "his involvement in this tax evasion conspiracy was not a one-time mistake or a fleeting lapse in judgment. Rather, repeatedly and over the course of decades, [Gaffey] . . . made a conscious and deliberate choice to defraud the Government," and "his conduct only ceased as a result of the government's investigation." Id. at 14; PSR at p. 37.

At sentencing, the Court described Gaffey's conduct as "awfully serious" and found that Gaffey had "us[ed] his special skills and expertise to blatantly and obviously [] violate the law for financial gain." Sentencing Tr. 48:21-24. The Court determined that: "There has to be a period of incarceration . . . to reflect the seriousness of the offense, to promote respect for the law, [and] to provide a just punishment." Id. at 48:25-49:3, 56:25-57:1.

In cases similar to this case, i.e., involving tax offenses and fraud, courts have concluded that granting the defendant early release would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment. For example, in *United States v. Adams*, 2020 WL 3026458 (D. Conn. June 4, 2020), where the defendant committed a $4.2 million tax fraud over fifteen years, the court found that: "The [] sentence imposed reflects [defendant's] commission of . . . an offense which involved thousands of acts of deception [and] . . . obstructing collection efforts by [the] IRS . . . . A

17

sentence of time served [] would not reflect the seriousness of the offense or foster respect for the law."

*Id.* at \*4. And, in *United States v. Binday*, 2020 WL 4017822 (S.D.N.Y. July 16, 2020), where the

defendant participated in an "insurance fraud [] scheme perpetrated over a span of years," the court

concluded that "the Section 3553(a) factors that weighed so heavily in favor of incarceration at the time

of sentencing, including . . . the need for the sentence to reflect the seriousness of the offense, to

promote respect for the law, [and] to provide just punishment . . . now counsel against early release." *Id.*

at \*6 (citations omitted).

**Third**, any further reduction in Gaffey's sentence from 39 months to time already served, as

Gaffey requests, would not afford adequate deterrence to criminal conduct. As explained at Gaffey's

sentencing, "general deterrence is particularly important in cases like this because it is essential to

reducing the ever-increasing amount of money lost each year through tax fraud." Sentencing Tr. at

38:24-39:3.

Where the factual circumstances are similar to the facts in Gaffey's case, other courts have

persuasively held that compassionate release would not serve the principles of general deterrence. For

example, in *United States v. Stitsky*, 2020 WL 7488065 (S.D.N.Y. Dec. 14, 2020), the court denied

compassionate release to a defendant "who had participated in a complex scheme to use false documents

and avoid law enforcement." *Id.* at \*4. The *Stitsky* court found that: "the goal of deterrence would not be

served by a sentence reduction when [defendant] has served less than 15% of the sentence imposed, and

deterring others from engaging in such calculated and exploitative conduct is critical." *Id.* The reasoning

in *Stitsky* is applicable here. Gaffey has served approximately 11% of his sentence to date. To grant

Gaffey a sentence reduction would certainly undermine the sentencing goal of deterrence. *See also*

*United States v. Itzchaki*, 2020 WL 4194800, at \*2 (S.D.N.Y. July 21, 2020).

**Fourth**, any further reduction in Gaffey's sentence would also fail to protect the public from

further crimes. Sentencing Tr. at 50:5-5. "Tax crimes represent an especially damaging category of

criminal offenses . . . . every tax fraud is theft from the pocket of everyday taxpaying citizens of this

nation." Gov't Sentencing Submission at 13 (citation omitted). As the Court stated at Gaffey's sentencing: "society has to be protected" from those "who do [not] pay their taxes . . . we can't have our CPAs and other professionals . . . engaging in these behaviors." Sentencing Tr. at 50:6-13, 51:23-25.

In other similar cases, courts have held that granting compassionate release "would run contrary to the goal of protecting the public." *United States v. Pena*, 2021 WL 396420, at \*3 (S.D.N.Y. Feb. 4, 2021). In *United States v. Arena*, 2020 WL 4505806 (S.D.N.Y. Aug. 3, 2020), where the defendant "exploited his position as a tax accountant," the court concluded that: "the need to protect the public weighs against release." *Id.* at \*3; *see also United States v. Ishmael*, 2021 WL 567747, at \*7 (E.D. Pa. Feb. 16, 2021) ("a reduction in [defendant's] sentence would not protect the public from further crimes").

**Finally**, Gaffey contends unpersuasively that "the harsh conditions that that he endured [upon his admission to FMC Devens] support release under section 3553(a)." Def. Reply at 3. The Government correctly responds that: "at the time that it sentenced Gaffey[,] the Court was well aware of . . . the stricter conditions of confinement that would be imposed upon Gaffey upon his surrender in light of the pandemic," including the fact that the Bureau of Prisons would have to implement quarantine and isolation protocols for newly admitted inmates. Gov't Opp. at 6; Feb. 19, 2021 Gov't Ltr. at 1. Quarantine protocols, like those followed by FMC Devens, are a safety measure designed to "keep someone who might have been exposed to COVID-19 away from others and help prevent spread of disease." See When to Quarantine, CDC; *see also United States v. Williams*, 2021 WL 1091905, at \*5 (E.D.N.Y. Mar. 22, 2021) ("Although the court recognizes the notable hardships the COVID-19 pandemic has had on prison populations, the court concludes that [defendant's] conditions of solitary confinement . . . were largely imposed in the interest of his own safety and the safety of other BOP inmates and staff.").

The basis for Gaffey's below Guidelines 39 month sentence is clearly set forth in the transcript of Gaffey's sentencing. As the Court stated at sentencing: "the reasons for this sentence are that I think it

is compatible with the Section 3553(a) factors, . . . including the history and characteristics of the

defendant, the need to reflect the seriousness of the offense, to promote respect for the law, to provide a

just punishment, to afford . . . general deterrence [and] . . . to provide[] [needed] medical care."

Sentencing Tr. at 56:17-57:3; *see also United States v. Marmolejos*, 2021 WL 807128, at *5 (S.D.N.Y.

Mar. 3, 2021).

### No Hearing Required

Defendant's request for a hearing is denied because, among other reasons, the written

submissions are more than adequate to assess Gaffey's application. *See United States v. Daugerdas,*

2020 WL 4931988, at *3 n.6 (S.D.N.Y. Aug. 18, 2020) ("[Defendant] requests an evidentiary hearing to

determine the safety of the conditions at [prison] and to inquire about the administration of [a] COVID-

19 test. This Court declines to hold the requested hearing. The parties' submissions -- including BOP

medical records -- provide an ample basis to deny [his] motion."); *see also United States v. Walters*, 910

F.3d 11, 28 (2d Cir. 2018).

## VII.   Conclusion & Order

The Government's request [Dck. Nos. 279 and 286] to file Exhibit A of its January 26, 2021

opposition and Exhibits A and B of its February 19, 2021 letter (i.e., BOP medical records) under seal is

granted.

The Defendant's motion for compassionate release [Dck. No. 273] is respectfully denied.


Dated: New York, New York
        April 19, 2021

_____

**RICHARD M. BERMAN, U.S.D.J.**